IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| FEDMET RESOURCES CORPORATION, | ) ) ) |
| Plaintiff, | ) **NON-** ) **CONFIDENTIAL** ) Proprietary |
| v. | ) Information ) Removed from Pages |
| UNITED STATES, | ) 16 to 18, 39, 40, ) and 49 |
| Defendant, | ) |
| MAGNESIA CARBON BRICKS FAIR TRADE COMMITTEE, | ) Court No. 23-00117 ) ) |
| Defendant-Intervenor. | ) ) |

BRIEF OF FEDMET RESOURCES CORPORATION IN SUPPORT OF
ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD

R. Will Planert
Donald B. Cameron
Julie C. Mendoza
Brady W. Mills
Mary S. Hodgins
Eugene Degnan
Jordan L. Fleischer
Nicholas C. Duffey
Ryan R. Migeed
Stephen A. Morrison

MORRIS, MANNING & MARTIN LLP
1401 Eye Street, N.W., Suite 600
Washington, D.C. 20005
(202) 408-5153

December 1, 2023

*Counsel to Fedmet Resources Corporation*

16140632 v1

## TABLE OF CONTENTS

I. STATEMENT PURSUANT TO RULE 56.2 ...............................................2

II. ISSUES OF LAW PRESENTED AND REASONS FOR
CONTESTING THE ADMINISTRATIVE DETERMINATION............2

   A. The AD/CVD Investigation .......................................................3

   B. The Fedmet Scope Ruling.........................................................6

   C. The S&S Refractories Scope Ruling.....................................10

   D. MCBFTC's EAPA Allegation .................................................12

   E. Covered Merchandise Inquiry ................................................15

IV. SUMMARY OF ARGUMENT ....................................................22

V. STANDARD OF REVIEW ...........................................................23

VI. ARGUMENT .................................................................................25

   A. Commerce Unlawfully Expanded The Scope Of The Orders ..........25

   B. Commerce Unlawfully Interpreted The S&S Refractories Ruling
As Superseding The Fedmet Scope Ruling .........................................30

   C. Commerce's Decision Was Unsupported By Substantial Evidence
........................................................................................................38

   VII. CONCLUSION ...........................................................................51

i

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Arcelormittal Stainless Belg. N.V. v. United States,*
   694 F.3d 82 (Fed. Cir. 2012) ............................................................... 31

*Duferco Steel, Inc. v. United States,*
   296 F.3d 1087 (Fed. Cir. 2002) ............................................... 23, 24, 28

*Eckstrom Indus., Inc. v. United States,*
   254 F.3d 1068, 1072 (Fed. Cir. 2001) ......................................... 24, 27

*Ericsson GE Mobile Commc'ns, Inc. v. United States,*
   60 F.3d 778.................................................................................... 23

*Fedmet Resources Corp. v. United States,*
   755 F.3d 912 (Fed. Cir. 2014) ..................................................... *passim*

*Fedmet Resources Corp. v. United States,*
   37 C.I.T. 792 (2013) ..................................................................... 7, 8, 27

*Global Commodity Grp. LLC v. United States,*
   709 F.3d 1134 (Fed. Cir. 2013) ......................................................... 23

*Mid Continent Nail Corp. v. United States,*
   725 F.3d 1295 (Fed. Cir. 2013) .................................................. 23, 24

*Novosteel SA v. United States,*
   284 F.3d 1261 (Fed. Cir. 2002) ......................................................... 23

Statutes

19 U.S.C. § 1516a(b)(1)(B)(i) .................................................................... 23

19 C.F.R. § 351.225(k) ............................................................ 24, 25, 30

19 C.F.R. § 351.227(d)(1) .......................................................................... 15

19 C.F.R. § 351.227(f) ................................................................................ 30

## Other Authorities

*Certain Magnesia Carbon Bricks From the People's Republic of China and Mexico: Notice of Court Decision Not in Harmony With Final Scope Ruling and Notice of Amended Final Scope Ruling Pursuant to Court Decision*, 80 Fed. Reg. 34,899 (June 18, 2015) ............................................. 13, 37

*Certain Magnesia Carbon Bricks From Mexico and the People's Republic of China: Antidumping Duty Orders*, 75 Fed. Reg. 57,257 (Dep't Commerce Sept. 20, 2010) ...................... 6

*Certain Magnesia Carbon Bricks from the People's Republic of China: Countervailing Duty Order*, 75 Fed. Reg. 57,442 (Dep't Commerce Sept. 21, 2010) ...................... 6

*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300 (Dep't Commerce Sept. 20, 2021) ..................... 15

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

_____

|  |  |  |
|---|---|---|
| FEDMET RESOURCES CORPORATION, | ) ) ) | |
| Plaintiff, | ) | **NON-CONFIDENTIAL** |
| | ) ) | Proprietary |
| v. | ) | Information |
| | ) | Removed from Pages |
| UNITED STATES, | ) ) | 16 to 18, 39, 40, and 49 |
| Defendant, | ) ) | |
| MAGNESIA CARBON BRICKS FAIR TRADE COMMITTEE, | ) ) ) | Court No. 23-00117 |
| Defendant-Intervenor. | ) ) | |

_____

BRIEF OF FEDMET RESOURCES CORPORATION IN SUPPORT OF
ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD

Plaintiff Fedmet Resources Corporation ("Fedmet") files this brief

in support of its Rule 56.2 motion for judgment on the agency record. As

discussed below, the determination of the U.S. Department of

Commerce ("Commerce") is not supported by substantial evidence and

is otherwise not in accordance with law.

1

I.    STATEMENT PURSUANT TO RULE 56.2

The administrative determination under review is Commerce's final determination in the covered merchandise inquiry as to whether eleven sample bricks imported by Fedmet are covered by the antidumping duty ("AD") and countervailing duty ("CVD") orders on Magnesia Carbon Bricks ("MCBs") from China ("the Orders"). *See Certain Magnesia Carbon Bricks From the People's Republic of China: Final Determination in Covered Merchandise Inquiry*, 88 Fed. Reg. 28,495 (Dep't Commerce May 4, 2023) (Appx01044), and accompanying Issues and Decision Memorandum (Appx01029).

II.   ISSUES OF LAW PRESENTED AND REASONS FOR CONTESTING THE ADMINISTRATIVE DETERMINATION

1.    Whether Commerce unlawfully expanded the scope of the antidumping and countervailing duty orders on Magnesia Carbon Bricks from China?

2.    Whether Commerce unlawfully modified a prior scope ruling incorporating a requirement that a specific testing method be used to establish the quantity of alumina?

3.    Whether Commerce failed to adequately consider issues with the testing methodologies employed by U.S. Customs and Border

Protection and made mistakes of fact with respect to the chemical testing of refractory bricks?

III.   <u>STATEMENT OF FACTS</u>

The covered merchandise determination is the latest chapter in a long-running effort by the petitioner in this case to bring within the scope of the Orders a type of refractory brick known as magnesia alumina carbon bricks that were expressly excluded from the scope during the original investigation. The extensive history of this effort bears directly on the legal issues in this action.

A. The AD/CVD Investigation

In July 2009 Resco Products, Inc., presently a member of the Magnesia Carbon Bricks Fair Trade Committee ("MCBFTC"), filed a petition that antidumping and countervailing duties be imposed on magnesia carbon bricks ("MCBs") from China. *Fedmet Resources Corp. v. United States*, 755 F.3d 912, 914 (Fed. Cir. 2014). MCBs are a type refractory brick used in steelmaking to line the walls of steel furnaces and ladles. MCBs are defined as chemically bonded refractory bricks that are composed of 70 percent or more of magnesia and between trace amounts and 30 percent of carbon. *Id.*

There also exists a related, but distinct, type of refractory brick known as magnesia alumina graphite bricks, or magnesia alumina carbon bricks ("MAC bricks" or "MACBs"). *See, e.g., id.* at 917. MAC bricks are also chemically bonded refractory bricks that are composed of magnesia (often 70 percent or more) and carbon. *Id.* at 916. MAC bricks are distinguished from MCBs by the fact that in addition to the magnesia and carbon, MAC bricks contain aluminum oxide (known as alumina), while MCBs do not contain any alumina. *Id.* at 921.

