THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE M. MILLER BAKER

_____

|  |  |  |
|---|---|---|
| FEDMET RESOURCES CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | Court No. 23-00117 |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MAGNESIA CARBON BRICKS | ) | |
| FAIR TRADE COMMITTEE, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

_____

## ORDER

Upon consideration of plaintiff's Rule 56.2 motion for judgment on the agency record; defendant's and defendant-intervenor's responses thereto; plaintiff's reply; the administrative record; and all other pertinent papers, it is hereby

ORDERED that plaintiff's motion is DENIED; and it is further

ORDERED that the Department of Commerce's final

determination is sustained in all respects; and it is further

ORDERED that judgment will be entered in favor of the United

States.


Dated: _____, 2024         _____
       New York, NY                                JUDGE

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE M. MILLER BAKER

| | | |
|---|---|---|
| FEDMET RESOURCES CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | **<u>PUBLIC VERSION</u>** |
| v. | ) ) | Court No. 23-00117 |
| UNITED STATES, | ) ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| MAGNESIA CARBON BRICKS FAIR TRADE COMMITTEE, | ) ) ) | |
| Defendant-Intervenor. | ) ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT UPON THE AGENCY RECORD

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. McCARTHY
Director

REGINALD T. BLADES
Assistant Director

OF COUNSEL:

K. GARRETT KAYS
Attorney
Office of the Chief Counsel
For Trade Enforcement &
Compliance
U.S. Department of Commerce

ANTONIA R. SOARES
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Email: antonia.soares@usdoj.gov

February 9, 2024                    Attorneys for Defendant

# TABLE OF CONTENTS

STATEMENT PURSUANT TO RULE 56.2........................................................2

I.   Administrative Determination Under Review ............................ 2

II.  Statement Of The Issue .................................................... 3

III. Statement Of Facts ........................................................ 3

      A.   Legal Framework For Covered Merchandise Inquiries
           And Scope Rulings ................................................. 3

      B.   The Scope Of The Orders .......................................... 8

      C.   CBP's Covered Merchandise Referral To Commerce ......... 9

      D.   Commerce's Scope Ruling ........................................ 11

           1.   The Two Prior Scope Rulings Under The Orders.... 13

                a.   The 2015 Fedmet Ruling ................................ 13

                b.   The 2017 S&S Refractories Ruling................. 15

           2.   Preliminary Results ............................................ 14

           3.   Final Results ............................................ 16

SUMMARY OF ARGUMENT ..........................................................17

ARGUMENT .............................................................................20

I.   Standard Of Review...................................................20

II.  Commerce Lawfully Interpreted The (k)(1) Sources And
     Did Not Expand The Scope Of The Orders................................ 21

A.    Commerce Lawfully Relied On Both The Fedmet Ruling And The S&S Refractories Ruling In Its Scope Determination ................................................................... 22

B.    Fedmet Ignores Governing Law Concerning Scope Rulings ............................................................................. 23

III.   Commerce's Determination Is Supported By Substantial Evidence ...................................................................... 34

A.    Commerce Reasonably Found That CBP Lab Report No. 0826 Contains Sufficient Information To Determine Whether These Bricks Constitute MAC Bricks .............. 34

B.    Commerce Reasonably Found That CBP Lab Report Nos. 0430, 1030, and 1071 Did Not Provide Sufficient Information To Determine Whether These Tested Bricks Constitute MAC Bricks ...................................................... 45

CONCLUSION ............................................................................57

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Adams Thermal Sys., Inc. v. United States*,
   279 F. Supp.3d 1195 (Ct. Int'l Trade 2017)..........................................26

*Aluminum Extrusions Fair Trade Committee v. United States*,
   617 F. Supp.3d 1296 (Ct. Int'l Trade 2023).........................................25

*Am. Silicon Techs. v. United States*,
   261 F.3d 1371 (Fed. Cir. 2001) .............................................................20

*ArcelorMittal Stainless Belg. N.V. v. United States*,
   694 F.3d 82 (Fed. Cir. 2012) ..................................................................29

*Atl. Sugar, Ltd. v. United States*,
   744 F.2d 1556 (Fed. Cir. 1984) .............................................................20

*Changzhou Trina Solar Energy Co., Ltd. v. United States*,
   975 F.3d 1318 (Fed. Cir. 2020) .............................................................41

*Consol. Edison Co. v. NLRB*,
   305 U.S. 197 (1938)................................................................................20

*Downhole Pipe & Equipment, L.P. v. United States*,
   776 F.3d 1369 (Fed. Cir. 2015) ......................................................41, 56

*Fedmet Res. Corp. v. United States*,
   No. 21-248 (Ct. Int'l Trade) ....................................................................9

*Fedmet Res. Corp. v. United States*,
   755 F.3d 912 (Fed. Cir. 2014) ...................................................... *passim*

*Fedmet Res. Corp. v. United States*,
   911 F. Supp. 2d 1348 (Ct. Int'l Trade 2013).........................................12

*Fedmet Res. Corp. v. United States*,
    70 F. Supp. 3d 1279 (Ct. Int'l Trade 2015) .................................... 12, 13

*Fujitsu Gen. Ltd. v. United States*,
    88 F.3d 1034 (Fed. Cir. 1996) .................................................... 20

*Global Commodity Group LLC v. United States*,
    709 F.3d 1134 (Fed. Cir. 2013) ................................................... 7

*Goldlink Indus. Co. v. United States*,
    431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ................................... 21

*King Supply Co. v. United States*,
    674 F.3d 1343 (Fed. Cir. 2012) ............................................... 8, 31

*Magnum Magnetics Corp. v. United States*,
    657 F. Supp.3d 1387 (Ct. Int'l Trade 2023) ................................... 25

*Meridian Prods., LLC v. United States*,
    890 F.3d 1272 (Fed. Cir. 2018) ................................................. 31

*Meridian Prods., LLC v. United States*,
    851 F.3d 1375 (Fed. Cir. 2017) .......................................... *passim*

*Mid Continent Nail Corp. v. United States*,
    725 F.3d 1295 (Fed. Cir. 2013) ............................................... 7, 19

*Mitsubishi Polyester Film, Inc. v. United States*,
    321 F. Supp. 3d 1298 (Ct. Int'l Trade 2018) ................................... 31

*Novosteel SA v. United States*,
    128 F. Supp. 2d 720 (Ct. Int'l Trade 2001) ................................... 57

*OMG, Inc. v. United States*,
    972 F.3d 1358 (Fed. Cir. 2020) .................................................. 6

*QVD Food Co. v. United States*,
    658 F.3d 1318 (Fed. Cir. 2011) ................................................. 43

*S. F. Candle Co. v. United States,*
  206 F. Supp. 2d 1304 (Ct. Int'l Trade 2002)........................................52

*Sandvik Steel Co. v. United States,*
  164 F.3d 596 (Fed. Cir. 1998)....................................................8

*Sango Int'l L.P. v. United States,*
  484 F.3d 1371 (Fed. Cir. 2007)...................................................7

*Sango Int'l L.P. v. United States,*
  567 F.3d 1356 (Fed. Cir. 2009)..................................................20

*SMA Surfaces, Inc. v. United States,*
  617 F. Supp.3d 1263 (Ct. Int'l Trade 2023)......................................25

*SolarWorld Americas, Inc., v. United States,*
  910 F.3d 1216 (Fed. Cir. 2018)..................................................56

*Sunpreme Inc. v. United States,*
  181 F.Supp.3d 1322 (Ct. Int'l Trade 2016) ......................................26

*Sunpreme Inc. v. United States,*
  946 F.3d 1300 (Fed. Cir. 2002)..............................................50, 51

*Tak Fat Trading Co. v. United States,*
  396 F.3d 1378 (Fed. Cir. 2005)...................................................7

*TMB 440AE, Inc. v. United States,*
  399 F. Supp. 3d 1314 (Ct. Int'l Trade 2019).....................................29

*TMB 440AE, Inc. v. United States,*
  No. 18-00095, 2020 WL 1672841 (Ct. Int'l Trade April 6, 2020).........52

*United States v. Eurodif S.A.,*
  129 S. Ct. 878 (2009) ..........................................................19

*United Steel & Fasteners, Inc. v. United States,*
  947 F.3d 794 (Fed. Cir. 2020)....................................................7

*Vandewater Int'l Inc. v. United States*,
589 F. Supp. 3d 1324 (Ct. Int'l Trade 2022)......................................26

*Walgreen Co. of Deerfield, IL v. United States*,
620 F.3d 1350 (Fed. Cir. 2010) ...........................................................24

*Xerox Corp. v. United States*,
289 F.3d 792 (Fed. Cir. 2002) .............................................................51

**Statutes**

19 U.S.C. § 1516a(b) ..............................................................................19

19 U.S.C. § 1517 ......................................................................................3

19 U.S.C. § 1517(a) ................................................................................10

19 U.S.C. § 1517(b) ...................................................................... *passim*

**Rules**

U.S. Ct. Int'l Trade R. 56.2......................................................................1

**Regulations**

19 C.F.R. § 165 ........................................................................................3

19 C.F.R. § 351.225(e) ............................................................................6

19 C.F.R. § 351.225(k) ................................................................ *passim*

19 C.F.R. § 351.227 ...............................................................................37

19 C.F.R. § 351.227(f) ......................................................................4, 11

**Administrative Decisions**

*Certain Magnesia Carbon Bricks from Mexico and the People's Republic of China*, 75 Fed. Reg. 57,257 (Dept of Commerce Sept. 20, 2020) .......8

