UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE M. MILLER BAKER, JUDGE

|  |  |  |
|---|---|---|
| FEDMET RESOURCES CORPORATION | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Consol. Court No. 23-117 |
| UNITED STATES, | ) ) | **PUBLIC DOCUMENT** |
| Defendant. | ) ) ) | |

**RESPONSE BRIEF OF DEFENDANT-INTERVENOR MAGNESIA
CARBON BRICKS FAIR TRADE COMMITTEE**

J. Michael Taylor
Daniel L. Schneiderman
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 737-0500

*Counsel For Magnesia Carbon Bricks
Fair Trade Committee*

March 11, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................ii

GLOSSARY ....................................................................................................iii

STATEMENT PURSUANT TO RULE 56.2 ...................................................... 1

ARGUMENT .................................................................................................... 2

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ....................... 2

II.   COMMERCE DID NOT UNLAWFULLY "EXPAND" THE SCOPE OF THE ORDERS .......................................................................... 5

III.  COMMERCE'S RELIANCE ON *S&S REFRACTORIES* WAS NOT UNLAWFUL ................................................................................ 10

IV.  THE FINAL DETERMINATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE .............................................................. 12

CONCLUSION ................................................................................................ 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Fedmet Res. Corp. v. United States*,
    755 F.3d 912 (Fed. Cir. 2014) ...................................................... *passim*

*Seneca Foods Corp. v. United States*,
    663 F. Supp. 3d 1325 (CIT 2023) ........................................................ 14

**Statutes**

19 C.F.R. § 351.225(k)(1)(i)(C) ............................................................ 4, 10

**Other Authorities**

*Certain Magnesia Carbon Bricks from China and Mexico*,
    USITC Publication 4182 (September 2010) ........................................ 6

## **GLOSSARY**

$Al_2O_3$          Aluminum oxide, also known as alumina

CBP            Customs and Border Protection

CMI            Covered Merchandise Inquiry

EAPA           Enforce And Protect Act

MAC            Magnesia Alumina Carbon

MCB            Magnesia Carbon Brick

XRD            X-Ray Diffraction

XRF            X-Ray Fluorescence

## STATEMENT PURSUANT TO RULE 56.2

Defendant-Intervenor Magnesia Carbon Bricks Fair Trade Committee (the "Committee") hereby responds in opposition to the Motion for Judgment on the Agency Record and the Brief in Support thereof filed by Plaintiff Fedmet Resources Corporation ("Fedmet") on December 1, 2023 ("*Pl. Br.*"). Plaintiff contests certain aspects of the final determination by the U.S. Department of Commerce ("Commerce") in *Certain Magnesia Carbon Bricks from the People's Republic of China: Final Determination in Covered Merchandise Inquiry*, 88 Fed. Reg. 28495 (May 4, 2023), Appx01044, and the accompanying Decision Memorandum (April 27, 2023) (the "*Final Determination*"), Appx01029.

Defendant-Intervenor agrees with Defendant's Response to Plaintiff's Motion for Judgment on the Agency Record filed on February 9, 2024 ("*Def. Br.*"). To minimize repetition, Defendant-Intervenor incorporates by reference the government's statement of facts and arguments as presented in that response brief.[1] For the reasons set forth therein, Plaintiff's arguments lack merit, and the *Final*

---

[1] Defendant-Intervenor also incorporates by reference the factual recitations and arguments presented in their administrative rebuttal brief. *See* Petitioners' Rebuttal Brief (March 7, 2023), Appx02756-02767.

1

*Determination* should be affirmed.  We focus below on alternative bases for affirmance and areas where further clarification may assist the Court in its analysis.