The petition stated that that it covered only MCBs and was not intended to seek the imposition of AD/CVD duties on other types of refractory bricks, including MAC bricks:

> There are *several types of standard refractory bricks in addition to magnesia carbon, the subject of this petition.* Among the most important are fired magnesite, fired bauxite, magnesia dolomite and *magnesia aluminum carbon brick.* {sic} Each of these bricks possess certain unique properties, which make their use highly preferred, and even required, for certain uses in the lining of steel, ceramic, and other furnaces and holding vessels. The different types of bricks are not generally substitutable in a technical sense, due to varying chemical and physical properties and wear characteristics.

*Id.* (emphasis added).

4

Shortly after Resco filed its petition, Commerce requested that Resco confirm how the scope language operated to exclude the other, non-covered refractory bricks referenced above, and to revise the scope language if necessary. *Id.* at 914-15. Resco responded that the scope focuses only on MCBs, and that the specified out-of-scope bricks would be significantly lower performing and higher costing than MCBs when used for steelmaking applications. *Id.* at 915. Resco also responded that no revision was needed to accomplish the exclusion of the specified out-of-scope bricks. *Id.*

Nine days later, Resco distinguished MAC bricks and MCBs when testifying before the U.S. International Trade Commission ("ITC"). *Id.* ("{O}ther refractory products, such as . . . magnesia alumina graphite bricks, and the subject merchandise do not have the same physical characteristics and uses are not perceived by producers and purchasers as substitutable and are easily differentiated by price.").

In its final determination, the ITC excluded MAC bricks from its affirmative determination, concluding that they were not part of the same like product as subject MCBs. Certain Magnesia Carbon Bricks from China and Mexico, USITC Pub. 4182, Inv. Nos. 701-TA-468 and

731-TA-1166-1167 (Final) (September 2010) at 6-7, I-8. The ITC noted the existence of other types of refractory bricks, but specifically citing the testimony provided by Resco, found that ITC found that MAC bricks and other non-MCB refractory bricks were not properly regarded as within the same like product. *Id.* at I-8 and n.13.

On September 20, 2010 and September 21, 2010, Commerce published the Orders with substantially the same scope as proposed by Resco in its petition. *Certain Magnesia Carbon Bricks From Mexico and the People's Republic of China: Antidumping Duty Orders*, 75 Fed. Reg. 57,257 (Dep't Commerce Sept. 20, 2010); *Certain Magnesia Carbon Bricks from the People's Republic of China: Countervailing Duty Order*, 75 Fed. Reg. 57,442 (Dep't Commerce Sept. 21, 2010) (collectively, "Orders").

B. The Fedmet Scope Ruling

In May of 2011, Fedmet requested a scope ruling at Commerce confirming that Fedmet's Bastion MAC bricks, which it described as containing "approximately 8 to 15 percent aluminum oxide," were, like other MAC bricks, outside the scope of the Orders. *Fedmet Resources Corp.*, 755 F.3d at 916. Despite having excluded MAC bricks by name

6

from its petition and testifying to their exclusion before the ITC, Resco

opposed Fedmet's scope ruling request, arguing that there was no such

thing as a MAC brick, and urging Commerce to "reject Fedmet's self-

serving attempt unilaterally create this product by simply adding

alumina to the mix." Appx02110. Resco further claimed that Fedmet

had "unilaterally created this so-called product and product name in

order to specifically circumvent the scope of the orders." Appx02111.

As a result of Resco's opposition, Commerce determined that the

scope language was ambiguous even after considering primary sources

(*i.e.*, (k)(1) sources), and relied on secondary sources (*i.e.*, (k)(2) sources)[1]

to determine that Fedmet's bricks were within the MCB scope since,

despite having added alumina, they contained at least 70 percent

magnesia and some carbon. Fedmet appealed that decision to the Court

of International Trade, which affirmed Commerce's decision, *Fedmet*

---

[1] Commerce's regulations provide that in determining scope, it first takes into account the "initial investigation, and the determinations of the Secretary (including prior scope determinations). 19 C.F.R. § 351.225(k)(1) ("(k)(1) sources"). If the (k)(1) sources are not dispositive, Commerce will also consider: (i) the physical characteristics of the product; (ii) the expectations of the ultimate purchasers; (iii) the ultimate use of the product; (iv) the channels of trade in which the product is sold; and (v) the manner in which the product is advertised and displayed." 19 C.F.R. § 351.225(k)(2) ("(k)(2) sources").

*Resources Corp. v. United States*, 37 C.I.T. 792 (2013), and then to the

U.S. Court of Appeals for the Federal Circuit ("CAFC").

In *Fedmet Resources Corp. v. United States*, 755 F.3d 912

(Fed. Cir. 2014) (hereinafter "*Fedmet Resources*"), the CAFC reversed,

holding that the primary, (k)(1) sources confirmed that the Orders do

not cover MAC bricks. In so holding, the CAFC emphasized Resco's role

in defining the orders to *expressly exclude* MAC bricks:

> To put it simply, the question before this Court was asked
> and answered during the underlying investigations. Resco
> had an opportunity to clarify whether MAC bricks were
> included within the scope of the investigations, and it
> confirmed that they were not. In doing so, Resco chose to rely
> on industry terminology to continue to define the subject
> merchandise and the domestic like product. *At the urging of
> Resco, Commerce adopted this industry terminology and
> defined the scope of the orders in terms of "magnesia carbon
> bricks," with the understanding that other types of bricks
> such as MAC bricks would not be covered.*

*Fedmet Resources* at 920 (emphasis added). The CAFC summarized

that "because nothing in the (k)(1) sources detracts from the otherwise

clear statements that *all* MAC bricks were excluded from the scope of

the underlying investigations, we hold that the (k)(1) sources are

dispositive of the question presented by Fedmet's scope ruling request,"

and concluding: "Because Fedmet's bricks are MAC bricks, we hold that they are not covered merchandise." *Id.* at 922 (emphasis in original).

Pointing to the numerous clarifications by the domestic industry during the investigation, the CAFC reasoned that the (k)(1) sources were sufficient to resolve possible ambiguities with regard to MAC bricks. On that basis, the CAFC held:

> {B}ecause nothing in the (k)(1) sources detracts from the otherwise clear statements that *all* MAC bricks were excluded from the scope of the underlying investigation, we hold that the (k)(1) sources are dispositive of the question presented by Fedmet's scope ruling request. . . . Because Fedmet's bricks are MAC bricks, we hold that they are not covered by the orders.

*Fedmet Resources* at 922 (emphasis in original). That is, the CAFC confirmed that Fedmet's bricks are outside the scope of the Orders *because* they are MAC bricks, and all MAC bricks, *i.e.*, magnesia carbon bricks with added alumina, are outside the scope of the Orders.

Because all MAC bricks, *i.e.*, magnesia carbon bricks with added alumina, are outside the scope, the CAFC directed Commerce to grant Fedmet's original scope ruling request. In doing so, Commerce defined the MAC bricks excluded from the scope of the Orders in terms of the physical composition of the merchandise, with the defining product

9

characteristic of Fedmet's MAC bricks being the presence of approximately 8 to 15 percent alumina. Appx02123. Commerce further rejected the suggestion of Resco, Magnesita Refractories Company, and Harbison Walker International, Inc.'s (the three MCBFTC member companies) that the definition should not include the word "approximately" and that the scope ruling be limited to bricks in that alumina range. *See* Appx02124. MCBFTC also argued that Commerce should re-open the record to admit evidence about the appropriately testing protocols, but Commerce declined to do so. *See* Appx02123-Appx02124. Commerce expressly limited its scope ruling to Fedmet's Bastion MAC bricks because it found that there is no industry standard that defines the chemical composition of a MAC brick. *See* Appx02121; Appx02126.