*Certain Magnesia Carbon Bricks from the People's Republic of China*,
    75 Fed. Reg. 57,442 (Dep't of Commerce Sept. 21, 2010) ....................8

*Certain Magnesia Carbon Bricks From the People's Republic of China,*
    87 Fed. Reg. 43,238 (Dep't of Commerce July 20, 2022) ...................11

*Certain Magnesia Carbon Bricks From the People's Republic of China*,
    88 Fed. Reg. 10,292 (Dep't of Commerce Feb. 17, 2023) ....................15

*Certain Magnesia Carbon Bricks From the People's Republic of China*,
    88 Fed. Reg. 28,495 (Dep't Commerce May 4, 2023) ......................2, 16

*Certain Magnesia Carbon Bricks From the People's Republic of China
    and Mexico*, 80 Fed. Reg. 34,899 (Dep't of Commerce June 18, 2015) 12

*Regulations To Improve Administration and Enforcement of
    Antidumping and Countervailing Duty Laws,*
    86 Fed. Reg. 52,300 (Dep't of Commerce Sept. 20, 2021) ....................5

# GLOSSARY

| ICP | Inductively Coupled Plasma |
|-----|----------------------------|
| MAC Brick | Magnesia Alumina Carbon Brick |
| MCB | Magnesia Carbon Brick |
| XRD | X-ray Diffraction |
| XRF | X-ray Fluorescence |

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE M. MILLER BAKER

———————————————————————
                                                        )
FEDMET RESOURCES CORPORATION,   )
                                                        )
                          Plaintiff,          )          **<u>PUBLIC VERSION</u>**
                                                        )
        v.                                         )          Court No. 23-00117
                                                        )
                                                        )
UNITED STATES,                           )
                                                        )
                          Defendant,         )
                                                        )
        and                                       )
                                                        )
MAGNESIA CARBON BRICKS          )
FAIR TRADE COMMITTEE,             )
                                                        )
                   Defendant-Intervenor.   )
———————————————————————   )

### DEFENDANT'S RESPONSE TO PLAINTIFF'S<br><u>MOTION FOR JUDGMENT UPON THE AGENCY RECORD</u>

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the

United States, respectfully submits this response to the motion for

judgment upon the agency record filed by plaintiff, Fedmet Resources

Corporation (Fedmet).  Pl. Br., ECF No. 36.  Fedmet challenges the

final determination of a covered merchandise inquiry and scope ruling

by the Department of Commerce (Commerce) finding that certain refractory bricks are covered by the scope of the antidumping duty (AD) and countervailing duty (CVD) orders on magnesia carbon bricks (MCBs) from the People's Republic of China (collectively, the orders). As demonstrated below, Commerce's determination that Fedmet's bricks are within the scope of the orders is supported by substantial evidence and otherwise in accordance with law.  Accordingly, the United States respectfully requests that this Court sustain Commerce's covered merchandise determination and deny Fedmet's motion.

**STATEMENT PURSUANT TO RULE 56.2**

## I.   Administrative Determination Under Review

The administrative determination under review is Commerce's final determination of its covered merchandise inquiry in *Certain Magnesia Carbon Bricks From the People's Republic of China*, 88 Fed. Reg. 28,495 (Dep't Commerce May 4, 2023) (final determ. covered merchandise inquiry) (CMI Final Determination) (Appx01044-1045), and accompanying Issues and Decision Memorandum (IDM) (Appx01029-1043).

II.   <u>Statement Of The Issue</u>

Whether Commerce's scope ruling that Fedmet's product was within the scope of the orders on MCBs from China is supported by substantial evidence and in accordance with law.

III.   <u>Statement Of Facts</u>

A.   <u>Legal Framework For Covered Merchandise Inquiries And Scope Rulings</u>

Under the Enforce and Protect Act (EAPA), 19 U.S.C. § 1517, Federal agencies or interested parties may submit allegations to U.S. Customs and Border Protection (CBP) that merchandise covered by an AD or CVD order has entered the United States through evasion. If the allegations reasonably suggest that evasion is occurring, the statute mandates a formal investigation process and an investigation timeline. 19 U.S.C. § 1517(b). CBP's regulations established additional deadlines and procedures governing the investigation, which facilitate CBP's compliance with its statutorily-required deadlines. 19 C.F.R. § Part 165.

During such investigations, EAPA authorizes CBP to submit a covered merchandise referral to Commerce when CBP is "unable to determine whether the merchandise at issue is covered merchandise{.}"

3

19 U.S.C. § 1517(b)(4)(A).  To conduct its analysis for a covered

merchandise inquiry, Commerce has promulgated regulations

authorizing Commerce to apply the analytical framework and

procedures set forth in its regulation governing scope rulings, 19 C.F.R.

§ 351.225(k).  *See* 19 C.F.R. § 351.227(f).  Section 351.225(k)(1)(i), which

was modified in 2021, provides, in pertinent part, as follows:

> (1) In determining whether a product is covered
> by the scope of the order at issue, the Secretary
> will consider the language of the scope and may
> make its determination on this basis alone if the
> language of the scope, including the descriptions
> of merchandise expressly excluded from the
> scope, is dispositive.

> (i) The following primary interpretive sources
> may be taken into account under paragraph (k)(1)
> introductory text of this section, at the discretion
> of the Secretary:

>> (A) The descriptions of the merchandise
>> contained in the petition pertaining to the
>> order at issue;

>> (B) The descriptions of the merchandise
>> contained in the initial investigation
>> pertaining to the order at issue;

>> (C) Previous or concurrent determinations of
>> the Secretary, including *prior scope rulings,*
>> *memoranda, or clarifications pertaining to*
>> *both the order at issue*, as well as other orders

4

with same or similar language as that of the
order at issue{.}

19 C.F.R. § 351.225(k)(1)(i) (emphasis added).  Thus, pursuant to the

regulation, the "prior scope rulings" that Commerce may consider are

not confined to the ones related to the importer at issue, but extend to

"the order at issue{.}"  *Id.*; *see also Meridian Prods., LLC v. United*

*States*, 851 F.3d 1375, 1384 (Fed. Cir. 2017) ("Commerce's

determination is further supported by 'prior scope rulings interpreting

the *same* antidumping order{, which} are particularly relevant under

{19 C.F.R. §} 351.225(k)(1).'") (brackets and emphasis in the original,

citation omitted).

Commerce modified 19 C.F.R. § 351.225(k)(1)(i) in 2021 due to the

United States Court of Appeals' differing views on "whether the sources

under the current § 351.225(k)(1) are used to interpret the 'plain

meaning' of the text of the scope, or whether the plain meaning analysis

comes first, and only once a determination on the plain meaning is

determined, then the current § 351.225(k)(1) sources are considered."

*Regulations To Improve Administration and Enforcement of*

*Antidumping and Countervailing Duty Laws,* 86 Fed. Reg. 52,300,

52,323 (Dep't of Commerce Sept. 20, 2021) (citing cases); *compare*

5

*Fedmet Res. Corp. v. United States*, 755 F.3d 912, 918 (Fed. Cir. 2014) (holding that the plain language is "paramount" and stating that, in "reviewing the plain language of a duty order," Commerce "must consider" the "descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior determinations) and the Commission"), *with OMG, Inc. v. United States*, 972 F.3d 1358, 1363-66 (Fed. Cir. 2020) (holding that Commerce should look at the (k)(1) factors only after determining that the governing language in the scope order is ambiguous).  As a result of the 2021 modification to the regulation, which applies to the covered merchandise referral at issue, to determine if a product is covered by the scope of an order, Commerce "*may* make its determination" on the basis of the language of the scope alone, and has the discretion to consider the (k)(1) sources, including prior scope rulings related to the order at issue.  19 C.F.R. § 351.225(k)(1) (emphasis added).

If Commerce determines that descriptions of the merchandise contained in the (k)(1) sources are dispositive, Commerce issues a final scope ruling regarding whether the product falls within the order's scope.  *See* 19 C.F.R. § 351.225(e); *see also Tak Fat Trading Co. v.*

6

*United States*, 396 F.3d 1378, 1382 (Fed. Cir. 2005).  The (k)(1) sources are "dispositive" when they "definitively answer the scope question." *Sango Int'l L.P. v. United States*, 484 F.3d 1371, 1379 (Fed. Cir. 2007). The Court reviews "Commerce's analysis of the (k)(1) sources against the product in question" as an issue of fact under the substantial evidence standard.  *United Steel & Fasteners, Inc. v. United States*, 947 F.3d 794, 799 (Fed. Cir. 2020); *see also Meridian Prods.*, 851 F.3d at 1382 (citing *Fedmet Res. Corp.*, 755 F.3d at 919-22).  Only when the (k)(1) sources are not dispositive will Commerce consider the five criteria set forth in § 351.225(k)(2).  *See* 19 C.F.R. § 351.225(k)(2); *see also United Steel and Fasteners, Inc.*, 947 F.3d at 799.

The Court grants "significant deference to Commerce's interpretation of a scope order." *Mid Continent Nail Corp. v. United States,* 725 F.3d 1295, 1300 (Fed. Cir. 2013) (citing *Global Commodity Group LLC v. United States,* 709 F.3d 1134, 1138 (Fed. Cir. 2013)). "This deference is appropriate because the meaning and scope of . . . orders are issues 'particularly within the expertise' and 'special competence' of Commerce." *King Supply Co. v. United States*, 674 F.3d 1343, 1348 (Fed. Cir. 2012) (citing *Sandvik Steel Co. v. United States*,

164 F.3d 596, 600 (Fed. Cir. 1998)).  A party challenging a scope ruling

by Commerce under the substantial evidence standard, as Fedmet does,

"'has chosen a course with a high barrier to reversal.'"  *Id.*  (citation

omitted).