<u>ARGUMENT</u>

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

This CMI arose from an EAPA proceeding in which CBP found Fedmet misdeclared and falsely entered its "Pinnacle" brand MCBs (which fall within the scope of the AD/CVD orders) as "Bastion" brand MAC bricks (which previously had been found to be out-of-scope in *Fedmet Res. Corp. v. United States*, 755 F.3d 912 (Fed. Cir. 2014) ("*Fedmet CAFC*")).  *See* Appx01048-49, Appx01281, Appx01286.[2]  Just because Fedmet opted to rename in-scope MCBs with a MAC brick brand name does not change what the bricks actually are.  Regardless, CBP referred a scope question to Commerce because, although the bricks at issue were chemically different from the "Bastion" bricks examined in the 2014 litigation, it remained unclear to CBP whether the specific 11 samples should be considered in-scope MCBs or out-of-

---

[2] The EAPA case also is before this Court (*see* Ct. No. 21-00248), although that litigation has been stayed pending resolution of this CMI.

scope MAC bricks.  Appx01048-51.

In its *Final Determination*, Commerce applied a test to distinguish between MCBs and MAC bricks first developed in a 2017 scope ruling called *S&S Refractories*.  Under that test, bricks are not considered to be excluded MAC bricks unless, at the time of importation, they contain no less than five percent alumina. Appx01044-45, Appx01033-36.  Applying that test here, Commerce concluded that two of the samples were not MAC bricks, because they contained less than five percent alumina.  Appx01038-43.  Commerce found tests on the remaining samples to be inconclusive, because they had insufficient information to determine alumina content at the time of importation.  *Id.*  In particular, because of the techniques employed, it was impossible to determine whether a testing result of more than five percent alumina was because (1) the brick actually contained more than five percent alumina as imported, or (2) the brick had less than five percent alumina as imported, but alumin<u>um</u> metal in the brick was oxidized into alumi<u>na</u> through the testing process itself.  *Id.*

Plaintiff makes three arguments on appeal.  <u>First</u>, it argues that Commerce unlawfully "expanded" the scope, because *Fedmet CAFC*

held that all MAC bricks are outside the scope, and that bricks with any alumina content whatsoever qualify as excluded MAC bricks. This argument should be rejected, because it misstates the holding of *Fedmet CAFC*. The appeals court never purported to define MAC bricks as the set of products containing any quantity (even if only a trace amount) of alumina.

Second, Plaintiff contends that Commerce erred in considering *S&S Refractories* as a "prior scope ruling" under 19 C.F.R. § 351.225(k)(1)(i)(C). According to Plaintiff, that 2017 scope ruling, although preceding the *Final Determination*, was subsequent to *Fedmet CAFC*, which already conclusively found "Bastion" brand bricks to be out-of-scope. This argument also should be rejected, because the bricks at issue in the instant CMI are different from the "Bastion" bricks that were the subject of *Fedmet CAFC*. Indeed, as noted above, CBP found that Fedmet has been misdescribing its bricks as being "Bastion" in order to evade the orders. *Fedmet CAFC*, therefore, is not dispositive with respect to the specific samples at issue in this CMI. Commerce's consideration of *S&S Refractories* was perfectly consistent with the regulation.

4

<u>Third</u>, Plaintiff argues that the *Final Determination* is unsupported by substantial evidence for various reasons, and that the standard applied by Commerce to identify MAC bricks is illogical. These arguments similarly lack merit, for the reasons explained below.

## II.  COMMERCE DID NOT UNLAWFULLY "EXPAND" THE SCOPE OF THE ORDERS

Plaintiff contends that the *Final Determination* conflicts with *Fedmet CAFC* and "unlawfully expanded" the scope of the AD/CVD orders MCBs to include MAC bricks, which the appeals court had found to be out-of-scope.  *Pl. Br.* at 25-29.  According to Plaintiff, *Fedmet CAFC* held that the distinction between MCBs and MAC bricks is that, although both contain magnesia and carbon, "MAC bricks contain aluminum oxide (known as alumina), while MCBs do not contain any alumina."  *Pl. Br.* at 4.  Plaintiff contends that bricks containing any amount of alumina, even if only trace amounts, must therefore be considered "MAC bricks" falling outside the scope of the orders.  *Pl. Br.* at 25-29.  Because the *Final Determination* found bricks containing some amount of alumina to be in-scope, Plaintiff argues, it "unlawfully expanded" the scope to include what the appeals court already determined were excluded MAC bricks.  This argument misreads

*Fedmet CAFC* and should be rejected.