C. The S&S Refractories Scope Ruling

In June 2017, Commerce reaffirmed that in accordance with the decision of the CAFC in *Fedmet Resources*, MAC bricks are outside the scope of the orders on MCBs from China. *See* Appx02131. U.S. importer S&S Refractories, LLC ("S&S Refractories") had requested a scope ruling to confirm that certain MAC bricks it imported from Yingkou

Dongming Mineral Products Co., Ltd., which contain at least 5 to 15 percent alumina, were excluded from the Orders. *Id.* In that proceeding, MCBFTC argued that the imported MAC bricks in the S&S Refractories ruling request should be excluded from the Orders only if the alumina content was measured using a particularly laboratory testing methodology known as x-ray refraction ("XRD"). *See* Appx02135.

MCBFTC contended that this methodology was preferred because some other testing methodologies involved calcination (heating) of the sample, a process that can result in the oxidation of any aluminum present in the sample. Appx01982. Aluminum is an ingredient that is sometimes included in MCBs in small amounts as an anti-oxidant. *See* Appx02032. The oxidization of aluminum in testing would convert that aluminum to alumina, which MCBFTC argued could result in the amount of alumina in the sample being overstated. *See* Appx01982-Appx01983. Accordingly, MCBFTC argued that XRD testing, which does not involve a risk of oxidizing any alumina that may be present in the brick, should be required to establish that the S&S Refractories products contained the requisite 5 percent added alumina for purpose of that scope ruling. *See* Appx01987.

11

In its final scope ruling, Commerce agreed and mandated that the alumina content of S&S Refractories' imported bricks be measured using XRD testing. Appx02135. Notably, Fedmet was not a party to the S&S Refractories scope proceeding. As with the earlier Fedmet scope ruling, Commerce limited its final scope determination only to the specific products for which the ruling was requested, determining that the ruling "only applie{d} to Yingkou's BP-70A and BP-75A MAC bricks which are imported by S&S that contain at least 5 percent *added* alumina per the specifications provided in the request." *See* Appx02134 (S&S Refractories ruling at 4) (emphasis in original). Commerce thus reaffirmed that it "limited our analysis to only those MAC bricks identified in the requestors' scope application and not all bricks designated as MAC bricks." *Id.*

### D. MCBFTC's EAPA Allegation

On November 27, 2019, MCBFTC filed an Enforce and Protect Act ("EAPA") allegation with U.S. Customs and Border Protection ("CBP"), alleging that Fedmet engaged in evasion of the Orders by importing subject MCBs from China and declaring them as non-subject MAC bricks. Appx01815. MCBFTC claimed that, pursuant to the S&S

12

Refractories ruling, all MAC bricks must contain 5 percent or more alumina as measured using XRD to be excluded from the Orders. Appx01818 n.5.

During the investigation, CBP secretly tested the chemical composition of eleven sample Fedmet bricks over the course of four laboratory tests. The details of these tests were not disclosed to Fedmet until August 30, 2022. Appx02717.

During the EAPA investigation, Fedmet provided pre-importation chemical composition testing reports for sample lots along with test results provided by an outside laboratory in the United States that confirmed Fedmet's bricks not only contained added alumina, but were within Fedmet's stated product parameters. *See, e.g.*, Appx02092, Appx02137-Appx02158.

Nonetheless, on December 3, 2020, CBP made a final determination of evasion by Fedmet. Fedmet then requested an administrative review of CBP's determination by CBP's Office of Regulations and Rulings, which on April 13, 2021, affirmed the finding of evasion against Fedmet.

Fedmet timely appealed the EAPA decisions to this Court, and filed its filed its Motion for Judgment on the Agency Record in that case on November 18, 2021. *Fedmet v. United States*, Ct. No. 21-248, ECF 32.

Rather than respond to Fedmet's motion, on January 6, 2022 the United States requested a voluntary remand *Fedmet v. United States*, Ct. No. 21-248, ECF 37. The Court granted the United States' motion and gave CBP 120 days, until May 6, 2022, to complete its remand determination. *Fedmet v. United States*, Ct. No. 21-248, ECF 38.

On April 27, 2022, CBP informed the Court that it was "unable to determine whether the subject merchandise falls within the relevant antidumping and countervailing duty orders," and that it was requesting a stay of the action in order to make a covered merchandise referral to Commerce. *Fedmet v. United States*, Ct. No. 21-248, ECF 39. Fedmet opposed the CBP's motion to stay. *Fedmet v. United States*, Ct. No. 21-248, ECF 40. The Court granted the motion, staying the remand of the EAPA appeal pending the results of Commerce's covered merchandise inquiry. *Fedmet v. United States*, Ct. No. 21-248, ECF 44.

14

E. Covered Merchandise Inquiry

On June 30, 2022, CBP sent a covered merchandise referral to Commerce. Included with the referral were the detailed laboratory reports that had previously been withheld from Fedmet and counsel, and which had not been filed with the Court in *Fedmet v. United States*, Ct. No. 21-248. On July 20, 2022, Commerce initiated a covered merchandise inquiry pursuant to its new regulations, *Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300 (Dep't Commerce Sept. 20, 2021),[2] into whether the eleven bricks tested across the four laboratory tests are within the scope of the MCB Orders. Appx02681. Commerce also set a deadline of August 19, 2022 to file comments on the initiation. Appx02681; 19 C.F.R. §351.227(d)(1) (2021).

After Commerce established the administrative protective order, counsel for the first time was able to view the CBP lab reports for the results relied on in the EAPA determination, but due to the technical

_____

[2] Prior to these new regulations, Commerce did not have an established procedure for conducting covered merchandise inquiries. This final rule established the procedure for such inquiries at 19 C.F.R. § 351.227, and became effective November 4, 2021. *Id.*

15

NON-CONFIDENTIAL

nature of the documents required the consultation of Fedmet to provide

meaningful comments. Fedmet therefore requested that CBP disclose

these documents to Fedmet, Appx02696, and that Commerce extend the

comment deadline. Appx02689. After Commerce granted two partial

extension requests, providing until August 31, 2022 for initiation

comments, CBP eventually on August 30 disclosed the documents to

Fedmet. Appx02717. Fedmet therefore requested an additional week to

review these documents, *id.*, but Commerce refused to extend the

deadline, which remained August 31, 2022. Appx02720. The laboratory

reports were as follows.

1. <u>Lab Report [          ]0430</u>: Four samples were tested by

CBP's [          ] laboratory per CBP's April 9, 2020 report. Appx01056.

CBP relied on the results of this test as the basis for its determination

of evasion. Appx01281-Appx01282. Although the laboratory [

                                                              ], in a subsequent email

exchange between the laboratory and CBP, the laboratory advised CBP

of the likely alumina content of the bricks. Appx02244. Therefore, as

tested using an XRD analysis (CBPL method 25-28), CBP determined

NON-CONFIDENTIAL

that the bricks had alumina contents of [        ], [        ], [      ], and

[        ] percent. Appx01050.

    2.  <u>Lab Report [                  ]1030</u>: CBP's [              ] laboratory tested

two sample bricks per CBP's July 21, 2020 report. Appx01106. This

report involved an XRD test (CBPL method 25-28) on powdered samples

to identify peaks, then a carbon combustion test to measure carbon

(CBPL method 72-15), followed by an x-ray fluorescence ("XRF") test on

oxidized samples to measure the remaining components (method CBPL

72-32). Appx01111-Appx01112. Based on these tests, the laboratory

found that the bricks contained [        ] and [        ] percent alumina.