### B.   The Scope Of The Orders

In September 2010, Commerce issued the AD and CVD orders on

MCBs from China.  *See Certain Magnesia Carbon Bricks from Mexico*

*and the People's Republic of China*, 75 Fed. Reg. 57,257 (Dept of

Commerce Sept. 20, 2020) (AD order); and *Certain Magnesia Carbon*

*Bricks from the People's Republic of China*, 75 Fed. Reg. 57,442 (Dep't

of Commerce Sept. 21, 2010) (CVD order).  The scope of the orders

includes, in relevant part:

> certain chemically-bonded (resin or pitch),
> magnesia carbon bricks with a magnesia
> component of at least 70 percent magnesia
> ("MgO") by weight, regardless of the source of raw
> materials for the MgO, with carbon levels ranging
> from trace amounts to 30 percent by weight,
> regardless of enhancements (for example,
> magnesia carbon bricks can be enhanced with
> coating, grinding, tar impregnation or coking,
> high temperature heat treatments, anti-slip
> treatments or metal casing) and regardless of
> whether or not antioxidants are present (for
> example, antioxidants can be added to the mix

> from trace amounts to 15 percent by weight as
> various metals, metal alloys, and metal carbides).
> Certain magnesia carbon bricks that are the
> subject of these orders are currently classifiable
> under subheadings 6902.10.1000, 6902.10.5000,
> 6815.91.0000, 6815.99.2000 and 6815.99.4000 of
> the Harmonized Tariff Schedule of the United
> States ("HTSUS"). While HTSUS subheadings
> are provided for convenience and customs
> purposes, the written description is dispositive.

*Id.*

## C.   CBP's Covered Merchandise Referral To Commerce

On November 27, 2019, the Magnesia Carbon Bricks Fair Trade Committee (the Committee) filed an EAPA allegation with CBP, alleging that Fedmet engaged in evasion of the orders by importing subject MCBs from China and declaring them as non-subject MAC bricks. Appx1048. On January 30, 2020, CBP initiated a formal EAPA investigation regarding whether Fedmet evaded the orders with its entries of merchandise into the United States. Appx1049. On December 3, 2020, CBP rendered its determination of evasion, which was affirmed on April 13, 2021 following a *de novo* administrative review. *Id.* On May 21, 2021, Fedmet appealed CBP's EAPA determination to this Court. *Id.*; *see also Fedmet Res. Corp. v. United States*, No. 21-248 (Ct. Int'l Trade). Thereafter, on January 6, 2022, the

9

Government filed a consent motion for a voluntary remand to allow

CBP to consider several issues raised in Fedmet's motion for judgment

on the administrative record in that matter, which the Court granted.

Appx1049.

During the remand proceedings, on June 30, 2022, CBP

transmitted a covered merchandise referral to Commerce, requesting

that Commerce determine whether Fedmet's merchandise described in

the referral is subject to the orders because CBP was unable to

determine whether the imported merchandise constitutes covered

merchandise within the meaning of 19 U.S.C. § 1517(a)(3).  Appx01048-

1053.  Specifically, CBP requested that Commerce determine whether

11 brick samples taken from merchandise imported by Fedmet

constitute subject MCBs or non-subject MAC bricks.  Appx1050.  In its

covered merchandise referral, CBP reported test results for the 11

Fedmet brick samples from four different labs using multiple testing

methods:

- Report 0826:  The laboratory reported an alumina content for the bricks of [ ] and [ ] percent alumina, using x-ray diffraction (XRD) tests.  Appx1050; Appx01240; Appx01038-01040.

- Report 0430:  CBP determined that the bricks had alumina contents of [███], ███], [███], and [███] percent, based on *post hoc* assumptions after deducting the tested amount of other minerals.  Appx01050; Appx01056; Appx01041.

- Report 1030:  The laboratory found that the bricks contained [███] and [███] percent alumina based on x-ray fluorescence (XRF) testing.  Appx01050; Appx01105-01115.  Report 1030 states that CBP conducted XRD and XRF tests, but Commerce found that the alumina content listed in this report was obtained from the XRF test.  Appx01018; Appx02049-2084.

- Report 1071:  This laboratory found that the bricks contained [███], [███], and [███] percent alumina, based on XRF testing.  Appx01050; Appx01164.  Similar to Report 1030, Report 1071 included both XRD tests and XRF tests, but the test of alumina content was based on XRF.  Appx01018; Appx02049-2084.

### D.  <u>Commerce's Scope Ruling</u>

In response to CBP's covered merchandise referral, on July 20, 2022, Commerce initiated a covered merchandise inquiry.  Appx1030; Appx2681-2682; *see also Certain Magnesia Carbon Bricks From the People's Republic of China,* 87 Fed. Reg. 43,238 (Dep't of Commerce July 20, 2022) (covered merchandise referral initiation and inquiry notice).  To conduct its analysis for a covered merchandise inquiry pursuant to 19 C.F.R. § 351.227(f), Commerce applied the analysis

described in 19 C.F.R. § 351.225(k) governing scope rulings.  Appx1029;
Appx1033.

Pursuant to 19 C.F.R. § 351.225(k)(1)(i), to determine whether the
products at issue are covered by the scope of the orders, Commerce
relied on two prior scope rulings related to the orders at issue to
determine whether refractory bricks containing certain threshold
amounts of alumina are subject merchandise.  Appx1031; Appx1033.
Specifically, Commerce relied on a 2012 scope ruling previously
requested by Fedmet.  Appx1031; Appx02116-2126; *see also Fedmet
Res. Corp. v. United States*, 911 F. Supp. 2d 1348 (Ct. Int'l Trade 2013),
*rev'd*, *Fedmet Res. Corp.*, 755 F.3d 912, *aff'd, Fedmet Res. Corp. v.
United States*, 70 F. Supp. 3d 1279 (Ct. Int'l Trade 2015); *see also
Certain Magnesia Carbon Bricks From the People's Republic of China
and Mexico*, 80 Fed. Reg. 34,899 (Dep't of Commerce June 18, 2015)
(notice of amended final scope ruling pursuant to court decision)
(Fedmet Ruling).  Commerce also relied on another prior scope ruling
regarding merchandise imported by S&S Refractories (S&S Refractories
Ruling).  Appx02131-2136.

1.   <u>The Two Prior Scope Rulings Under The Orders</u>

a.   <u>The 2015 Fedmet Ruling</u>

The Fedmet Ruling involved analyzing whether Fedmet's Bastion® brand magnesia alumina carbon (MAC) bricks constituted subject merchandise.  Appx2117.  Initially, Commerce relied on "(k)(2) criteria" sources under 19 C.F.R. § 351.225(k)(2) to find that Fedmet's Bastion® brand MAC bricks are covered by the scope of the *Orders*. Appx02118; *see also Fedmet Res. Corp.*, 755 F.3d at 919.  The Federal Circuit held that Commerce unlawfully relied on (k)(2) sources when substantial evidence showed that (k)(1) sources were dispositive in determining that MAC bricks were not covered by the *Orders*.  *See Fedmet Res. Corp.*, 755 F.3d at 922; *see also* Appx02118-2119.

Pursuant to the Federal Circuit's remand, Commerce determined that Fedmet's MAC bricks — containing "approximately 8 to 15 percent aluminum oxide (chemical formula Al2O3), more commonly known as alumina, 3 to 15 percent carbon, 75 to 90 percent magnesia, as well as smaller amounts of silicon dioxide, calcium oxide, iron oxide, {and} titanium dioxide" — were non-subject merchandise by virtue of the alumina content in the bricks and were excluded from the scope of the

13

orders. *Fedmet Res. Corp.*, 70 F. Supp. 3d at 922-923; *see also*
Appx02125.

### b.  The 2017 S&S Refractories Ruling

Consistent with 19 C.F.R. § 351.225(k)(1) and the Fedmet Ruling,
Commerce determined that the products in question imported by S&S
Refractories were MAC bricks and, thus, outside the scope of the orders
because they contained at least five percent *added* alumina.
Appx02134.  Further, at the request of parties in the S&S Refractories
scope proceeding, Commerce considered whether XRD testing, or an
alternate "wet chemistry" testing methodology, was appropriate for
determining alumina levels.  Appx1234-1235.  Commerce determined
that XRD testing in China prior to export to the United States would
constitute a reliable means of determining the alumina content of the
merchandise and, in turn, whether the merchandise was covered by the
orders.  Appx02135.  Commerce also found that other testing
methodologies caused distortions in the reported alumina content in the
tested merchandise due to the creation of alumina through oxidation
during the testing process.  Appx02032-02033.  Unlike the other testing
methodologies, Commerce found that XRD testing is a "a non-

destructive testing methodology that both parties acknowledge can differentiate pre-existing aluminum metal from alumina so that the actual 'added' alumina content can be measured."  Appx2033.

### 2.  Preliminary Results

In its preliminary covered merchandise results, pursuant to 19 C.F.R. § 351.225(k)(1)(i), Commerce relied on both the Fedmet and S&S Refractories Rulings in finding that, based on the XRD test results in Report 0826, the refractory bricks identified by the covered merchandise referral and imported by Fedmet do not reflect the chemical composition of excluded MAC bricks and, thus, are covered by the orders on MCBs from China.  Appx1008; Appx1013-1019. Commerce also preliminarily found that it was unable to determine whether certain other samples tested by CBP have the chemical composition of bricks subject to the orders.  Appx01006; Appx01018-1019; *see also Certain Magnesia Carbon Bricks From the People's Republic of China*, 88 Fed. Reg. 10,292 (Dep't of Commerce Feb. 17, 2023) (prelim. results covered merchandise inquiry) (Appx1021-1022).