*Fedmet CAFC* involved Fedmet's "Bastion" brand bricks containing 8 to 15 percent alumina. *Fedmet CAFC* at 916-917. There was no dispute in that case that the products at issue were legitimate MAC bricks, as understood within the industry. *Id.* The question presented was whether MAC bricks as a category nonetheless fell within the scope of the orders, and the appeals court ruled they did not. Although the scope language itself provided no explicit "cut-off point" differentiating MAC bricks from MCBs, the appeals court observed that those categories "are ubiquitous and well-understood in the refractories industry," *id.* at 921, and that MCBs and MAC bricks have well-known and distinct physical properties and non-substitutable uses. *Id.* at 919-920, citing *Certain Magnesia Carbon Bricks from China and Mexico*, USITC Publication 4182 (September 2010) at I-8.[3] The appeals court

---

[3] Plaintiff itself states that MCBs and MAC bricks are so different that the Commission found them not to be within the same "like product." *See Pl. Br.* at 5-6, citing *Certain Magnesia Carbon Bricks from China and Mexico*, USITC Publication 4182 (September 2010) at I-8 and n.13. The cited portion of the Commission's report explains that "MCBs are considered to be the most durable refractory brick on the market for furnaces and ladle linings, especially around the slag line. While other refractory bricks, such as fired magnesite, fired bauxite, magnesia dolomite, and magnesia alumina graphite {{*i.e.*, MAC}} bricks, may be used in place of MCBs, these alternatives do not have the same physical characteristics of MCBs, are easily differentiated by price, and their uses are not perceived by the steel producers as substitutable." *Id.* Moreover, Fedmet's own marketing materials highlight the

did not need to address, and did not purport to address, the broader question of what test should be applied to determine whether a particular brick should be considered an MCB or a MAC brick in the first place. It did not opine upon where a line might be drawn in terms of alumina content or how that alumina content might be measured in terms of laboratory testing. Those questions were left for another day.

Plaintiff repeatedly observes that *Fedmet CAFC* found "that *all* MAC bricks were excluded from the scope." *Pl. Br.* at 8, 26-27. But the appeals court did not define what it is to be a "MAC brick" in the first place. Importantly, *Fedmet CAFC* did not hold that MCBs are magically converted into MAC bricks simply with the addition of any amount of alumina, no matter how small. Nothing in *Fedmet CAFC* indicates that MCBs containing only trace amounts of alumina possess the distinct physical properties of MAC bricks, can no longer be used for traditional MCB applications, or are broadly understood by the refractories industry to be MAC bricks. *Fedmet CAFC* did not, therefore, resolve the question of whether bricks containing less than 8

---

different applications (including, for example, different locations where the bricks would be placed within a furnace) for its "Pinnacle" brand MCBs and for its "Bastion" brand MAC bricks. *See* Appx01284-01286, Appx01899-01903.

to 15 percent alumina are "MAC bricks," nor did it address any technical questions of how the relevant percentages should be measured.

The *Final Determination* clarifies the scope by explaining that the distinguishing feature separating MCBs from MAC bricks is that the latter have at least "five percent alumina levels upon importation." Appx01044-45.  The *Final Determination* further clarifies "upon importation" as meaning the bricks must contain at least 5 percent alumina as they cross the border.  Measurements, therefore, must not erroneously include alumina created <u>after importation</u> by the testing procedure itself (*i.e.*, by oxidizing aluminum metal during testing).  *Id.* (requiring that alumina levels be "measured by a testing protocol that does not create aluminum oxidation in the tested materials, or that accounts for such distortions in the resulting chemical composition analysis").

Nothing in the *Final Determination* conflicts with *Fedmet CAFC* or "expands" the scope of the orders.  The *Final Determination* does not disturb the well-settled caselaw that MAC bricks fall outside the scope.  The same bricks at issue in *Fedmet CAFC* containing 8 to 15 percent

alumina upon importation would continue to be excluded from the orders. The *Final Determination* simply clarifies what constitutes a MAC brick. If anything, the *Final Determination* <u>narrows</u> the scope of the orders, because it establishes a <u>broader exclusion</u> than that required by *Fedmet CAFC*. Unlike *Fedmet CAFC*, the *Final Determination* treats as excluded MAC bricks those products containing <u>less than</u> 8 percent alumina (so long as they contain at least 5 percent alumina, as imported).