Appx01112.

    3.  <u>Lab Report [                  ]1071</u>: CBP's [              ] laboratory also

tested [        ] sample bricks from a different entry per CBP's July 21,

2020 report. Appx01164. This report involved an XRD test (method

CBPL 25-28) on powdered samples to identify peaks, then a carbon

combustion test to measure carbon (method CBPL 72-15), followed by

an XRF test on oxidized samples to measure the remaining components

(CBPL method 72-32). Appx01170-Appx01171. Based on these tests, the

NON-CONFIDENTIAL

laboratory found that the bricks contained [        ], [        ], and

[        ] percent alumina. Appx01171.

    4. <u>Lab Report [</u>      <u>]0826</u>: CBP's [                    ] laboratory

tested two sample bricks per CBP's August 7, 2020 report. Appx01234.

This report involved an XRD test (CBPL method 25-28R3) on powdered

samples to measure magnesia, alumina, carbon, and aluminum.

Appx01239. The laboratory reported an alumina content for these

bricks of [        ] and [        ] percent alumina. Appx01240.

On August 31, 2022, Fedmet and MCBFTC each provided

comments on these laboratory results and the initiation of the covered

merchandise inquiry. Appx02085; Appx01786. Fedmet and MCBFTC

also each provided rebuttal comments on September 14, 2022.

Appx02400; Appx02393. On November 2, 2022, Commerce requested

additional information from both Fedmet and MCBFTC, Appx02407, to

which they responded on November 21, 2022. Appx02455; Appx02412.

On December 5, 2022, both Fedmet and MCBFTC submitted rebuttal

comments. Appx02582; Appx02731. On December 12, 2022, both

Fedmet and MCBFTC submitted reply comments. Appx02630;

Appx02736.

Fedmet's comments and submissions focused on the issues involved with the testing performed by CBP, the fact that the S&S Refractories ruling only applied to the specific models of refractory bricks that were the subject of that scope ruling request, and the fact that the CAFC already determined that all MAC bricks, as defined using standard industry terminology, were outside the scope of the Orders. *See, e.g.*, Appx02085-Appx02102. Fedmet also noted that the Fedmet scope ruling explicitly declined to mandate that Fedmet or CBP follow a particular testing methodology to establish the chemical composition of the bricks, Appx02402-Appx02403, and that Fedmet's suppliers test all of the bricks prior to importation and provide Fedmet with certificates of analysis. *See, e.g.*, Appx02101-Appx02102. Fedmet placed its own pre-importation test certificates for some of the bricks tested by CBP onto the record. Appx02389.

For its part, MCBFTC continued to argue that the S&S Refractories ruling was controlling over Fedmet's bricks, and that only XRD testing could be used to determine the alumina content of refractory bricks for purposes of the Fedmet scope ruling. *See, e.g.*, Appx01787-Appx01790.

On February 10, 2023, Commerce preliminarily determined that the five percent threshold established in the S&S Refractories ruling also applied to Fedmet's MAC bricks, and that bricks not meeting the terms of that scope ruling were within the scope of the MCB Orders. Appx01016. On that basis, Commerce found that two of the eleven samples were covered by the MCB Orders. With regard to the remaining nine samples, Commerce concluded that because those tests used testing methods that involved oxidization, it could not determine whether the other nine samples were covered or not, even though CBP's testing had showed that all of those samples had alumina content of five percent or more, and eight of the nine samples were found to have alumina content in excess of eight percent. Commerce also found that the selection of testing protocols and sampling procedures are the purview of CBP, so it declined to address the methodological objections raised by Fedmet. Appx01019.

On February 28, 2023, Fedmet filed its case brief, arguing that the preliminary determination improperly modified the Fedmet scope ruling by imposing the requirements applicable to only to the products in the S&S Refractories ruling, that the CAFC had held that no MAC

bricks, as defined by industry terminology, are within the scope of the Orders, and that Commerce cannot ignore the sampling and testing issues or the testing results submitted by Fedmet. Appx02640. On March 7, 2023, MCBFTC responded that the S&S Refractories ruling can be relied upon to modify the Fedmet scope ruling and that the XRD requirement is not strict, but is just to avoid the oxidization of aluminum in the sample. Appx02756.

On April 27, 2023, Commerce made its final determination, in which it took the same positions and made the same findings as in the preliminary determination. Appx01029. Commerce claimed that it was not mandating the use of XRD, but was only requiring testing methods that did not oxidize the sample. Appx01036. Commerce also claimed that it needed to apply the S&S Refractories ruling to Fedmet's bricks to avoid inconsistent treatment of whether certain products are considered in or out of scope. Appx01034. Commerce continued to reject the issues raised by Fedmet concerning the inconsistencies between the testing performed by CBP, and continued to decline to address the sampling issues raised by Fedmet. Appx01039-Appx01040. Finally, Commerce dismissed the certificates of quality documenting the testing

results conducted by the manufacture because those documents do not specify the testing methodology. Similarly, Commerce discounted the third-party laboratory report submitted by Fedmet because it appeared to be the result of XRF testing.

On May 3, 2023, Commerce transmitted the results of the covered merchandise referral to CBP, Appx02805, and on May 10, 2023 sent CBP cash deposit instructions. Appx2808. On May 12, 2023, Commerce mailed the results of the covered merchandise inquiry to the parties.

This appeal followed.

IV.   <u>SUMMARY OF ARGUMENT</u>

Commerce's determination is contrary to the CAFC's decision in *Fedmet Resources*, which held that all magnesia carbon bricks with added alumina are outside the scope of the MCB Orders. As all of the tested bricks are magnesia carbon bricks with added alumina, Commerce was required to find that all of the tested bricks are outside the scope of the Orders. Commerce finding otherwise is an unlawful expansion of the Orders.

Commerce unlawfully applied the S&S Refractories scope ruling to Fedmet. To comply with the CAFC's instructions, Commerce had

expressly declined to mandate a cut off point for alumina or specific testing methods in the Fedmet scope ruling. Commerce cannot rely on a subsequent company-specific scope ruling to modify an earlier scope ruling applicable to a different company and product. Commerce's use of the covered merchandise inquiry to retroactively modify Fedmet's scope ruling is unsupported by substantial evidence and otherwise not in accordance with law.

Commerce unlawfully ignored the issues raised by Fedmet with regard to CBP's testing methodologies and sampling methods, and the impact of the issues with CBP's testing on the laboratory results.

## V.   STANDARD OF REVIEW

In reviewing a challenge to Commerce's determination in a covered merchandise inquiry, the Court "shall hold unlawful any determination, finding or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with the law." 19 U.S.C. § 1516a(b)(1)(B)(i).

When making scope determinations, "'Commerce . . . enjoys substantial freedom to interpret and clarify its antidumping orders. But while it may interpret those orders, it may not change them.'" *Novosteel*

*SA v. United States*, 284 F.3d 1261, 1269 (Fed. Cir. 2002) (quoting

*Ericsson GE Mobile Commc'ns, Inc. v. United States*, 60 F.3d 778, 782

(Fed. Cir. 1995)). The Court therefore gives "significant deference to

Commerce's own interpretation of scope orders," so long as Commerce's

interpretation is not "contrary to the order's terms" and does not

"change the scope of the order." *Global Commodity Grp. LLC v. United

States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013). "In particular, 'orders may

be interpreted as including subject merchandise only if they contain

language that specifically includes the subject merchandise or may be

reasonably interpreted to include it.'" *Mid Continent Nail Corp. v.

United States*, 725 F.3d 1295, 1300 (Fed. Cir. 2013) (quoting *Duferco

Steel, Inc. v. United States*, 296 F.3d 1087, 1089 (Fed. Cir. 2002)).