Subsequently, Fedmet filed its case brief, arguing that Commerce should find that none of the tested samples constitute subject MCBs,

and that Commerce improperly amended the Fedmet Ruling.
Appx02640. Thereafter, the Magnesia Carbon Bricks Fair Trade
Committee (the Committee), the petitioners in the administrative
proceeding, submitted its rebuttal brief, arguing that Commerce
correctly found that the samples tested in Report 0826 were in-scope
MCBs, and that the samples tested in Reports 0430,1030 and 1071 were
inconclusive. Appx02756. The Committee also argued that Commerce
did not violate any holding by the Federal Circuit when relying on the
S&S Refractories Ruling. *Id.*

### 3.   Final Results

After analyzing the parties' arguments, Commerce did not change
its findings in the preliminary results and continued to find that, based
on the XRD test in Report 0826, two of the 11 brick samples did not
reflect the chemical composition of excluded MAC bricks and are
covered by the orders. Appx01029; *Certain Magnesia Carbon Bricks
From the People's Republic of China*, 88 Fed. Reg. 28,495 (Dep't of
Commerce May 4, 2023) (final determ. covered merchandise inquiry).
Commerce explained that it found the XRD test to be a reliable test for
determining the alumina consent of bricks during at the time of

16

importation.  Appx1034; Appx1039.  Commerce also found that it was unable to determine whether the remaining nine samples' chemical composition reflect a subject or non-subject brick based on the test reports because those reports did not provide reliable information on the alumina content of the bricks at the time of importation.  Appx1034-1035.

Fedmet's appeal followed.  *See* ECF Nos. 1, 16 and 18.

## SUMMARY OF ARGUMENT

Fedmet's challenge to Commerce's scope ruling is based on a misreading of the governing law and the record evidence, as well as mere disagreement with the weight that Commerce accorded the record evidence.  Thus, Fedmet has failed to clear the high barrier for reversal of Commerce's scope ruling.

When analyzing whether Fedmet's imported products are covered under the scope of the orders based on (k)(1) sources, Commerce reasonably exercised its discretion under 19 C.F.R. § 351.225(k)(1)(i) to consider its two prior scope rulings related to the orders — the Fedmet Ruling and the S&S Refractories Ruling — when making its determination.  Although both scope rulings are instructive as to what

17

constitutes a MAC brick, the S&S Refractories Ruling was the only ruling in which Commerce considered testing methods. Specifically, in the S&S Refractories Ruling, Commerce found that, unlike the other testing methodologies on the record, the XRD test could measure added alumina present in the brick through the production process rather than subsequently developed through oxidation during the testing process. Because measuring alumina is critical to evaluating whether refractory bricks satisfy the MAC-brick exclusion, Commerce reasonably relied on the S&S Refractories Ruling to evaluate whether Fedmet's bricks satisfy the requisite alumina content upon importation to be classified as a MAC brick.

Fedmet's legal and evidentiary challenges to Commerce's scope ruling turn on one key issue: that Commerce unlawfully considered the S&S Refractories Ruling in its analysis rather than confining its analysis to the Fedmet Ruling related to Fedmet's bricks. The plain terms of 19 C.F.R. § 351.225(k)(1)(i)(C) and binding precedent foreclose Fedmet's argument. Under the regulation, Commerce's consideration of "prior scope rulings" is not confined to a ruling related to the importer at issue, but extends to all rulings "pertaining to . . . the order at

18

issue{.}"  19 C.F.R. § 351.225(k)(1)(i)(C).  Thus, Commerce lawfully considered both of the prior scope rulings pertaining to the orders at issue.  Binding precedent supports Commerce's reliance on both prior scope rulings.

As for Fedmet's other challenges, they boil down to nothing more than disagreement with Commerce's determination that all the testing methodologies on the record are not created equally in terms of reliability for an alumina measurement at the time of importation. Based on that record evidence, Commerce exercised its discretion and applied its expertise in rationally concluding that only one of the tests on the record — the XRD test in Report 0826 — could accurately measure the alumina content of the bricks without introducing distortions during the testing process.  In so doing, Commerce did not mandate the use of the XRD test, but reasonably found that it was the sole reliable testing option on the administrative record.  Fedmet's disagreement with Commerce's assessment of the record evidence does not render Commerce's scope ruling unsupported by that evidence. Accordingly, the Court should sustain Commerce's scope ruling and deny Fedmet's motion.

19

# ARGUMENT

## I.   Standard Of Review

The Court grants "significant deference to Commerce's interpretation of a scope order." *Mid Continent Nail Corp.,* 725 F.3d at 1300 (citation omitted).  The Court should uphold Commerce's scope ruling unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i); *see also United States v. Eurodif S.A.*, 129 S. Ct. 878, 886 n.6 (2009) ("The specific factual findings on which {Commerce} relies in applying its interpretation are conclusive unless unsupported by substantial evidence."); *Sango Int'l L.P. v. United States*, 567 F.3d 1356, 1362 (Fed. Cir. 2009) (substantially same).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support' the conclusion reached," *Sango Int'l L.P.*, 567 F.3d at 1362 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)), "taking into account the entire record, including whatever fairly detracts from the substantiality of the evidence." *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

"Even if it is possible to draw two inconsistent conclusions from evidence in the record, such a possibility does not prevent Commerce's determination from being supported by substantial evidence." *Am. Silicon Techs. v. United States,* 261 F.3d 1371, 1376 (Fed. Cir. 2001) (citing *Fujitsu Gen. Ltd. v. United States,* 88 F.3d 1034, 1044 (Fed. Cir. 1996)). "{T}he Court may not substitute its judgment for that of the {agency} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*" *Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) (citations and internal quotations omitted).

## II. Commerce Lawfully Interpreted The (k)(1) Sources And Did Not Expand The Scope Of The Orders

Fedmet contends that Commerce expanded the scope of the orders in its scope ruling by unlawfully relying on the S&S Refractories Ruling rather than confining its analysis to the Fedmet Ruling. Pl. Br. at 25-38. Fedmet's argument is contrary to the plain terms of the regulation and binding precedent.

### A.   Commerce Lawfully Relied On Both The Fedmet Ruling And The S&S Refractories Ruling In Its Scope Determination

Consistent with 19 C.F.R. § 351.225(k)(1), Commerce relied on the Fedmet and S&S Refractories Rulings when analyzing whether Fedmet's imported refractory bricks satisfy the alumina content threshold to constitute non-subject MAC bricks.  Appx1033-1036.  Both of these scope rulings add important context for Commerce's analysis. The Fedmet Ruling and the related litigation established a threshold that bricks that contain at least eight percent alumina constituted non-subject MAC bricks while the S&S Refractories Ruling found that bricks were outside the scope if they contained at least five percent *added* alumina.  Appx1031, Appx2125, Appx2134.  The S&S Refractories Ruling provided another threshold by which to determine whether bricks constitute MAC bricks in finding that the alumina must be "added" — that is, developed in the brick through the production process and present at the time of importation rather than subsequently developed through oxidation during the testing process. Appx01033-1034.  Specifically, in the S&S Refractories scope proceeding, Commerce considered whether XRD testing, or an alternate "wet chemistry" testing methodology, was appropriate for determining

22

alumina levels.  Appx2134-2135.  Commerce determined that XRD testing in China prior to export to the United States would constitute a reliable means of determining the alumina content of the merchandise and, in turn, whether the merchandise was covered by the orders. Appx02135.  Commerce also found that other testing methodologies convert aluminum metal present in the brick to alumina, resulting in a higher percentage of alumina above the actual amount of "added" alumina present in the refractory brick before the test.  Appx02032-2033.  Thus, Commerce found that XRD testing is a "non-destructive testing methodology that can differentiate pre-existing aluminum metal from alumina, so that the actual "added" alumina content can be measured."  Appx2033.  Because the testing of the bricks is at issue to determine the appropriate alumina threshold, it was both reasonable and necessary for Commerce to rely on both the Fedmet and S&S Refractories Rulings.

### B.   Fedmet Ignores Governing Law Concerning Scope Rulings

Commerce's lawful reliance on both the Fedmet Ruling and the S&S Refractories Ruling notwithstanding, Fedmet raises several challenges, all of which lack merit.

First, Fedmet contends that Commerce's determination that qualifying as a non-subject MAC brick required that the brick must contain at least five percent added alumina as measured using XRD testing "is directly contradictory to the {Federal Circuit's} direction that 'all MAC bricks were excluded from the scope,' and is an impermissible expansion of the Orders."  Pl. Br. at 27; *see also id.* at 25-29.  Fedmet contends that the Fedmet Ruling "controls the issue of whether Fedmet's imported merchandise is within the scope of the Orders."  *Id.* at 31-32; *see also id.* at 33.  Fedmet is wrong.