The *Final Determination* specifically addresses whether 11 samples of bricks are in-scope MCBs or out-of-scope MAC bricks based on CBP's laboratory results. It holds that the two samples in "Report 0826" were not MAC bricks (and thus are not excluded from the orders), because their alumina content upon importation was below the five percent threshold. Appx01039. Commerce was unable to make a finding with respect to the remaining samples, because they were not tested in a manner that allowed their alumina content at the time of importation to be quantified. Appx01040-42. Nothing in Commerce's findings or reasoning conflicts with *Fedmet CAFC*.

## III.    COMMERCE'S RELIANCE ON *S&S REFRACTORIES* WAS NOT UNLAWFUL

The regulations provide that Commerce will consider "prior scope rulings" as a "primary interpretive source" in scope inquiries.  19 C.F.R. § 351.225(k)(1)(i)(C).  Plaintiff acknowledges that the *Final Determination* is consistent with the 2017 scope ruling in *S&S Refractories*, which had adopted essentially the same test for distinguishing MCBs from MAC bricks.  *Pl. Br.* at 30-38.  According to Plaintiff, however, although *S&S Refractories* was prior to the *Final Determination* in this CMI, in reality it represents a "subsequent scope ruling," because *Fedmet CAFC* already conclusively established in 2014 that the precise product at issue here, *i.e.*, Fedmet's "Bastion" brand bricks, are excluded MAC bricks.  *Pl. Br.* at 30-38.  According to Fedmet, therefore, the 2014 case is dispositive, and Commerce erred in considering *S&S Refractories* as a "(k)(1)" source.

This argument should be rejected, because it rests upon a false premise.  There is no evidence whatsoever that the bricks at issue in this CMI are identical to those that were the subject of *Fedmet CAFC*.  Although the MAC bricks at issue in *Fedmet CAFC* were, like those here, labelled under the "Bastion" brand, the appeals court did not hold

10

that Fedmet could import bricks of any composition, duty-free, so long as the company labelled the bricks with the "Bastion" brand. The EAPA case giving rise to this CMI involved an allegation that, after the 2014 litigation, Fedmet began evading the orders by falsely relabeling its standard MCBs as "Bastion" MAC bricks to avoid paying duties. Appx01813-21. CBP agreed that Fedmet had done so. Appx01803-11. CBP observed that, in *Fedmet CAFC*, the Bastion bricks found to be out-of-scope MAC bricks were comprised of "8 to 15 percent aluminum oxide (chemical formula $Al_2O_3$), more commonly known as alumina, 3 to 15 percent carbon, {and} 75 to 90 percent magnesia." Appx01809. CBP found evasion, because – although Fedmet described its entered merchandise as "Bastion" brand bricks – laboratory testing showed that the alumina, magnesia, and/or carbon contents fell outside of the above-cited ranges. Appx01810. In other words, the bricks at issue here were materially different from the "Bastion" brand MAC bricks found to be out-of-scope during the 2014 litigation. *Id*. Commerce similarly recognized that the bricks at issue in this CMI fell outside the above-mentioned chemical ranges of the "Bastion" bricks at issue in *Fedmet CAFC*. Appx01018-19. The fact that both *Fedmet CAFC* and this CMI

involved bricks labelled with the "Bastion" brand does not necessarily mean, therefore, that the former case is dispositive with respect to the specific samples at issue here.

If this Court were to accept Fedmet's argument, the absurd result would be that Fedmet could relabel <u>any</u> refractory product (regardless of its chemical composition) under the "Bastion" brand, and such product necessarily would be excluded from the MCB orders. Nothing of the sort is required by *Fedmet CAFC*. Commerce's reliance on *S&S Refractories* when evaluating new types of bricks ostensibly stamped "Bastion," but not previously considered by the appeals court, was perfectly appropriate.