"However, Commerce cannot 'interpret' an antidumping order so as to

change the scope of that order, nor can Commerce interpret an order in

a manner contrary to its terms." *Duferco Steel*, 296 F.3d at 1095

(quoting *Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1072

(Fed. Cir. 2001)).

## VI.   ARGUMENT

### A. Commerce Unlawfully Expanded The Scope Of The Orders

#### 1. The Federal Circuit Confirmed That All Magnesia Alumina Carbon Bricks Are Excluded From The Orders

In *Fedmet Resources*, the CAFC reviewed the CIT's determination that the scope of the Orders was ambiguous with respect to MAC bricks, and that Commerce could, therefore, rely on secondary sources (i.e., (k)(2) sources) to determine that Fedmet's MAC bricks were within the scope of the Orders.[3] The CAFC disagreed. Pointing to the clarification by the domestic industry that the petition specifically did not include MAC bricks within its scope, the CAFC reasoned that primary sources for interpreting the scope of the orders (*i.e.*, (k)(1) sources) were sufficient to resolve possible ambiguities with regard to MAC bricks. On that basis, the CAFC held:

---

[3] Commerce's regulations provide that in determining scope, it first takes into account the "initial investigation, and the determinations of the Secretary (including prior scope determinations). 19 C.F.R. § 351.225(k)(1) (*i.e.*, "(k)(1) sources"). If the (k)(1) sources are not dispositive, Commerce will also consider: (i) the physical characteristics of the product; (ii) the expectations of the ultimate purchasers; (iii) the ultimate use of the product; (iv) the channels of trade in which the product is sold; and (v) the manner in which the product is advertised and displayed." 19 C.F.R. § 351.225(k)(2) (*i.e.*, "(k)(2) sources").

> {B}ecause nothing in the (k)(1) sources detracts from the
> otherwise clear statements that *all* MAC bricks were
> excluded from the scope of the underlying investigation, we
> hold that the (k)(1) sources are dispositive of the question
> presented by Fedmet's scope ruling request. . . . Because
> Fedmet's bricks are MAC bricks, we hold that they are not
> covered by the orders.

*Fedmet Resources* at 922 (emphasis in original). The CAFC held that

Fedmet's bricks are outside the scope of the Orders *because* they are

MAC bricks, and all MAC bricks, *i.e.*, magnesia carbon bricks with

added alumina, are outside the scope of the Orders.

Because the petition specifically excluded MAC bricks and

Commerce adopted that exclusion in its final determination, all MAC

bricks are not MCBs, and are not subject to the Orders. *Id.* The CAFC

noted that Commerce had elected to accept the petitioner's

identification of MAC bricks by reference to standard industry

terminology rather specific chemical composition, Commerce could not

later narrow the scope of the express exclusion in the Orders:

> Having explicitly inquired about the exclusion of MAC
> bricks, and having accepted Resco's representation that no
> revisions to the scope language were necessary to exclude
> MAC bricks, Commerce cannot later depart from its previous
> understanding based on its own failure to define non-subject
> merchandise more precisely than "by name."

*Id.* at 922. The CAFC therefore directed Commerce to grant Fedmet's original scope ruling request, which had described its MAC bricks as containing "approximately 8 to 15 percent aluminum oxide (chemical formula Al2O3), more commonly known as alumina, 3 to 15 percent carbon, 75 to 90 percent magnesia." *Id.* at 922-23.

> 2. Commerce's Covered Merchandise Inquiry Expanded The Scope Of The Order To Include Magnesia Alumina Carbon Bricks

In the decision subject to this appeal, Commerce determined that to qualify as a magnesia carbon brick with added alumina, the brick must contain at least 5 percent added alumina and only if measured using XRD testing. Appx01042. If, for example, a brick contained only 4.9 percent added alumina, or was found to contain 5 percent or more alumina measured by some other scientifically valid testing methodology, then according to Commerce, it would not be a magnesia carbon brick with added alumina, but an in-scope MCB. This is directly contradictory to the CAFC's direction that "all MAC bricks were excluded from the scope," and is an impermissible expansion of the Orders.

While Commerce has discretion to interpret the scope of an order, "Commerce cannot 'interpret' an antidumping order so as to change the

scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." *Eckstrom Indus. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001). The CAFC already considered Commerce's unlawful inclusion of MAC bricks within the MCB Orders' scope in *Fedmet Resources*. As discussed above, Fedmet had requested that Commerce confirm that MAC bricks were outside the scope of the MCB Orders as Resco specified during the MCB investigations. In rejecting Fedmet's scope ruling request, Commerce determined that MAC bricks were within the scope of the MCB Orders provided they contained at least 70 percent magnesia and carbon from trace amounts up to 30 percent. *See Fedmet Resources Corp.*, 37 C.I.T. at 797. The CAFC in *Fedmet Resources* reversed Commerce's interpretation as unlawful because Resco unambiguously explained during the investigation that all MAC bricks, as defined by industry standard terminology, are outside the scope of the MCB Orders.

In the Covered Merchandise Inquiry, Commerce has again determined that certain MAC bricks are within the scope of the MCB Orders, finding that MAC bricks are not outside the scope unless they have at least 5 percent added alumina as measured only using a specific

28

testing method. But the CAFC already rejected the imposition of a single cut off point for alumina content because during the investigation "Resco{} fail{ed} to provide a technical definition or 'cut off point' when asked to be more specific." *Fedmet Resources* at 921. The CAFC further rejected the idea that the Orders "exclude only *some* MACBs.'" *Fedmet Resources* at 922 (emphasis in original).

It has long been recognized that scope rulings, including covered merchandise inquiries, cannot be used to expand an order's scope. *Duferco Steel*, 296 F.3d at 1095 ("Commerce cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms.") (quoting *Eckstrom*, 254 F.3d at 1072). Here, Commerce interpreted the MCB Orders to include MAC bricks that that contain less than exactly five percent alumina, as well as MAC bricks containing more than five percent alumina if measured using any testing methodology other than XRD testing, even though the CAFC found that no MAC bricks are in the scope of the Orders. This unlawful change to the scope of the Orders should be reversed.

B. Commerce Unlawfully Interpreted The S&S Refractories Ruling As Superseding The Fedmet Scope Ruling

The issue here appears to be one of first impression: whether Commerce can lawfully interpret a later-in-time scope ruling as overturning, or substantively modifying, a prior scope ruling scope ruling applicable to a different company and product. Here, Commerce in 2015 made a scope ruling regarding products imported by Fedmet, finding that Bastion MAC bricks were excluded from the scope of the Orders. Commerce then made a later scope ruling concerning certain products imported by S&S Refractories in 2017, finding that those specific products imported by that company were excluded from the scope of the Orders only if the composition of the bricks was measured using a specific testing method. Commerce has now determined that the S&S Refractories ruling, not the Fedmet ruling, governs whether the imported Fedmet products at issue in the EAPA proceeding are covered merchandise. With respect to Fedmet, however, the S&S Refractories ruling is not a *prior* scope ruling, but a *subsequent* scope ruling. Moreover, the S&S Refractories ruling clearly states that it applies only to the specific imported products for which S&S Refractories requested a scope ruling. Appx02134. Commerce's reliance on the terms of the

30

S&S Refractories scope ruling to narrow the scope exclusion affirmed in the Fedmet scope ruling is unsupported by substantial evidence and otherwise not in accordance with law.