Section 351.225(k)(1)(i) provides that among the "primary interpretive sources {that} may be taken into account under paragraph (k)(1) . . . at the discretion of {Commerce}" are:

> Previous or concurrent determinations of the Secretary, *including prior scope rulings, memoranda, or clarifications pertaining to both the order at issue*, as well as other orders with same or similar language as that of the order at issue{.}

19 C.F.R. § 351.225(k)(1)(i) (emphasis added).  Thus, pursuant to the regulation, in considering "prior scope rulings{,}" Commerce is not confined to only those rulings involving the same importer, but may consider rulings "pertaining to . . . the order at issue{.}"  *Id.*

24

Binding precedent supports Commerce's reliance on both the Fedmet and S&S Refractories Rulings. *See Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1384 (Fed. Cir. 2017) ("Commerce's determination is further supported by 'prior scope rulings interpreting the *same* antidumping order{, which} are particularly relevant under {19 C.F.R. §} 351.225(k)(1).'") (brackets and emphasis in the original, citation omitted); *Walgreen Co. of Deerfield, IL v. United States*, 620 F.3d 1350, 1356 (Fed. Cir. 2010) ("The primary source in making a scope ruling is the antidumping order being applied (and the prior scope determinations applying that order), not necessarily the scope rulings made in unrelated antidumping orders.").

This Court's decisions also support Commerce's reliance on both the Fedmet and S&S Refractories Rulings. *See Magnum Magnetics Corp. v. United States*, 657 F. Supp.3d 1387, 1397 (Ct. Int'l Trade 2023) ("Commerce's reliance on the InterDesign Scope Ruling was reasonable as a (k)(l) source because the prior scope ruling is a permissible source and provided guidance to Commerce's interpretation of the scope language."); *id.* at 1398 ("Commerce's consideration of the prior scope rulings as a (k)(1) source was reasonable and in accordance with law."),

*appeal docketed*, No. 24-1164 (Fed. Cir. Nov. 20, 2023); *Aluminum Extrusions Fair Trade Comm. v. United States*, 617 F. Supp.3d 1296, 1311-1313 (Ct. Int'l Trade 2023) (upholding Commerce's scope ruling because it was consistent with its prior scope rulings related to the orders); *SMA Surfaces, Inc. v. United States*, 617 F. Supp.3d 1263, 1282, 1283 (Ct. Int'l Trade 2023) (rejecting plaintiff's challenge to "Commerce's citation to a prior scope determination ruling involving the same crushed glass exclusion" in the orders at issue because "the text of the code makes no distinction based on whether a prior scope determination has been appealed to the Court of International Trade; any weighing is left to Commerce's discretion and our deferential standard of review."); *Adams Thermal Sys., Inc. v. United States*, 279 F. Supp.3d 1195, 1205 (Ct. Int'l Trade 2017) (rejecting plaintiff's "argu{ment} that the Machine Parts Scope Ruling is "neither binding nor persuasive{ } because "{t}hese arguments miss the point{;} {Commerce's} consideration of the Machine Parts Scope Ruling (and the Motor Cases Scope Ruling) was in the context of the application of one of the criteria of 19 C.F.R. § 351.225(k)(1){.}"); *Sunpreme Inc. v. United States*, 181 F.Supp.3d 1322, 1338 (Ct. Int'l Trade 2016) ("Commerce

may rely upon prior determinations in interpreting the scope of an antidumping or countervailing duty order. 19 C.F.R. § 351.225(k)(1). Plaintiff points to no reason why such reliance is unreasonable."); *see also Vandewater Int'l Inc. v. United States*, 589 F. Supp. 3d 1324, 1330 (Ct. Int'l Trade 2022) ("Commerce may consider the following interpretive sources in making its determination . . . including prior scope determinations pertaining to the subject order, and other orders with similar language{.}") (citing 19 C.F.R. § 351.225(k)(1)(i)).

The S&S Refractories Ruling directly addresses relevant legal and factual issues related to testing methodologies when evaluating alumina content under the orders at issue and, thus, is applicable to this proceeding.  In fact, Fedmet placed the S&S Refractories Ruling on the record to support its argument that its bricks should be excluded from the scope of the orders.  Appx02090.  Thus, Commerce was not confined to the Fedmet Ruling in its analysis and lawfully considered the S&S Refractories Ruling. *See, e.g., Meridian Prods., LLC*, 851 F.3d at 1384.  Further, in asserting that only the Fedmet Ruling controls, Fedmet is seeking to have Commerce ignore record evidence, including CBP's testing methodologies and Commerce's analysis of the distortion

27

from certain testing methodologies addressed in the S&S Refractories Ruling.  Appx1034.  Commerce could not reasonably rely on the Fedmet Ruling regarding an issue — testing methodologies — that the Ruling did not address.

Second, Fedmet contends that Commerce unlawfully interpreted the S&S Refractories Ruling as "superseding" the Fedmet Ruling because the S&S Refractories Ruling is not a prior scope ruling related to Fedmet, but a subsequent scope ruling.  Pl. Br. at 30-31.  As discussed above, pursuant to the regulation, Commerce's consideration of "prior scope rulings" is not confined to the ones related to the importer at issue, but extends to rulings "pertaining to . . . the order at issue{.}"  19 C.F.R. § 351.225(k)(1)(i); *see also, e.g., Meridian Prods., LLC*, 851 F.3d at 1384.  Also erroneous is Fedmet's contention that Commerce cannot rely on the 2017 S&S Refractories Ruling because it is "a subsequent scope ruling{.}"  Under review is Commerce's 2023 scope ruling arising from CBP's covered merchandise referral related to Fedmet's products and, thus, the S&S Refractories Ruling constitutes a "prior scope ruling{ }" related to "the order at issue{.}"  19 C.F.R. § 351.225(k)(1)(i)(C).  In support of its argument, Fedmet relies on

28

*Arcelormittal Stainless Belg. N.V. v. United States*, 694 F.3d 82, 90 (Fed. Cir. 2012) (Pl. Br. at 32), but that case does not address Commerce's reliance on prior scope rulings under the regulation.

Significantly, when analyzing the pre-2021 version of 19 C.F.R. § 351.225(k)(1), which stated that Commerce "must" consider prior scope rulings, this Court held that Commerce's failure to consider such sources renders Commerce's analysis not in accordance with the law. *See TMB 440AE, Inc. v. United States*, 399 F. Supp. 3d 1314, 1321-22 (Ct. Int'l Trade 2019). Commerce's 2021 modification to the regulation changed the regulatory language from requiring Commerce to consider prior scope rulings to now providing that Commerce "may" consider such rulings when considering the plain language of the scope. 19 C.F.R. § 351.225(k)(1)(i)(C). Thus, when Commerce received the covered-merchandise referral from CBP, section 351.225(k)(1)(i)(C) expressly afforded Commerce with the discretion to consider the S&S Refractories Ruling because it constitutes a "prior scope ruling{} . . . pertaining to . . . the order at issue{.}" *Id.*

Third, Fedmet contends that the S&S Refractories Ruling "applies only to the specific imported products for which S&S Refractories

29

requested a scope ruling{,}" and that Commerce cannot rely on the S&S Refractories Ruling "to narrow the scope exclusion affirmed in the Fedmet scope ruling{.}"  Pl. Br. at 30-31; *see also id.* at 34-38. Commerce rejected this argument, explaining that "the fact that Commerce limited its ruling in each of the above-referenced scope inquiries to the facts before the agency does not mean that Commerce must ignore such rulings here."  Appx1033-1034.  Commerce further explained that "{f}ailing to consider the *S&S Refractories Ruling* — simply because it did not relate specifically to Bastion® brand merchandise or involve Fedmet as a party — could lead to arbitrary results in this proceeding wherein two products with materially identical physical properties are treated differently for the purposes of scope classification."  Appx1034.

Fedmet's contention that this rationale is "misplaced" and "entirely speculative and unfounded," Pl. Br. at 36, 37, ignores governing law.  Commerce's consideration of both the Fedmet Ruling and the S&S Refractories Ruling is authorized by section 351.225(k)(1)(i)(C), which affords Commerce the discretion to consider prior scope rulings when, as in this case, they apply to the same or

30

similar orders.  *See, e.g., Meridian Prods., LLC*, 851 F.3d at 1384.

Further, the Court "afford{s} significant deference to Commerce's own

interpretation of its orders, mindful that scope determinations are

'highly fact-intensive and case-specific.'"  *Mitsubishi Polyester Film,*

*Inc. v. United States*, 321 F. Supp. 3d 1298, 1309 (Ct. Int'l Trade 2018)

(citing *Meridian Prods. v. United States*, 890 F.3d 1272, 1277 (Fed. Cir.

2018)); *see also King Supply Co.*, 674 F.3d at 1345, 1348.

   Fourth, Fedmet contends that sustaining Commerce's scope ruling

in this case "would mean that even after a company successfully

pursues a scope ruling, that a company cannot rely on the

determination of Commerce that its products are not covered

merchandise{,}" and that "Commerce could evade the direction of the

{Federal Circuit} by simply conducting a new scope proceeding covering

imports of another party."  Pl. Br. at 33.  Fedmet's argument ignores

the distinct factual circumstances between the 2015 Fedmet Ruling and

Commerce's 2023 scope ruling at issue here related to CBP's covered

merchandise referral under EAPA.

   The Fedmet Ruling determined that Fedmet's MAC bricks were

non-subject merchandise by virtue of the alumina content of its bricks

31

(Appx01009; Appx02116-02126), but Commerce's analysis in response to CBP's covered merchandise referral was not limited to the Fedmet Ruling given that section 351.225(k)(1)(i)(C) authorizes Commerce to also consider prior scope rulings related to the orders at issue.  19 C.F.R. § 351.225(k)(1)(i)(C).  Because factual issues addressed in the S&S Refractories Ruling are also relevant to Fedmet's bricks in the EAPA investigation and CBP's covered merchandise referral, Commerce lawfully considered that ruling.