## IV. THE FINAL DETERMINATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

As explained above, Commerce found that two samples from the 0826 report were not excluded MAC bricks, because their alumina content (measured using XRD) was under the five percent threshold, and it found that the remaining samples were inconclusive, because CBP employed other testing methodologies that did not permit one to isolate the alumina content as imported. Appx01038-42. Plaintiff wrongly contends these findings are unsupported by substantial record

evidence.  *Pl. Br.* at 38-51.

With respect to the 0826 report, Plaintiff claims CBP's XRD testing should have been found unreliable due to the use of improperly prepared and unrepresentative samples.  *Pl. Br.* at 42-43.  Those criticisms lacked merit for reasons detailed in the Committee's agency rebuttal brief.  *See* Appx02759-60.  Regardless, as Commerce explained in the *Final Determination*, "any concerns about the nature of the samples or testing remain with CBP, which is better positioned to address any specific concerns over their methods and procedures." Appx01040.  CBP referred this matter for Commerce to determine whether, based on CBP's own testing, certain bricks fell within the scope.  Appx01048-53.  For purposes of this CMI, therefore, Commerce must accept the facts as set forth in the referral, including CBP's laboratory results.  *See id*.  Fedmet will have a separate opportunity to challenge CBP's testing protocols in the context of the EAPA litigation (to which CBP is a party) also pending before this Court in case number 21-248.  If the Court finds those protocols to be lacking, it can remand CBP's EAPA findings for further explanation or retesting.  It makes no sense, however, to remand this CMI to Commerce to somehow look

13

behind the details of CBP's testing methodologies.

Plaintiff contends that the 0826 report is at odds with testing performed by the manufacturer and Fedmet's own independent lab. *Id.* at 44-45. Again, this argument misses the purpose of the underlying CMI, which was for Commerce to determine whether – based on <u>CBP's testing</u> – the samples at issue were in scope. Appx01050-51. It would have made little sense for Commerce to consider Fedmet's own testing, given that the purpose of CBP's EAPA investigation was to determine whether Fedmet itself was <u>evading</u> the AD/CVD duty orders. In any event, Commerce reasonably discounted such evidence, because Fedmet's alternative testing employed XRF (which distorts the results by oxidizing aluminum metal in the brick, and which is unable to separately isolate <u>alumina</u> content and <u>aluminum metal</u> content) – unlike the 0826 report, which used XRD. Appx01040, Appx01050. Moreover, Plaintiff's argument seeks to reweigh the evidence, which this Court must not do. *See, e.g., Seneca Foods Corp. v. United States*, 663 F. Supp. 3d 1325, 1336 (CIT 2023) ("the court may not reweigh evidence or substitute the agency's reasoned decisionmaking with its own reasoning").

Plaintiff contends that Commerce erred in "disregarding" the results of the 0430, 1030, and 1071 reports merely because testing had not been conducted using XRD. *Pl. Br.* at 45-51. But Commerce did not "disregard" those reports, it merely found them to be inconclusive. Appx01041-42. For the 0430 report, CBP had failed even to test the alumina content directly. Appx01041. For the 1030 and 1071 reports, CBP tested using XRF, which "oxidizes aluminum and reports it as alumina in the results," *id.*, and the results did not "separately report the levels of both aluminum and alumina in the brick at the time of importation." Appx01042. *See also* Appx01050. Consequently, there was no way to determine whether the measured alumina content was above five percent at the time of entry. Appx01040-42.

To illustrate, suppose the alumina content of a brick is measured to be 10 percent using XRF. Because that technique oxidizes aluminum (and cannot separately measure the aluminum metal and aluminum oxide contents of the brick prior to testing), there is no way to know from this result whether the brick had 10 percent alumina at the time of entry, or less than five percent alumina plus some quantity aluminum metal that was converted into alumina, after importation,

during the testing.  Commerce's finding that it could not determine whether the remaining samples were in-scope or out-of-scope, therefore, was reasonable and supported by record evidence.