1.  The S&S Refractories Ruling Is Not A Prior Scope Ruling

Pursuant to Commerce's new regulations, which became effective on November 4, 2021, Commerce conducts the same interpretive analysis from scope rulings in the context of covered merchandise inquiries. 19 C.F.R. § 351.227(f) (2021) ("In determining whether a product is covered by the scope of the order under this section, the Secretary may utilize the analysis described in paragraphs (j) and (k) of § 351.225."). Commerce therefore has the authority to consider "prior scope rulings" within covered merchandise referrals to the same extent as in other scope rulings. On that basis, Commerce relied on the S&S Refractories ruling as a prior scope ruling. The covered merchandise inquiry at issue was not, however, one involving a new product that had not previously been considered. Rather, the merchandise at issue was identical to the merchandise considered in the prior scope ruling made with respect to Fedmet: Fedmet's Bastion MAC bricks. That scope ruling, which was made to implement the CAFC's specific holding that

31

Fedmet's Bastion MAC bricks were outside the scope of the Orders, controls the issue of whether Fedmet's imported merchandise is within the scope of the Orders. Commerce's task in conducting the covered merchandise inquiry was thus to clarify, for the benefit of CBP, how to interpret the existing Fedmet scope ruling, *not* to revisit, modify, or narrow that ruling. Accordingly with respect to Fedmet's imports of MAC bricks, the S&S Refractories ruling is not a *prior* scope ruling, but a *subsequent* scope ruling. To hold otherwise would make scope rulings regarding specific products vulnerable to continual revision based on Commerce's "apparently shifting views regarding the scope" of a given order. *Arcelormittal Stainless Belg. N.V. v. United States*, 694 F.3d 82, 90 (Fed. Cir. 2012).

Here, the domestic industry excluded MAC bricks from the Orders by name, and confirmed that they only sought trade relief on MCBs. Fedmet in its scope ruling request asked that Commerce confirm that its Bastion brand bricks, which is described as containing approximately 8 to 15 percent alumina, were excluded MAC bricks. The CAFC reversed Commerce's initial scope ruling and held without qualification that MAC bricks are outside the scope of the Orders.

32

Commerce's subsequent Fedmet scope ruling implemented that holding. Commerce later determined that other MAC bricks imported by S&S Refractories were also outside the scope of Orders, based upon S&S Refractories' specified alumina threshold as measured using XRD testing. In so doing, Commerce explicitly stated that its ruling applied only to the products considered in that ruling. Appx02134. Commerce's reliance on that later scope ruling to effectively modify and narrow the Fedmet scope ruling is unlawful and contrary to the express holding of the CAFC.

Affirming this procedural fact pattern would mean that even after a company successfully pursues a scope ruling, that a company cannot rely on the determination of Commerce that its products are not covered merchandise. Further, it would mean that Commerce could evade the direction of the CAFC by simply conducting a new scope proceeding covering imports of another party. Accordingly, the Court should hold that on the facts of this case, the S&S Refractories scope ruling cannot be relied as a "prior scope ruling" for purposes of interpreting or clarifying the application of the Fedmet scope ruling to the imported merchandise investigated by CBP in the EAPA proceeding.

2.  The S&S Refractories Ruling Only Applies To S&S Refractories

When making both the Fedmet and S&S Refractories scope rulings, Commerce expressly limited them to the specific imported products for which the requesters had applied for a ruling. As a result, the Fedmet scope ruling governs Fedmet's Bastion MAC bricks, while the S&S Refractories scope ruling applies only to the products identified in that scope ruling request. In its covered merchandise determination, Commerce improperly conflates these two distinct rulings by imposing a requirement that only Bastion MAC bricks imported by Fedmet that also meet the additional requirements of the S&S Refractories ruling qualify as non-covered merchandise. According to Commerce, this is appropriate because it cannot ignore the S&S Refractories ruling when considering the (k)(1) sources and because treating Fedmet and S&S Refractories differently based on their scope rulings could lead to arbitrary results. On both counts, Commerce misses the point.

Even if Commerce were permitted to *consider* the S&S Refractories scope ruling in the covered merchandise inquiry when reviewing (k)(1) sources, *considering* the S&S Refractories scope ruling is not the same as giving it *precedence* over Commerce's previous scope

34

ruling on the same Fedmet products. The question before Commerce was whether bricks imported by Fedmet are MAC bricks or MCBs. One of the (k)(1) sources, the Fedmet scope ruling, is specific to Fedmet's MAC bricks, was the first scope ruling considered by Commerce, and was issued by Commerce pursuant to a mandate by the CAFC. As a matter of law, that scope ruling determines whether the merchandise imported by Fedmet under examination by CBP in the EAPA investigation is, or is not, covered merchandise. The subsequent S&S Refractories scope ruling by its own express terms is not applicable to Fedmet's merchandise.

Moreover, it is clear that Commerce did not fully consider all of the (k)(1) sources. The CAFC held in *Fedmet Resources* that a review of the (k)(1) sources revealed that MAC bricks were excluded from the Orders by name, which was sufficient because they are generally understood in the industry. *Fedmet Resources* at 921 ("In this case, the terms 'magnesia carbon brick' and 'magnesia alumina carbon brick' are ubiquitous and well-understood in the refractories industry."). The CAFC specifically concluded that no particular cut off was applicable for MAC bricks because the domestic industry, by explicitly stating that

35

the scope language was sufficient to exclude these generally understood products, surrendered to the accepted industry definition of "MAC brick." *See id.* Therefore, a proper consideration of the (k)(1) sources demonstrates that the subsequent S&S Refractories scope ruling is not controlling on the issues in the covered merchandise inquiry.

Additionally, Commerce's stated concern that the Fedmet ruling and the S&S Refractories ruling could lead to arbitrary results wherein two materially identical products are treated differently for different importers is misplaced. As discussed above, the CAFC determined that all MAC bricks are outside the scope of the Orders, including Fedmet's bricks which Fedmet defined as containing approximately 8 to 15 percent alumina. The subsequent S&S Refractories ruling merely found that specific products not at issue here qualified as excluded MAC bricks provided that they contained at least five percent alumina measured using a specific testing methodology.[4] Nothing in the S&S Refractories ruling purports to hold that *only* products meeting those

---

[4] S&S Refractories limited its scope ruling to specific MAC bricks containing at least 5 to 15 percent alumina. S&S Refractories did not request that Commerce make any determination with regard MAC bricks containing other amounts of added alumina.

criteria are excluded from the scope of the Orders. To the contrary, Commerce could not have been more clear that its ruling applied only to those particular products and that Commerce was continuing the approach from the Fedmet scope ruling of determining whether a particular products qualified as MAC bricks on a case-by-case basis rather than attempting to develop a universally applicable test. Appx02134 ("{A}s was the case with Fedmet Bastion® MAC bricks, we have limited our analysis to only those MAC bricks identified in the requestors' scope application and not all bricks designated as MAC bricks."). Commerce's decision to take such a case-by-case approach need not result in arbitrary outcomes so long as any scope determinations made regarding the Orders abide by the CAFC's holding in *Fedmet Resources*, which the Department has acknowledged "held that the references to 'MACBs' in the (k)(1) sources resolved the inquiry and that the scope of the Orders did not extend to MACBs," *Certain Magnesia Carbon Bricks From the People's Republic of China and Mexico: Notice of Court Decision Not in Harmony With Final Scope Ruling and Notice of Amended Final Scope Ruling Pursuant to Court Decision*, 80 Fed. Reg. 34,899 (Dep't Commerce June 18, 2015).

Commerce's concern about the arbitrariness is therefore entirely speculative and unfounded.