Specifically, the S&S Refractories Ruling finds that, if bricks contained at least five percent added alumina present in the brick through the production process, rather than subsequently developed through oxidation during the testing process, those bricks would be outside the scope of the orders.  Appx01015; Appx02131-02136.  To determine whether alumina is added through oxidation in the testing process, the S&S Refractories Ruling addresses how certain testing methods impact the alumina content of the MAC bricks, thus improving Commerce's understanding of how bricks can be tested for applicability to the orders' scope.  Appx02032-2033.  With the S&S Refractories Ruling, determining the alumina content based on testing

32

methodologies on the record is imperative to determining whether
merchandise constitutes a MAC brick.  Appx2033.

   Also without merit is Fedmet's argument that it should be entitled
to rely on the Fedmet Ruling from 2015 that its products are not
covered merchandise.  Such an outcome would require Commerce and
CBP to ignore application of EAPA's covered-merchandise statutory and
regulatory framework, which requires CBP to seek a covered
merchandise referral from Commerce when CBP is "unable to
determine whether the merchandise at issue is covered merchandise{.}"
19 U.S.C. § 1517(b)(4)(A).  Nor was Commerce required to ignore the
relevant S&S Refractories Ruling when conducting its analysis in
response to CBP's covered merchandise referral.  Far from seeking to
"evade the direction of the {Federal Circuit}" related to the Fedmet
Ruling, Commerce's consideration of the S&S Refractories Ruling was
consistent with its scope ruling regulation.  *See, e.g., Adams Thermal
Sys., Inc.*, 279 F. Supp.3d at 1206 ("Because these rulings are on point,
and because the scope language is reasonably interpreted to include
{plaintiff's} fittings, it was permissible under § 351.225(k)(1) for
Commerce, on this record, to rely on them in support of its

conclusion{.}"); *id.* ("{Plaintiff's} disagreement with it notwithstanding, the {prior scope} ruling is directly relevant to the issue Commerce confronted when considering {plaintiff's} Scope Ruling Application.").

## III.  Commerce's Determination Is Supported By Substantial Evidence

Fedmet asserts that Commerce's scope ruling is not supported by substantial evidence because the agency unlawfully relied on S&S Refractories to mandate a testing methodology based on the XRD test, and Commerce failed to consider evidence undermining the reliability of the XRD test.  Pl. Br. at 38-51.  As demonstrated below, Fedmet's arguments are based on a misreading of the administrative record and raise nothing more than disagreement with Commerce's interpretation of the record evidence concerning the reliability of the testing methods.

### A.  Commerce Reasonably Found That CBP Lab Report No. 0826 Contains Sufficient Information To Determine Whether These Bricks Constitute MAC Bricks

To determine whether a brick constitutes a MAC brick, it is imperative to measure the alumina content of the bricks as it existed at the time of sale or importation — that is, before the oxidation of any aluminum into alumina as the result of a testing procedure. Appx01015-1016.  In the S&S Refractories Ruling, Commerce

34

considered the testing options proposed by outside parties and determined that the XRD test could separately measure and report the added alumina content.  Appx01035.  Relying on CBP's use of the XRD testing methodology, Commerce determined that none of the bricks included in Report 0826 have an alumina content level sufficiently high enough to meet the percentage required in the S&S Refractories Ruling. Appx01039.  Accordingly, Commerce determined that the bricks tested for Report 0826 do not qualify as MAC bricks and, thus, are covered by the scope of the orders.  *Id.*

Commerce's reliance on the S&S Refractories Ruling and its explanation of the XRD test is integral to determining whether Fedmet's bricks are covered by the scope of the orders.  As Commerce explained, in S&S Refractories, the agency was asked by an interested party to opine on an appropriate testing method for the merchandise to be imported.  Appx01017; Appx02134-2135.  The parties in that segment provided factual information and comments regarding two particular testing methodologies:  XRD testing and "wet chemical" tests. Appx01017.  Commerce explained that, given that the focus of applying the alumina content threshold for MAC bricks is on pre-oxidation levels,

the XRD test was appropriate under the circumstances; the XRD test can measure alumina as it exists in the brick upon sale and importation, without reporting oxidized aluminum as alumina in the results. *Id.* Further, Commerce found that other testing methods would cause aluminum in the test sample to oxidize and be converted to alumina. Appx01016; Appx02462. Commerce also found that potential distortions associated with the alternative testing methodologies presented to Commerce are relevant to determining alumina content upon importation. Appx01034. Thus, Commerce reasonably exercised its discretion to rely on the S&S Refractories Ruling related to XRD testing in determining what constitutes a MAC brick. *See, e.g.*, *SMA Surfaces, Inc.*, 617 F. Supp.3d at 1283 (holding that "any weighing {of prior scope rulings} is left to Commerce's discretion and our deferential standard of review").

Commerce's reasonable exercise of its discretion notwithstanding, Fedmet raises several challenges to Commerce's findings related to the XRD test in Report 0826, all of which are either based on a misreading of the record or mere disagreement with Commerce's interpretation of record evidence. First, Fedmet contends that Commerce's scope ruling

was unsupported by substantial evidence because, regardless of the

testing method used, the record established that all tested bricks

contain some added alumina to satisfy either the S&S Refractories

Ruling or the eight percent cut-off from the Fedmet Ruling.  Pl. Br. at

38-40.  Commerce found that only Report 0826 contained the

information necessary to determine whether the bricks constitute MAC

bricks and, thus, are covered by the orders.  Appx1038-1039.

Specifically, Commerce found that the alumina percentages included in

Report 0826 were obtained through XRD testing, which provides the

alumina content of the merchandise as it exists in the bricks upon sale

and importation.  Appx1039.  Based on the alumina content results of

Report 0826, Commerce found that none of the bricks included in that

report had an alumina content level sufficiently high enough to meet

the percentage required in the S&S Refractories Ruling.  *Id.*

Accordingly, pursuant to 19 C.F.R. § 351.227 and 19 C.F.R.

§ 351.225(k)(1)(i)(C), Commerce concluded that the bricks tested for

Report 0826 did not qualify as MAC bricks and, thus, are covered by the

scope of the orders.  *Id.*

Related to Reports 0430, 1030, and 1071, Commerce disagreed with Fedmet's arguments that the merchandise from those reports constituted non-subject MAC bricks because the reports did not provide reliable information on the alumina content of the bricks at the time of importation.  Appx1041-1042  Commerce emphasized that test results must separately report the levels of both aluminum and alumina in the brick at the time of importation to be useable for determining whether a brick meets the MAC brick scope exclusion.  Appx1042.  Commerce further explained that the percentages upon which Fedmet relied had been affected by the oxidization caused by the type of test used for those reports, and there was no basis to believe that such distortions have been accounted for in the test reports.  *Id.*  Fedmet's disagreement with Commerce's reasoning and weighing of the record evidence does not render Commerce's determination unsupported by substantial evidence.

Second, Fedmet contends that Commerce unlawfully failed to determine whether the nine samples tested in CBP's lab constitute covered merchandise based on Commerce's determination that the testing performed by CBP did not conform to the XRD testing methodology "adopted by Commerce in the S&S Refractories ruling."

38

Pl. Br. at 38-40 (citing Appx01038-01039).  Fedmet contends that

Commerce's failure to reach this issue was unlawful because neither the

Federal Circuit in *Fedmet Resource*s nor the Fedmet Ruling

implementing that decision required that the alumina content be

measured with any particular testing methodology to establish

exclusion from the scope of the orders.  *Id.* at 40.

    This argument fails because Commerce was not limited to Federal

Circuit's decision in *Fedmet Resource*s or the Fedmet Ruling in

determining whether Fedmet's bricks are covered merchandise.

Pursuant to section 351.225(k)(1)(i)(C), Commerce considered the S&S

Refractories Ruling, which is a relevant prior scope ruling related to the

orders.  Appx1033.  As Commerce explained, "{w}hile the *Fedmet*

*Ruling* did not direct a specific testing methodology to determine

alumina content, parties asked Commerce to consider XRD testing and

'wet chemical' tests in the *S&S Refractories Ruling*."  Appx1034.  In the

S&S Refractories Ruling, Commerce found the XRD test to be a reliable

test for determining initial alumina content — that is, alumina "added"

during the production process, and Commerce identified potential

distortions associated with the alternative testing methodologies.  *Id.*

Commerce concluded that "{t}his information is plainly relevant to the fundamental decision regarding the requisite alumina content upon importation." *Id.* Commerce also rejected Fedmet's argument suggesting that acknowledging such distortions constitutes a modification to the Fedmet Ruling; Commerce could not direct CBP to apply a specific alumina content range regardless of whether the tested merchandise, as imported, actually satisfies the MAC brick exclusion criterion. *Id.*

Third, Fedmet asserts that Commerce failed to consider record evidence that undermines the credibility of the XRD test. Pl. Br. at 41-43. Specifically, Fedmet contends that (1) the XRD test alone does provide accurate data because Fedmet's bricks in report No. 0826 were inhomogeneous — that is, have small variations in the percentage of alumina and other chemicals from brick to brick and even within samples drawn from the same brick, which could lead to small variations in the percentage of alumina in the tested bricks; (2) there is no indication that CBP attempted to select samples in a manner that would ensure that the sample would be representative of the entirety of the brick; and that (3) the testing appears to have been limited to

40

mostly the exterior the MAC bricks.  *Id.* at 42, 43.  Commerce found

that record evidence demonstrated that the tested samples are crushed

into powder prior to testing, and that Fedmet presented no record

evidence demonstrating that the samples were inhomogeneous after

such crushing.  Appx01040; Appx02397.