Finally, Plaintiff challenges "Commerce's presumption that it is necessary to only consider the chemical composition of the bricks at the time of importation." *Pl. Br.* at 47.  According to Plaintiff, given that refractory bricks are exposed to heat during the steelmaking process, any aluminum metal presumably would be converted to alumina once the bricks are put in service, and "Commerce nowhere explains how any alumina resulting from the oxidation of aluminum while the brick is in service would function any differently with regard to the formation of spinel than the alumina added to the brick during manufacturing." *Pl. Br.* at 48-49.  Plaintiff, in other words, contends there is functionally no difference between MAC bricks (with alumina) and MCBs (with added aluminum metal), because the latter effectively become the former once placed in service.  *Id.*

This argument in Fedmet's brief is factually incorrect and should be rejected.  Indeed, it directly contradicts representations made by Fedmet itself in the underlying proceeding.  During the CMI, Fedmet

16

acknowledged that alumina and aluminum metal function quite

differently in refractory products when heated to steel making

temperatures.  As Fedmet explained, "aluminum powder is used solely

as an antioxidant; unlike alumina, it does not result in spinel

formation."  Appx02470.  Fedmet elaborated as follows:

> Aluminum metal powder, like other metal powders, is
> often added in small quantities (normally less than
> three percent by weight) to MCBs and to MAC bricks
> as antioxidants.  The aluminum powder protects the
> carbon in the brick from oxidization by reacting with
> oxygen before the oxygen can react with the carbon in
> the brick.  This prolongs the service life of the brick.  In
> addition to its primary role as an anti-oxidant, the
> aluminum powder can improve the hot physical
> properties of the brick through the formation of
> aluminum carbide at steel-making temperatures.
>
> Aluminum oxide ("alumina"), in contrast, is added to
> MAC bricks to form in-situ spinel.  The alumina reacts
> with the magnesia at steel-making temperatures to
> form a spinel, which protects the brick from chemical
> attack by steel slag.  Spinel formation results in
> positive irreversible expansion (to keep joints tight and
> reduce steel penetration), as well as improved hot
> strength by ceramically bonding the magnesia grains
> together.  There is no other mechanism for creating
> such a skeleton or generating the positive permanent
> expansion. This is the reason why the MAC line of
> products was developed and what differentiates MAC
> bricks from subject MCBs.

Appx02461.  In other words, when MCBs are placed in service, the

aluminum metal is converted into aluminum carbide; unlike alumina, it does not form spinel.[4]  The Committee did not disagree with this description, which was relied upon by Commerce when reaching its determination.  Appx01014-15.  This difference underscores the importance of adopting a testing regime that can distinguish between refractory bricks containing aluminum metal (which does not form spinel when placed in service) from those with added alumina (which does form spinel when placed in service).  It was perfectly reasonable, therefore, for Commerce to specify that any test used by CBP must be able to distinguish alumina from aluminum metal content of the product as imported.  Here, only the 0826 report (employing XRD) was able to do so.  Appx01036, Appx01050.  The *Final Determination*, therefore, is reasonable and supported by substantial evidence.

---

[4] Thus, contrary to Fedmet's new argument in its brief, there is a difference between (1) heating an MCB that contains aluminum powder to a steelmaking temperature and (2) using a testing methodology that converts aluminum to alumina through an oxidation process.  *Cf. Pl. Br.* at 48.

## CONCLUSION

For the reasons set forth above, the *Final Determination* should be affirmed.

Respectfully submitted,

*/s/ Daniel Schneiderman*
J. Michael Taylor
Daniel L. Schneiderman

KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 737-0500

*Counsel for Defendant-Intervenor*

March 11, 2024

## CERTIFICATE OF COMPLIANCE
## WITH WORD COUNT LIMITATIONS

Pursuant to paragraph 2(B)(2) of the U.S. Court of International Trade's *Standard Chambers Procedures*, the undersigned certifies that this brief complies with applicable word count limitations.  Exclusive of the exempted portions, as provided in paragraph 2(B)(1), this brief includes <u>3,575</u> words.  In preparing this certificate, the undersigned has relied upon the word count feature of the word-processing system used to prepare the submission.

*/s/ Daniel Schneiderman*
Daniel L. Schneiderman

KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 737-0500

*Counsel for Defendant-Intervenor*

March 11, 2024

334552v37