## C. Commerce's Decision Was Unsupported By Substantial Evidence

### 1. The Record Established That All Tested Bricks Are Magnesia Carbon Bricks With Added Alumina Or Are Otherwise Out Of Scope

In its determination, Commerce concluded that while it is charged with the determining whether merchandise falls within the scope of an AD or CVD order, CBP must determine the nature and composition of the imported merchandise, and that it is the responsibility of CBP to "select, apply, and interpret" laboratory testing on imported merchandise. Appx01040. Commerce therefore "decline{d} to specify one particular method by which such test results can be generated." Appx01042. Notwithstanding this statement, Commerce did exactly that. Although multiple samples of Fedmet's imported products tested by CBP's laboratory were found to contain significant amounts of alumina, Commerce refused to confirm that these products were non-subject MAC bricks under the scope definition confirmed by *Fedmet Resources* and the subsequent Fedmet scope ruling. Commerce's sole reason for finding that it could not make a determination as to whether

38

NON-CONFIDENTIAL

those samples are covered merchandise is that it concluded that CBP

failed to follow the XRD testing methodology mandated in the S&S

Refractories scope ruling.

The testing performed by CBP yielded the following results:

| CBP Lab Report No. | Brick No. | MgO | Al2O3 | Carbon | Al[5] |
|---|---|---|---|---|---|
| [          ]0430 | [ | | | | |
| [          ]1030 | | | | | |
| [          ]1071 | | | | | |
| [          ]0826 | | | | | ] |

*See* Appx01050.

As explained in detail above, all magnesia carbon bricks with

added alumina are outside the scope of the Orders. The record

establishes that, regardless of the testing method, all of the tested

---

[5] The test performed in report [          ]0430 did not attempt to
directly measure aluminum. The XRF scan performed in tests
[          ]1030 and [          ]1071 did not detect measurable
aluminum.

39

bricks contained at least *some* added alumina, and that the vast
majority contained alumina well above the 5 percent added alumina
cut-off applicable to S&S Refractories and the 8 percent alumina
content referenced in the Fedmet scope ruling. Pursuant to the CAFC's
holding in *Fedmet Resources*, all of the tested bricks with at least 70
percent magnesia are MAC bricks and therefore outside the scope of the
MCB Orders. Additionally, pursuant to the express scope of the Orders,
two of the tested bricks are outside the scope of the Orders because they
contain less than 70 percent magnesia. *See* Appx02652 n.18. Commerce
holding otherwise is unsupported by substantial evidence and not in
accordance with law.

Commerce nevertheless concludes that it "cannot determine"
whether the nine samples tested in CBP's [          ] lab constitute
covered merchandise because Commerce determined that the testing
performed by CBP did not conform to the particular XRD testing
methodology adopted by Commerce in the S&S Refractories ruling.
Appx01038-Appx01039. But as discussed extensively above, neither the
CAFC in *Fedmet Resources* nor the Fedmet ruling implementing that
decision contains any requirement that the alumina content be

measured in accordance with any particular testing methodology in order to establish exclusion from the scope of the Orders. To the contrary, in the Fedmet ruling Commerce expressly declined to prescribe any particular testing methodology for measuring alumina content, a position to which Commerce again claims to adhere. Appx01042. It is disingenuous for Commerce to maintain that it will not dictate any particular testing methodology while at the same time refusing to accept the results of any methodology other than XRD as sufficient to allow it to determine whether the tested merchandise constitutes covered merchandise.

### 2. Commerce Failed To Consider Issues With The Testing Performed By CBP

Although Commerce was prepared to disregard laboratory test results conducted by CBP because it disagreed with the testing methodology, Commerce ignored other evidence that undermines the credibility of the one set of test results on which it chose to rely. Fedmet explained in submissions to CBP, MAC bricks are not homogeneous, but rather are composed of large grains, small grains, powders, ultra-fine powders, and a liquid binder. Appx02295. In particular, the alumina in a MAC is in the form of large grains or flakes within the brick that are

41

visible to the naked eye. *See, e.g.*, Appx02386 (photograph of a MAC brick cross section). Thus small variations in the percentage of alumina and other chemicals from brick to brick, or even within samples drawn from the same brick, are normal and expected. *See* Appx02295. If the lattice structure and chemical composition of the brick are not known, and chemicals that are tested as being present are actually part of a different compound or the same compound with a different structure, then XRD alone will not provide accurate data. *See, e.g.*, Appx02360 ("Due to the complexity of XRD data analysis, the chemical composition of your sample must be known in order to accurately pin point the phases present in your sample."). The XRD testing protocol used by CBP, CBPL Method 25-28, recognizes the limitations of XRD testing for quantitative analysis and expressly provides that "analysis of irregularly shaped or inhomogeneous samples by this procedure should be avoided," and confirms that even where the protocol is appropriate, that it would only provide qualitative results. Appx02365.

CBP nonetheless employed this testing protocol in the 0826 report to attempt to measure the chemical composition of inhomogeneous refractory bricks, Appx01239, despite it not providing quantitative data

42

and without considering the inapplicability of the protocol to inhomogeneous bricks. From a review of the detail testing report, there is no indication that CBP attempted to select samples in a manner that would ensure that the sample would be representative of the entirety of the brick. Instead, the testing appears to have been limited to mostly the exterior the MAC bricks, Appx01245 (photographs showing chiseled-off corners), which is primarily graphite and resin. *See, e.g.*, Appx02585 ("The outside of the brick is always covered in a layer of graphite that is spread over the outside surface and is drug along the surfaces of the dies in the press smearing it and obscuring what is below."). As the alumina is dispersed throughout the interior of the bricks, sampling only material from the exterior of the brick could not, and inevitably did not, yield accurate results.

The test results in the 0826 report not only stand in stark contrast to all of CBP's other test results,[6] but also conflict with other record evidence. The reported alumina levels are inconsistent with the results

---

[6] As discussed below, the suggestion that the higher alumina levels found by CBP in the 0430, 1030, and 1071 reports are attributable to the conversion of aluminum powder to alumina during the testing process is not supportable.

of testing performed by the manufacturer of the bricks prior to exportation, as reflected in the Certificate of Quality provided to Fedmet for the specific entry from which the tested samples were drawn. Appx02389. Given Commerce's acknowledgment that the XRD protocol employed by CBP was not quantitative (in addition to the numerous other issues with using that protocol noted above), Appx01039, these testing results prior to export are the only quantitative results of the testing for these bricks on the record, and establish that these bricks were excluded MAC bricks. Indeed, the fact that these test results on the same bricks by those familiar with the appropriate testing methods for inhomogeneous refractory bricks are so different from the results in the 0826 report further highlights the deficiencies in CBP's use of self-admitted inappropriate testing protocol. Furthermore, as discussed above, given that the Fedmet ruling did not mandate any particular testing methodology, the testing by the manufacturer is sufficient to establish the chemical composition of the samples in that report.

Additionally, in the course of the EAPA proceeding, Fedmet retained an independent lab to test the chemical composition of five

samples that were still available to Fedmet. Appx02092. Four of the five samples related specifically to the import entries that were selected by CBP for examination in Fedmet's EAPA Importer questionnaire response, and thus were not simply self-selected samples. *See* Appx02137-Appx02158, Appx02184. The laboratory analysis confirmed that each of the tested samples contained sufficient alumina to qualify the merchandise as Bastion MAC bricks. Commerce should have found that the 0826 report, standing alone, failed to establish that any of the bricks imported by Fedmet constitute covered merchandise.

3. Commerce May Not Disregard The Results Of Nine Of Eleven Samples Tested By CBP

Commerce effectively disregarded the results of CBP's testing in the 0430, 1030, and 1071 reports because CBP did not adhere to the standard adopted in the S&S Refractories ruling that alumina content be measured exclusively using XRD testing. The S&S Refractories ruling, however, was expressly limited by Commerce as applicable to the products examined by Commerce in that ruling. *See* Appx02134 ("{T}his final scope ruling only applies to Yingkou's BP-70A and BP-75A MAC bricks which are imported by S&S that contain at least 5 percent *added* alumina per the specifications provided in the request, as

45

demonstrated by testing using an XRD testing methodology in the PRC prior to export to the United States.") (emphasis in original). There is no similar mandate in the Fedmet ruling, and as noted Commerce expressly disavowed requiring any particular testing methodology in adopting the Fedmet ruling.