Fourth, Fedmet challenges Commerce's reliance on Report 0826

because XRD testing does not provide quantitative data, and that the

qualitative nature of the XRD test undermines this testing method.  Pl.

Br. at 42-43, 44.  Commerce rejected this argument, finding that testing

methodologies should not be excluded on the basis of providing

insufficiently quantitative results; that CBP's own published laboratory

guidance refers to both the XRD and XRF tests as qualitative; and that

the appropriateness of a testing methodology is not based on the

qualitative versus quantitative results but, rather, on the effects of the

various testing methods on the physical samples themselves and the

results that follow from those testing processes.  Appx01039;

Appx02364-02366; Appx02367-02375.  Thus, Commerce's analysis of

Report 0826 and its use of XRD testing is supported by substantial

evidence and is consistent with the S&S Refractories Ruling.  Fedmet's

41

disagreement with Commerce's interpretation of the evidence does not render Commerce's covered merchandise determination unsupported by substantial evidence. *See Changzhou Trina Solar Energy Co., Ltd. v. United States*, 975 F.3d 1318, 1332-1333 (Fed. Cir. 2020) (observing that, on appeal, appellant "proffers the same rejected evidence . . . and 'invite{s} {us} to reweigh {it},'" and holding that "{w}e decline to do so") (quoting *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1376 (Fed. Cir. 2015)).

Fifth, Fedmet contends that there is no support for Commerce's finding that the higher alumina levels found by CBP in the 0430, 1030, and 1071 reports are attributable to the conversion of aluminum powder to alumina during the testing process. Pl. Br. at 43 n.6. Commerce made no such finding. Rather, Commerce found that it was *unable to determine* whether the merchandise from Reports 0430, 1030, and 1071 is covered by the scope of the orders because these reports did not provide reliable information on the alumina content of the bricks at the time of importation. Appx1039; Appx1042.

Sixth, Fedmet relies on tests conducted by the manufacturer to contend that CBP's Report 0826 conflicts with the other tests. Pl. Br. at

42

43-44.  Specifically, Fedmet relies on the "Certificate of Quality" and
test results provided to it by the manufacturer to show that the bricks
in report No. 0826 are excluded MAC bricks.  *Id.*  Fedmet contends that
"the fact that these test results on the same bricks by those familiar
with the appropriate testing methods for inhomogeneous refractory
bricks are so different from the results in the 0826 further highlights
the deficiencies in CBP's use of self-admitted inappropriate testing
protocol."  *Id.* at 44.  Commerce rejected Fedmet's argument because the
underlying laboratory report for the "Certificate of Quality" indicates
that the reported alumina content was obtained from an XRF test.
Appx01040; Appx02137-02152; Appx02387-02392.  Record evidence
establishes that the XRF test oxidizes aluminum into alumina, and that
Commerce reasonably found that it cannot accurately identify separate
aluminum and alumina content percentages in the report using this
test to determine the alumina content of the bricks at importation.
Appx01040.

Record evidence demonstrates that the XRF and inductively
coupled plasma (ICP) tests oxidize aluminum into alumina during
testing.  Appx01035; Appx02421; Appx01789.  Before Commerce,

43

Fedmet identified no method by which these results have been, or could be, adjusted or interpreted in a manner that accounts for such oxidation. Appx01035. "{T}he burden of creating an adequate record lies with {interested parties} and not with Commerce{.}" *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011).

Indeed, Fedmet would have Commerce place greater evidentiary weight on a report listing only the content percentages obtained through XRF or through unknown methods. Commerce reasonably declined to do so. Commerce found that for CBP's own test reports using the XRF method — without adjustment to reflect the impact of oxidation — to be inconclusive for the purpose of determining whether the bricks meet the scope exclusion. Appx01041.

Finally, Fedmet relies on the report from an independent lab that tested the chemical composition of five samples that were still available to Fedmet. Pl. Br. at 44-45 (citing Appx02092). Fedmet contends that the laboratory analysis confirmed that each of the tested samples contained sufficient alumina to qualify the merchandise as Bastion MAC bricks. *Id.* at 45. But Commerce found that none of these test results specified a testing methodology. Appx01040; Appx02153-02158.

44

In sum, Commerce's finding that the tested bricks in Report 0826 are covered by the scope is supported by substantial evidence, is consistent with the S&S Refractories Ruling, and is in accordance with law.

### B. Commerce Reasonably Found That CBP Lab Report Nos. 0430, 1030, and 1071 Did Not Provide Sufficient Information To Determine Whether These Tested Bricks Constitute MAC Bricks

Fedmet contends that Commerce unlawfully disregarded the results of CBP's testing in Reports 0430, 1030, and 1071 by adhering to the standard adopted in the S&S Refractories Ruling that alumina content be measured exclusively using XRD testing.  Pl. Br. at 45-51. Fedmet misreads the record.

Commerce reasonably exercised its discretion pursuant to section 351.225(k)(1)(i)(C) to rely on the S&S Refractories Ruling, as one of its (k)(1) primary sources, to determine that only Report 0826 provided the information necessary to determine whether Fedmet's merchandise was covered by the orders.  Appx01039.  Specifically, in the S&S Refractories Ruling, Commerce found that the XRD tests could measure added alumina present in the bricks through the production process rather than subsequently developed through oxidation in the testing

process.  Appx01035; Appx01015.  Relying on the same rationale,

Commerce determined that it could not determine whether the bricks

tested in report numbers 0430, 1030, and 1071 are covered by the scope

of the orders because these reports do not provide reliable information

on the alumina content of the bricks at the time of importation.

Appx1018-1019; Appx1041.  Commerce found that it would be

inconsistent with the S&S Refractories Ruling to find that those reports

were dispositive because the tests used in Reports 0430, 1030, and 1071

were impacted by distortion through increased alumina created by

oxidization during testing or were not the result of a test at all.

Appx01041.

For Report 0430, the stated alumina percentage was not the direct

result of a test for alumina; rather, it was a *post hoc* assumption of

alumina content based on the following calculation:  100 percent less

the measured levels of magnesia and carbon equals the assumed

alumina percentage.  Appx01018; Appx01041.  Report 0430 assumed

that the residual portion of the brick (after accounting for magnesia and

carbon) was entirely alumina.  *Id.*  Commerce found that it may not be

appropriate to attribute to alumina the entire content of the brick that

46

is not either magnesia or carbon because the scope of the orders indicate that MCBs also include a bonding agent (resin or pitch) and antioxidants of up to 15 percent, and bricks may contain small amounts of silicon dioxide, calcium oxide, iron oxide, and titanium dioxide. *Id.* Commerce found that CBP was best suited to address this issue. *Id.* Thus, Commerce concluded that it could not determine whether the bricks in Report 0430 are covered by the scope of the orders. *Id.*

Regarding Reports 1030 and 1071, although both reports stated that CBP conducted XRD and XRF tests, Commerce found that the alumina content listed in each report was obtained from the XRF test. Appx01018; Appx1041; Appx02050-02084. Although the laboratories conducted the XRD test for the presence of certain compounds and elements, Commerce found that they did not include in their reports figures relating to the proportion of these compounds and elements within the samples. Appx01018. Further, no record evidence establishes that either the XRF or ICP spectroscopy tests could measure, and separately report, both aluminum and alumina content as they exist in the brick at the time of importation. Appx1034. However, record evidence demonstrates that both the XRF and ICP tests oxidize

47

aluminum during the testing procedures.  *Id.* (citing Appx02462).

Commerce found that it could not use the results from the XRF or ICP

test results to determine the amount of alumina in the brick at the time

of importation because those tests (1) could not separately identify the

quantity of the defining characteristic of MAC bricks — the alumina

content at the time of importation, and (2) oxidized aluminum during

the testing.  *Id.*  Thus, Commerce concluded that it could not determine

whether the merchandise tested in Reports 1030 and 1071 was covered

by the scope of the orders.  *Id.*

Fedmet raises several challenges to Commerce's findings

concerning Reports 0403, 1030, and 1071, all of which lack merit.  First,

Fedmet asserts that Commerce should not have disregarded Reports

0430, 1030, and 1071 based on the S&S Refractories Ruling because

that ruling does not apply to its imported merchandise, and the Fedmet

Ruling did not mandate a particular testing methodology.  Pl. Br. at 45-

46.  Fedmet further contends that Commerce impermissibly mandated

the use of XRD testing by following the S&S Refractories Ruling given

that there is no similar mandate in the Fedmet Ruling.  *Id.*  Again,

Fedmet fails to recognize Commerce's discretion to consider prior scope

rulings under 19 C.F.R. § 351.225(k)(1).  *See, e.g., Meridian Prods., LLC*, 851 F.3d at 1384.  And as Commerce explained, that the Fedmet Ruling does not address testing methods does not preclude Commerce from considering the S&S Refractories Ruling in which Commerce found the XRD test to be a reliable test for determining the alumina "added" during the production process.  Appx1034.