Unlike the S&S Refractories ruling, the Fedmet ruling did not require the exact measurement of alumina. Instead, it simply held that "Fedmet's Bastion® MACBs as defined in its Scope Request as containing 'approximately 8 to 15 percent aluminum oxide (chemical formula $Al_2O_3$), more commonly known as alumina . . .'" were not within the scope because they were MAC bricks. Appx02125. Commerce did not prescribe any particular testing methodology to establish the presence of alumina in Fedmet's Bastion bricks, and indeed rejected MCBFTC's calls to require precise cut off points for the alumina content. Appx02123-Appx02125.

Furthermore, in the covered merchandise determination Commerce acknowledged again that the selection of sampling and testing methodologies for measuring the chemical composition of the merchandise is within the purview of CBP, and that Commerce's role is

46

limited to opining whether the chemical composition of the bricks
determined by CBP places them within the scope of the orders. *See*
Appx01040. Yet Commerce nevertheless refused to confirm that CBP's
test results for nine of the eleven samples tested by CBP clearly place
them outside the scope of the Orders. Commerce's refusal was based
solely on the fact that those tests did not measure the alumina content
using XRD testing.

    In response to Fedmet's observation that the Fedmet ruling does
not require the use of XRD testing as a means to try to measure only
added alumina, Commerce responded that it is only considering the pre-
oxidization XRD test as valid because only tests measuring alumina as
imported are useable for determining whether a brick meets the MAC
brick scope exclusion. Appx01042. As discussed, Commerce thereby
improperly narrowed the Fedmet scope ruling by imposing a
requirement that only bricks that meet the additional requirements of
the S&S Refractories ruling.

    Additionally, Commerce's presumption that it is necessary to only
consider the chemical composition of the bricks at the time of
importation, Appx01039, mistakes the nature and purpose of adding

47

alumina to refractory bricks. Refractory bricks are used to line steel furnaces and ladles and are routinely exposed to extremely high temperatures, which is what causes the oxidization of the bricks. Indeed, the expectation of use in high temperature environments is the reason for adding alumina to the brick in the first place. In particular, the alumina reacts with the magnesia in the brick when heated to steel-making temperatures to produce a mineral known as spinel. *Fedmet Resources* at 917. Spinel improves the performance of the bricks in certain areas of the steel ladle by promoting permanent expansion of the brick which prevents the formation of cracks and maintains that expansion even when the ladle cools between heats. *See id.*[7] Given that the expectation is that the bricks will be heated to steel making temperatures when in service, it is not clear why it would be inappropriate to test the samples themselves after being heated to those temperatures, even if this exposes any aluminum in the brick to partial or complete oxidization. Commerce nowhere explains how any alumina resulting from the oxidation of aluminum while the brick is in service

---

[7] Commerce recognized the role of spinel formation in MAC bricks in its discussion of both scope rulings. Appx01014.

48

NON-CONFIDENTIAL

would function any differently with regard to the formation of spinel than the alumina added to the brick during manufacturing.

Commerce's refusal to consider the results of any non-XRD tests solely because they may have caused some oxidization of aluminum is also unreasonable as applied to the CBP testing on the record in this case because the maximum effect on the measured alumina content in the tested sample due to oxidization of aluminum powder is known. For reports 1030 and 1071, all of the tested bricks showed alumina in excess of [              ]. Appx01106, Appx01164. Commerce acknowledged that the oxidization of aluminum into alumina would, at most, double the weight of the aluminum in the brick. Appx01041. Therefore, for the alumina in those samples to have come from the oxidation of aluminum powder, the aluminum powder would have had to have been in excess of [              ] of the weight of the brick. But the pre-oxidization XRD test performed to identify the materials present in the sample only identified magnesia, carbon, and alumina in sufficient quantities to establish them as actually being present in the tested bricks. Appx01111, Appx01170. Any aluminum, if present in the samples, thus would have been in such small quantities to be not reliably identifiable.

49

Commerce's concern that aluminum of such small quantities would skew the measurement of alumina in the sample through its oxidization is illogical and unsupported by substantial evidence.

Finally, Commerce cannot mandate the use of a testing methodology, XRD, that is by its nature qualitative,[8] to evaluate compliance with a quantitative cut-off. Commerce attempts to support this reasoning by claiming that avoiding the oxidizing effect of other testing methodologies is more important than generating a quantitative result. Appx01039. But as Fedmet explained, this is illogical where the goal of the testing is a quantitative measurement of the chemical composition of the sample, and quantitative testing methodologies more

---

[8] XRD involves comparing the sample to a library of known patterns. *See, e.g.*, Appx02349 ("XRD looks at a crystalline material's characteristic X-ray scattering, or diffraction pattern, which reveals the material's atomic structure. Qualitative analysis is possible by comparing the XRD pattern of an unknown material with a library of known patterns."). If the exact structure and composition of the sample are not already known, then this involves guess-work until identifying each pattern, the failure to identify all patterns in the sample, or an acceptance of imperfect matches. *See, e.g.*, *id.*; Appx02340 ("If you freely do the search and match analysis without setting any restrictions, the software may show you completely wrong results. Because XRD is good at distinguishing polymorphs, not isomorphs. If the structural characteristics are exactly identical but the chemical compositions are different, XRD becomes kind of blind.").

appropriate for testing inhomogeneous refractory bricks are available. *See* Appx02471-Appx02473. Commerce claimed that it did not need to consider these other testing methodologies because those employed by CBP were all qualitative, Appx01039, but Commerce ignores the numerous other testing standards on the record that may have been more appropriate than those employed by CBP, and would be more appropriate than Commerce's required qualitative test. *See, e.g.*, Appx02296-Appx02332 (standards used by independent U.S. laboratory); Appx02482-Appx02564, Appx02578-Appx02581 (alternative testing standards suggested by Fedmet). Commerce's failure to consider these other standards, and its requirement that a qualitative test be used to determine a quantitative cut off, are unsupported by substantial evidence.

## VII.  <u>CONCLUSION</u>

For the foregoing reasons we respectfully request that this Court reverse Commerce's covered merchandise determination and direct it to find that in accordance with *Fedmet Resources*, all magnesia carbon bricks with added alumina are outside the scope of the AD/CVD Orders on MCBs from China.

Respectfully submitted,

/s/ R. Will Planert

R. Will Planert
Donald B. Cameron
Julie C. Mendoza
Brady W. Mills
Mary S. Hodgins
Eugene Degnan
Jordan L. Fleischer
Nicholas C. Duffey
Ryan R. Migeed
Stephen A. Morrison

MORRIS, MANNING & MARTIN LLP
1401 Eye Street, N.W., Suite 600
Washington, D.C. 20005
(202) 408-5153

*Counsel for Fedmet Resources Corporation*

## GLOSSARY

| | |
|---|---|
| AD | Antidumping Duty |
| CAFC | Court of Appeals for the Federal Circuit |
| CBP | U.S. Custom and Border Protection |
| CIT | U.S. Court of International Trade |
| CVD | Countervailing Duty |
| EAPA | Enforce and Protect Act |
| ITC | U.S. International Trade Commission |
| MAC Brick or MACB | Magnesia Alumina Carbon Brick |
| MCB | Magnesia Carbon Brick |
| MCBFTC | Magnesia Carbon Brick Fair Trade Committee |
| XRD | X-ray Diffraction |
| XRF | X-ray Fluorescence |

*Certificate Of Compliance*

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 9,744 words including text, footnotes, and headings and excluding the table of contents, table of authorities and counsel's signature block, according to the word count function of Microsoft Word 2016 used to prepare this brief.

<u>/s/ R. Will Planert</u>
R. Will Planert

Dated: December 1, 2023