Commerce further explained that it identified potential distortions associated with the alternative testing methodologies.  *Id.*  Commerce found that this information is relevant to determining requisite alumina content upon importation.  *Id.*  Commerce rejected Fedmet's suggestion that acknowledging such distortions constitutes a modification to the Fedmet Ruling; the agency could not direct CBP to apply a specific alumina content range irrespective of whether the tested merchandise, as imported, actually satisfies the exclusion criterion.  *Id.*  Commerce concluded that failing to consider a scope ruling that addresses testing methods because it did not relate specifically to Bastion® brand merchandise or involve Fedmet as a party could lead to arbitrary results in this proceeding in which two

products with materially identical physical properties are treated differently across different scope proceedings. *Id.*

Furthermore, that Commerce applied the S&S Refractories Ruling does not mean that Commerce endorsed one testing methodology to determine the alumina levels in a MAC brick. Rather than endorsing the XRD test, Commerce found that "it would be inappropriate for Commerce to mandate the application of a single chemical test and/or sampling procedure to CBP for the testing of refractory bricks." Appx1035. But Commerce also found that, "regardless of the testing procedure selected by CBP, it is imperative that the test accurately measure the alumina content of the brick as imported, *i.e.*, prior to any oxidization of aluminum due to a testing procedure, in order to determine accurately whether a product is a MAC brick or not (and, thus, within the scope of the *Orders* or not)." *Id.*; *see also* Appx1036 ("Any test or calculation that separately measures and reports both the aluminum and alumina content percentages as they exist in the brick at the time of import, and can determine the alumina content level absent any oxidization caused by the testing itself, would be permissible.").

50

Although Commerce is charged with determining whether a product falls within the scope of the orders, CBP must determine the nature and composition of the imported merchandise, and the technical expertise in selecting and applying testing methods to physical samples of imported merchandise rests with CBP. *See, e.g., Sunpreme Inc. v. United States*, 946 F.3d 1300, 1317 (Fed. Cir. 2002) ("{CBP} is both empowered and obligated to determine in the first instance whether goods are subject to existing antidumping or countervailing duty orders."). As part of its import classification process, CBP routinely tests or analyzes entered merchandise to determine the classification and applicable duty rate. Appx01016. As the Federal Circuit has explained, as part of its role, CBP "makes factual findings to ascertain what the merchandise is, and whether it is described in an order." *Sunpreme*, 946 F.3d at 1317 (quoting *Xerox Corp. v. United States,* 289 F.3d 792, 794 (Fed. Cir. 2002)) (internal citations and quotations omitted) (emphasis added).

Rather than dictating a single particular testing method to CBP, in making its final determination, Commerce found that "CBP could rely on a test that does not distort the underlying sample's composition

51

or, alternatively, could analyze/adjust its test results in a manner that accounts for such distortions, as applicable." Appx01042. Thus, Commerce reasonably relied on the (k)(1) factors, but did not limit CBP to the XRD test for measuring alumina content in MAC bricks. Instead, based on the guidance in the S&S Refractories Ruling, Commerce found that only Report 0826 provided sufficient evidence for Commerce to make its determination as to what constitutes a MAC brick, while also considering Commerce's oxidization concerns. Appx01034; Appx01038-1039.

Second, Fedmet contends that Commerce erroneously considered only the chemical composition of the bricks at the time of importation. Pl. Br. at 47-48. Fedmet's position is inconsistent with this Court's decisions and Commerce's practice. Specifically, this Court has held that, for scope inquiries, Commerce's practice of "set{ting} the moment of inquiry to the time of importation" is reasonable. *TMB 440AE, Inc. v. United States*, No. 18-00095, 2020 WL 1672841, at *4 (Ct. Int'l Trade April 6, 2020) (citing *S. F. Candle Co. v. United States*, 206 F. Supp. 2d 1304, 1314 (Ct. Int'l Trade 2002) (recognizing that Commerce tends to look at the condition of the merchandise "at the time of importation or

purchase by the consumer, not at the time of consumption.")).  Thus,

consistent with its practice, Commerce reasonably determined that it

must evaluate the alumina content of bricks upon importation.

Appx01015; Appx01034.

Third, Fedmet speculates that any aluminum, if present in the

samples, would have been in such small quantities that it would not be

reliably identifiable.  Pl. Br. at 49.  Fedmet further contends that,

because the tested bricks showed alumina in excess of [█] percent and

because "the oxidization of aluminum into alumina would, at most,

double the weight of the aluminum in the brick," the aluminum would

have been in excess of █] percent of the weight of the brick, and thus

distinguishable, even though the reports did not distinguish aluminum

from alumina.  *Id.*

Commerce reasonably found that this speculation does not provide

sufficient record evidence to alleviate Commerce's concerns about

alumina distortion caused by oxidization during testing using the XRF

test.  Appx01042.  Commerce determined that Reports 1030 and 1071

did not provide sufficient record evidence to determine whether these

bricks are excluded MAC bricks because Commerce found that the XRF

test used in these reports did not distinguish between the aluminum

and alumina content at the time of importation.  Appx01041-01042,

Appx01106, Appx01164.  Specifically, Commerce found that, because

"the reports list the percentage of each chemical by weight, and

oxidization increases the weight of what were previously lighter

aluminum atoms, any test method that causes oxidization of the

samples has augmented the stated level of alumina at the expense of

the relative percentage of the other components of the brick."

Appx01041.  Because substantial evidence supports Commerce's finding

that those relative component percentages have been affected by the

oxidization caused by the type of test used for those reports, there is no

basis to believe that such distortions have been accounted for in the test

reports, and that those results must separately report the levels of both

aluminum and alumina in the brick at the time of importation to be

useable for determining whether a brick meets the MAC brick scope

exclusion.  Appx01042.

Fourth, Fedmet erroneously asserts that Commerce ignored the

numerous other testing standards on the record that "may have been

more appropriate than those employed by CBP," such as the test used

by an independent U.S. laboratory and the alternative testing standards suggested by Fedmet.  Pl. Br. at 51.  Commerce did not consider the test results because the laboratory report indicated that the reported alumina content was obtained from an XRF test, and the other tests provided by Fedmet did not specify a testing methodology. Appx1040.  Commerce explained that, because the XRF test oxidizes aluminum into alumina, it cannot accurately identify separate aluminum and alumina content percentages.  *Id.*  Commerce also found that Fedmet had failed to identify a method by which these results have been, or could be, adjusted or interpreted in a manner that accounts for such oxidation.  *Id.*  Commerce further observed that a report that lists only the content percentages obtained through XRF testing is not sufficient to establish the alumina content of the brick at the time of importation.  *Id.*  Thus, Commerce fully explained why it could not consider the third party tests that Fedmet placed on the record.

Finally, Fedmet contends that "Commerce cannot mandate the use of a testing methodology, XRD, that is by its nature qualitative, to evaluate compliance with a quantitative cut-off."  Pl. Br. at 50 (footnote omitted).  As discussed above, Commerce did not mandate the use of the

XRD test; Commerce found that "it would be inappropriate for Commerce to mandate the application of a single chemical test and/or sampling procedure to CBP for the testing of refractory bricks." Appx1035.  As for Fedmet's qualitative versus quantitative argument, Commerce did not find it appropriate to determine whether a test was insufficiently quantitative, especially because CBP's own published laboratory guidance refers to both the XRD and XRF tests — used in some fashion for Reports 0826, 1030, and 1071 — as qualitative. Appx01039.  Commerce further explained that "the appropriateness of a test method is not determined on the basis of qualitative versus quantitative results but, rather, in the effects of the various testing methods on the physical samples themselves and the results that follow from those processes."  *Id.*

Fedmet dismisses as "illogical" Commerce's focus on the oxidizing effect of other testing methodologies rather than generating a quantitative result (Pl. Br. at 50-51), but Fedmet's differing interpretation of the record evidence does not render Commerce's explanation unsupported by substantial evidence.  Fedmet's challenges to Commerce's concerns with Reports 0430, 1030, and 1071 reflect

56

nothing more than disagreement with the weight Commerce assigned to the record evidence. The Court should reject Fedmet's invitation to reweigh the evidence, which is impermissible under the substantial evidence standard. *See SolarWorld Americas, Inc. v. United States*, 910 F.3d 1216, 1225 (Fed. Cir. 2018) (declining to "reweigh the evidence already considered by Commerce"); *Downhole Pipe & Equip., L.P.*, 776 F.3d at 1378 ("This court declines Appellants' invitation to reweigh the evidence in order to reject Commerce's conclusions, which were well-supported and fully explained."); *Novosteel SA v. United States*, 128 F. Supp. 2d 720, 730 (Ct. Int'l Trade 2001) ("declin{ing} to re-weigh the record evidence as Plaintiff urges" because "{u}nder the applicable substantial evidence standard of review, the agency rather than the reviewing court weighs the evidence and determines its credibility").

## CONCLUSION

For these reasons, we respectfully request that the Court deny plaintiff's motion for judgment upon the administrative record and enter judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. McCARTHY
Director

/s/ Reginald T. Blades
REGINALD T. BLADES
Assistant Director

OF COUNSEL:

K. GARRETT KAYS
Attorney
Office of the Chief Counsel
For Trade Enforcement &
Compliance
U.S. Department of Commerce

/s/ Antonia R. Soares
ANTONIA R. SOARES
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
(202) 305-7405 (Telephone)
Email: antonia.soares@usdoj.gov

February 9, 2024

Attorneys for Defendant

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the word limitation of Court of International Trade Standard Chambers Procedures § 2(B)(1) and contains 10,469 words, excluding the parts of the brief exempted from the word limitation.  In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

<u>/s/ Antonia R. Soares</u>
ANTONIA R. SOARES

<u>**CERTIFICATE OF SERVICE**</u>

I certify under penalty of perjury that on this 9th day of February 2024, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT UPON THE AGENGY RECORD" was filed electronically.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<u>/s/ Antonia R. Soares</u>
ANTONIA R. SOARES