IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

_____

| | | |
|---|---|---|
| FEDMET RESOURCES CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | **NON-CONFIDENTIAL** |
| v. | ) ) | Proprietary Information |
| UNITED STATES, | ) ) ) | Removed from Pages 27 to 29, 33, and 34 |
| Defendant, | ) ) ) | |
| MAGNESIA CARBON BRICKS FAIR TRADE COMMITTEE, | ) ) ) | Court No. 23-00117 |
| Defendant-Intervenor. | ) ) | |

_____

REPLY BRIEF OF FEDMET RESOURCES CORPORATION
IN SUPPORT OF ITS
<u>MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>

R. Will Planert
Donald B. Cameron
Julie C. Mendoza
Brady W. Mills
Mary S. Hodgins
Eugene Degnan
Jordan L. Fleischer
Nicholas C. Duffey
Stephen A. Morrison
Ryan R. Migeed

MORRIS, MANNING & MARTIN LLP
1333 New Hampshire Ave, N.W.
Suite 800
Washington, D.C. 20036
(202) 408-5153

April 29, 2024                    *Counsel to Fedmet Resources Corporation.*

## TABLE OF CONTENTS

I.  ARGUMENT.................................................................................3

   A. Commerce's Decision Is Contrary To The CAFC's Holding In
      *Fedmet Resources* ...............................................................5

   B. Commerce Was Not Justified In Giving Precedence To The
      Subsequent S&S Ruling.........................................................15

   C. Commerce's Evaluation Of Testing Methods Based On An
      Inapplicable Scope Ruling Is Unlawful..................................22

   D. Commerce's Cherry-Picking of Test Results Is Unsupported By
      Substantial Evidence............................................................26

II. CONCLUSION...........................................................................35

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allegheny Ludlum Corp. v. United States*,
   112 F. Supp. 2d 1141 (Ct. Int'l Trade 2000) ...................................... 26

*Atl. Sugar, Ltd. v. United States*,
   744 F.2d 1566 (Fed. Cir. 1984) ........................................................ 26

*Consol. Edison Co. of N.Y. v. NLRB*,
   305 U.S. 197 (1938) .......................................................................... 26

*Duferco Steel, Inc. v. United States*,
   296 F.3d 1087 (Fed. Cir. 2002) ..................................................... 9, 13

*Fedmet Resources Corp. v. United States*,
   37 C.I.T. 792 (2013) .......................................................................... 6

*Fedmet Resources Corp. v. United States*,
   70 F. Supp. 3d 1279 (Ct. Int'l Trade 2015) .............................. 9, 22, 24

*Fedmet Resources Corp. v. United States*,
   755 F.3d 912 (Fed. Cir. 2014) ..................................................... *passim*

*Global Commodity Grp. LLC v. United States*,
   709 F.3d 1134 (Fed. Cir. 2013) ................................................... 15, 18

*Meridian Prods., LLC v. United States*,
   851 F.3d 1375 (Fed. Circ. 2017) ................................................. 14, 18

*Mid Continent Nail Corp. v. United States*,
   725 F.3d 1295 (Fed. Cir. 2013) ................................................... 15, 18

*Nippon Steel Corp. v. United States*,
   337 F. 3d 1373 (Fed. Cir. 2003) ....................................................... 26

*SMA Surfaces, Inc. v. United States*,
   617 F. Supp. 3d 1263 (Ct. Int'l Trade 2023) ..................................... 22

*Smith Corona Corp. v. United States,*
　915 F.2d 683 (Fed. Cir. 1990) ............................................................ 10

*Star Pipe Prods. v. United States,*
　463 F. Supp. 3d 1366 (Ct. Int'l Trade 2020) ................................. 16, 22

*Tak Fat Trading Co. v. United States,*
　396 F.3d 1378 (Fed. Cir. 2005) .................................................... 10, 15

*Vietnam Finewood Co. v. United States,*
　633 F. Supp. 3d 1243 (Ct. Int'l Trade 2023) ...................................... 13

## Statutes

19 U.S.C. § 1673e(a)(2) ........................................................................ 7

19 U.S.C. § 1677j(c) ............................................................................ 13

## Regulations

19 C.F.R. § 351.225(c)(1) .................................................................... 19

19 C.F.R. § 351.225(f)(4) ..................................................................... 19

GLOSSARY

| CAFC | Court of Appeals for the Federal Circuit |
|---|---|
| CBP | U.S. Custom and Border Protection |
| EAPA | Enforce and Protect Act |
| MAC Brick or MACB | Magnesia Alumina Carbon Brick |
| MCB | Magnesia Carbon Brick |
| XRD | X-ray Diffraction |
| XRF | X-ray Fluorescence |

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

_____

|  |  |  |
|---|---|---|
| FEDMET RESOURCES CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | **NON-CONFIDENTIAL** Proprietary |
| v. | ) ) ) | Information Removed from Pages |
| UNITED STATES, | ) ) | 27 to 29, 33, and 34 |
| Defendant, | ) ) | |
| MAGNESIA CARBON BRICKS FAIR TRADE COMMITTEE, | ) ) ) | Court No. 23-00117 |
| Defendant-Intervenor. | ) ) | |

_____

REPLY BRIEF OF FEDMET RESOURCES CORPORATION
IN SUPPORT OF ITS
<u>MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>

Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade, Plaintiff Fedmet Resources Corporation ("Fedmet") hereby replies to the response briefs filed by Defendant, the United States, and Defendant-Intervenor, the Magnesia Carbon Bricks Fair Trade Committee. *See* ECF 40; ECF 42. As discussed more fully below, Defendant and Defendant-Intervenor's arguments are without merit and should be rejected.

1

The issue before this Court is whether the U.S. Department of Commerce's ("Commerce") decision that merchandise that the U.S. Court of Appeals for the Federal Circuit ("CAFC") previously instructed Commerce to find were outside of the scope of the antidumping duty and countervailing duty orders on Magnesia Carbon Bricks ("MCBs") from China ("the Orders") are now within the scope of the Orders is supported by substantial evidence. Neither Commerce, Defendant, nor Defendant-Intervenor have convincingly explained why Commerce is permitted to deviate from the CAFC's express holding in the covered merchandise inquiry subject to this appeal.

Defendant and Defendant-Intervenor claim that Commerce was acting in accordance with its regulatory discretion to consider all prior scope rulings pertaining to the Orders, including the S&S Refractories, LLC ("S&S") scope ruling that was decided after the CAFC's decision. But even if considering that scope ruling as a correct exercise of Commerce's discretion, it simply confirmed that the specific merchandise for which S&S requested a scope ruling is *outside* the scope of the Orders. That decision cannot be a basis for finding that different merchandise is within the scope of the Orders, particularly

when that merchandise was determined to be outside the scope of the Orders in a previous scope determination. Commerce's reliance on the S&S scope ruling to find that products excluded by the Fedmet Scope Ruling are within the scope of the Orders is unsupported by substantial evidence.

I.    ARGUMENT

In 2011, Fedmet requested that Commerce confirm that its Magnesia Alumina Carbon ("MAC") bricks, which it stated contain approximately 8 to 15 percent alumina, were outside the scope of the MCB Orders. Commerce initially denied Fedmet's scope ruling, finding that MAC bricks were covered by the MCB Orders. Eventually, the CAFC held that MAC bricks were excluded from the MCB Orders by name and directed Commerce to find that Fedmet's MAC bricks, as defined in Fedmet's original scope ruling request, are outside the scope of the Orders.

Now, following a covered merchandise referral from U.S. Customs and Border Protection ("CBP"), Commerce has failed to give effect to the direction of the CAFC by finding that the same merchandise the CAFC held was outside the scope of the Orders is instead within it. The

3

reasoning offered for this about-face is that Fedmet's MAC bricks do not have the same chemical composition as the MAC bricks found to have been outside the scope of the Orders in a subsequent scope ruling covering different merchandise. But Commerce's confirmation that another party's products are also outside the scope of the Orders does not alter or override the direction of the CAFC specific to the products at issue.

In its brief to the court, Defendant argues that Commerce's new regulations allow it to review other scope decisions even when the plain language of the scope is determinative. Even if this post-hoc rationalization were presented by Commerce, it is contrary to the statutory scheme — changes to Commerce's regulations do not grant Commerce carte blanche to expand the scope of an order.

The scope ruling applicable to Fedmet confirmed that its bricks, described as containing "approximately 8 to 15 percent alumina," are MAC bricks, and are therefore outside the scope of the MCB Orders. The record confirms that the bricks tested by CBP, including the two bricks that Commerce claims are within the scope of the MCB Orders, contain "approximately 8 to 15 percent alumina."

The scope of the MCB Orders was defined during the initial investigation and set forth in the written order scope. The CAFC interpreted this scope language to hold that MAC bricks were excluded, by name, from the scope of the MCB Orders, and are therefore not covered by the Orders. Commerce cannot apply the S&S ruling in a manner inconsistent with the holding of the CAFC. But Commerce has done just that. Commerce found that the Fedmet bricks tested by CBP in the Enforce and Protect Act ("EAPA") proceeding all contain added alumina. These products thus qualify as non-subject MAC bricks because they are magnesia carbon bricks with added alumina. Commerce nevertheless determined that Fedmet's MAC bricks are outside the scope of the Orders because they did not meet certain criteria Commerce relied upon to find that merchandise examined in the S&S ruling was outside the scope of the orders. This is inconsistent with the holding of the CAFC and contrary to the statutory scheme.

A. Commerce's Decision Is Contrary To The CAFC's Holding In *Fedmet Resources*

In *Fedmet Resources Corp. v. United States*, 755 F.3d 912 (Fed. Cir. 2014) (hereinafter "*Fedmet Resources*"), the CAFC held that MAC bricks, understood in the industry as MCBs with added alumina,

are outside the scope of the MCB Orders. The CAFC did not hold that some MCBs with added alumina were within and others outside the scope of the Orders, but rather that "*all* MAC bricks were excluded." *Fedmet Resources* at 922 (emphasis in original). In fact, the CAFC rejected the holding below that "'only *some* MACBs,'" referred to as "'high-alumina'" bricks, are excluded from the scope of the Orders as erroneous. *Id.* (quoting *Fedmet Resources Corp. v. United States*, 37 C.I.T. 792, 798 (2013) (emphasis in original)). In confirming that "so-called 'low-alumina'" bricks are also excluded from the scope of the Orders, the CAFC held that there is "no 'cut-off point'" at which addition of alumina to an MCB transforms it into a MAC brick." *Id.* at 921-22. To the "extent that MCBs and MAC bricks do in fact overlap to some degree, the overlap was surrendered by Resco's failure to provide a technical definition or 'cut off point' when asked to be more specific." *Id.* at 921.

In the covered merchandise determination on appeal in this action, Commerce has done precisely what the CAFC precluded in *Fedmet Resources* — it has imposed a quantitative "cut-off point" at which addition of alumina to an MCB transforms it into a MAC brick.

Additionally, Commerce has arbitrarily limited the testing methodologies that will be considered in applying that cut-off point. But as the CAFC explained, in fulfilling its statutory "responsibility to define the scope of the orders 'in such detailed as {it} deem{ed} necessary'" during the course of an investigation, during the MCB investigation Commerce "determined not to go beyond the 'name' of MAC bricks, not to provide any chemical composition or technical specifications for MAC bricks, and not to adopt an explicit exclusion for MAC bricks because it was unnecessary." *Id.* at 921-22 (quoting 19 U.S.C. § 1673e(a)(2)). Because Commerce did not find setting a cut-off point during the investigation as necessary for defining the scope of the Orders, no such cut-off point exists. "Commerce cannot later depart from its previous understanding based on its own failure to define non-subject merchandise more precisely than 'by name.'" *Id.*

Defendant fails to address Fedmet's arguments on this point. Defendant-Intervenor argues that the CAFC's decision is not directly applicable to the outcome of Commerce's covered merchandise determination because, they claim, the MAC bricks at issue here are different than the MAC bricks at issue in *Fedmet Resources*. They are

7

not. Rather, record evidence confirms that the MAC bricks at issue here contain "approximately 8 to 15 percent alumina." *See, e.g.*, Appx02389 (Certificate of Quality from Manufacturer); Appx02137-02152 (Independent Laboratory Results).

The MAC bricks at issue in *Fedmet Resources* were "Bastion MAC bricks" containing "*approximately* 8 to 15 percent alumina." The reference to alumina content was drawn from the original Fedmet scope ruling request and was part of the general description of the merchandise at issue. Appx02117. As already discussed, however, neither the CAFC in *Fedmet Resources* nor Commerce in its final scope ruling adopted this or any other specific alumina content percentage as the cut-off point for defining a MAC brick. Furthermore, both Defendant and Defendant-Intervenor ignore the word "approximately," which Defendant-Intervenor had previously unsuccessfully requested Commerce to remove from the Fedmet Scope Ruling,[1] and instead claim

---

[1] The three member companies of Defendant-Intervenor, Resco, Magnesita Refractories Company, and Harbison Walker International, Inc., collectively opposed the appeals and remand proceeding leading to the Court-affirmed Fedmet Scope Ruling. Where the same three companies previously opposed Fedmet, but had not yet referred to themselves as the "Committee," this brief refers to them collectively as "Defendant-Intervenor."

that *Fedmet Resources* dealt with MAC bricks containing a *minimum* of eight *added* alumina. *See* ECF 40 at 22; ECF 42 at 7-8. After the *Fedmet Resources* decision, Defendant-Intervenor "insist{ed} that a remand is necessary for Commerce to remove the term 'approximately' from the MACB definition and provide an unambiguous, precise definition of the MACBs that are outside the scope of the antidumping and countervailing orders on MCBs." *Fedmet Resources Corp. v. United States*, 70 F. Supp. 3d 1279, 1280 (Ct. Int'l Trade 2015). The Court, however, found Defendant-Intervenor's argument "unavailing," and that including the word "approximately" was "consistent with the definition the CAFC adopted in *Fedmet*." *Id.* (citing *Fedmet Resources* at 916-17).

Equally without merit is Defendant-Intervenor's construction of *Fedmet Resources* as somehow creating a scope exclusion limited solely to "Fedmet Bastion" bricks. ECF 42 at 10-12. It was not. The statutory scheme does not permit the alteration of the scope of the order through the scope ruling process. *See Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002) ("Repeatedly, decisions of this court confirm that 'although the scope of a final order may be clarified, it can

9

not be changed in a way contrary to its terms.'") (quoting *Smith Corona Corp. v. United States*, 915 F.2d 683, 686 (Fed. Cir. 1990); *Tak Fat Trading Co. v. United States*, 396 F.3d 1378, 1383 (Fed. Cir. 2005) ("The scope of the order can be clarified but it cannot be changed by the interpretive process."). The *Fedmet Resources* decision held that *all* MAC bricks have always been outside the scope of the MCB Orders because the Petitioner, Resco Products, Inc. ("Resco") had expressly excluded them from the scope during the investigation, *Fedmet Resources* at 922 ("{N}othing in the (k)(1) sources detracts from the otherwise clear statements that *all* MAC bricks were excluded from the scope of the underlying investigations.") (emphasis in original), and therefore Fedmet's Bastion bricks, which are MAC bricks, are excluded from the scope of the MCB Orders. *Id.* ("Because Fedmet's bricks are MAC bricks, we hold that they are not covered by the orders").

Defendant-Intervenor further claims that the CAFC "did not need to address, and did not purport to address, the broader question of what test should be applied to determine whether a particular brick should be considered an MCB or a MAC brick." ECF 42 at 6-7. That is incorrect. The CAFC in *Fedmet Resources* did not prescribe a particular

cut-off point or testing method because it determined that, based on the scope language in the Orders, there was no basis for doing so. To the contrary, "{t}o the extent that MCBs and MAC bricks do in fact overlap to some degree, the overlap was surrendered by Resco's failure to provide a technical definition or 'cut off point' when asked to be more specific." *Fedmet Resources* at 921. It follows that any *bona fide* MCB containing added alumina constituted an excluded MAC brick for the purposes of the MCB Orders.

Thus, Defendant-Intervenor's observation that *Fedmet Resources* did not resolve "technical questions of how relevant percentages should be measured" or what amount of alumina transforms an MCB into a MAC brick, ECF 42 at 7-8, misses the point. The court concluded that because Resco, excluded MAC bricks by name and declined to provide any further clarification, no precise "cut-off point" existed in the scope of the orders. To the extent that the absence of such a cut-off point creates a potential overlap between subject MCBs and non-subject MAC bricks, that overlap was "surrendered." *Fedmet Resources* at 921. Commerce may not now rely upon the purported need to for a cut-off point to mandate specific alumina content percentages or testing methodologies

11

to define MAC bricks in post-order scope rulings. Moreover, in its remand determination following the *Fedmet Resources* decision, Commerce expressly declined to establish any mandatory testing methodology. While acknowledging Defendant-Intervenor's argument that "some of the testing protocols may convert aluminum in MCBs to alumina," Commerce nevertheless declined to "reopen the record to identify the appropriate testing protocols" because it would not be "appropriate to do so under the limited time frame provided in the Remand Order *and the CAFC's explicit holding in* Fedmet." Appx02123-02124 (emphasis added).

Defendant-Intervenor complains that the CAFC did not consider whether only trace amounts of added alumina would transform an MCB into a MAC bricks. ECF 42 at 7. But that too is incorrect. Petitioner raised this argument in its very first objection to Fedmet's scope ruling request in 2011. Appx02110 ("{Commerce} must recognize and reject Fedmet's self-serving attempt to unilaterally create this product by simply adding alumina to the mix."). The CAFC not only recognized that Fedmet had not "unilaterally created" MAC bricks because Resco had excluded MAC bricks by name in the investigation, but further held

that because Resco "surrendered" further definition of a "cut off point," as long as the brick contains added alumina, it is not an in-scope MCB, but an excluded MAC brick. *Fedmet Resources* at 921-22.

Commerce cannot expand the scope of the MCB Orders to include out-of-scope products in the context of a covered merchandise inquiry. *See Vietnam Finewood Co. v. United States*, 633 F. Supp. 3d 1243 (Ct. Int'l Trade 2023). The question of whether merchandise containing "trace amounts" of alumina would qualify a product as a MAC brick is not presented here, and would need to be addressed in the context of an anticircumvention inquiry. *See* 19 U.S.C. § 1677j(c) (authorizing Commerce to include within the scope of an order merchandise "altered in form or appearance in minor respects."); *see also Duferco*, 296 F.3d at 1098 ("That section prevents the circumvention of antidumping and countervailing duty orders by including within the scope of the orders products that have been altered in minor ways so as to remove them from the literal scope of the orders."). Regardless, as discussed below, there is no indication that any of the Fedmet samples examined by CBP contain only "trace" amounts of alumina.

Finally, Defendant-Intervenor claims that in the below proceeding Commerce merely clarified the scope by finding that bricks with less than five percent added alumina are not MAC bricks, and that this is not an expansion of the scope of the MCB Orders. ECF 42 at 8-9. But as the CAFC held in *Fedmet Resources*, Commerce's decision "not to go beyond the 'name' of MAC bricks, not to provide any chemical composition or technical specifications for MAC bricks, and not to adopt an explicit exclusion for MAC bricks because it was unnecessary . . . cannot now operate to create ambiguity" that Commerce can resolve through the interpretive process. *Fedmet Resources* at 921. That is, Commerce's explicit decision that it was not necessary to further define this aspect of the scope means that there is no ambiguity that it has the ability to later "clarify," as doing so would be an unlawful expansion of the scope of the Orders. *Id.* at 922 ("Commerce cannot later depart from its previous understanding based on its own failure to define non-subject merchandise more precisely than 'by name.' We therefore hold that Commerce's finding of ambiguity in the (k)(1) sources lacks substantial evidence."); *see also Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1381 (Fed. Circ. 2017) ("Commerce's inquiry must begin

14

with the order's scope to determine whether it contains an ambiguity and, thus, is susceptible to interpretation.").

In sum, because the CAFC specifically disavowed imposing a specific cut-off point, the imposition of such a cut-off point in the context of a covered merchandise inquiry constitutes an unlawful expansion of the Orders. *See Fedmet Resources* at 922 ("While Commerce enjoys considerable latitude in clarifying its orders, it may not change the original scope of its orders through the interpretative process.") (citing *Tak Fat*, 396 F.3d at 1383); *see also Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300 (Fed. Cir. 2013) (holding that the Court is deferential if and only if "Commerce's interpretation is not 'contrary to the order's terms' and does not 'change the scope of the order.'") (quoting *Global Commodity Grp. LLC v. United States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013)).

B. Commerce Was Not Justified In Giving Precedence To The Subsequent S&S Ruling

As mentioned above and as discussed in Fedmet's Principal brief, Commerce gave greater weight to the subsequent S&S ruling than it gave to the scope language, the record of the investigation, the decision

of the CAFC, or the Fedmet Scope Ruling concerning the merchandise
at issue.

The CAFC held in *Fedmet Resources* that a review of the (k)(1)
sources revealed that MAC bricks were excluded from the Orders by
name, which was sufficient because they are generally understood in
the industry. *Fedmet Resources* at 921. The CAFC specifically concluded
that no particular cut-off was applicable for MAC bricks because Resco,
by explicitly stating that the scope language was sufficient to exclude
these generally understood products, surrendered to the accepted
industry definition of "MAC brick." *See id.* Therefore, proper
consideration of the (k)(1) sources demonstrates that the subsequent
S&S ruling is not controlling on the issues in the covered merchandise
inquiry.

The Court has recognized that where a prior ruling contains
errors, "the support it provides is limited by errors in that ruling." *Star
Pipe Prods. v. United States*, 463 F. Supp. 3d 1366, 1377 (Ct. Int'l Trade
2020). Therefore, to extent that a prior scope ruling conflicts with the
scope itself, its support for subsequent scope decisions by Commerce is
limited to the non-erroneous aspects of the ruling. *Id.* Here, the CAFC

16

held that Commerce cannot specify cut-off points where it expressly
declined to do so during the initial investigation. Therefore, to the
extent that the S&S ruling specifies a cut-off point for alumina to
differentiate MCBs from MAC bricks, this is an unlawful expansion of
the scope of the MCB Orders.

In the S&S ruling, Commerce agreed that the requested products,
which S&S defined as MAC bricks with at least 5 to 15 percent added
alumina, are excluded MAC bricks. Appx02135 ("{W}e recommend
determining that Yingkou's BP-70A and BP-75A MAC bricks, which are
imported by S&S, be found outside the scope of the Orders."). That
aspect of the decision is consistent with the CAFC's holding in *Fedmet
Resources*, and can be relied upon as support in subsequent scope
proceedings. Commerce further determined that to be excluded from the
scope of the Orders, the S&S bricks must be shown to have at least five
percent added alumina as tested using x-ray diffraction ("XRD"). *Id.* (". .
. outside the scope of the Orders when they contain at least five percent
added *alumina*, per the specifications provided in the request, as
demonstrated by testing using an x-ray diffraction testing methodology
in the PRC prior to export.") (emphasis in original). As already

17

discussed, however, those limitations are not consistent with the holding of the CAFC in *Fedmet Resources*. Accordingly, that aspect of the S&S ruling cannot be relied on by Commerce to narrow the definition of what constitutes a non-subject MAC brick for purposes of the Orders.

Defendant contends that it was nonetheless reasonable to consider the S&S ruling as part of its interpretive process, ECF 40 at 17, because the "Court grants 'significant deference to Commerce's interpretation of a scope order'" under the substantial evidence standard of review. ECF 40 at 7 (quoting *Mid Continent*, 725 F.3d at 1300). But as the CAFC confirmed in *Mid Continent*, such deference is afforded only if "Commerce's interpretation is not 'contrary to the order's terms' and does not 'change the scope of the order.'" *Mid Continent*, 725 F.3d at 1300 (quoting *Global Commodity Grp.*, 709 F.3d at 1138). Such questions are matters of law that are reviewed *de novo*, without deference. *See Meridian Prods*, 851 F.3d at 1382. Here, Commerce's consideration of the S&S ruling in a manner inconsistent with the scope of the Orders and its terms is an error of law that the Court does not afford any deference.

18

Even if it were "reasonable" under a substantial evidence standard for Commerce to *consider* that aspect of the S&S ruling, *considering* the S&S ruling is not the same as giving it *precedence* over Commerce's previous ruling on the same Fedmet products. The question before Commerce was whether bricks imported by Fedmet are MAC bricks or MCBs. Unlike the S&S ruling, the Fedmet Scope Ruling is specific to Fedmet's MAC bricks, was the first scope ruling considered by Commerce, and was issued pursuant to an express holding by the CAFC that Fedmet's MAC bricks were outside the scope of the Orders. As a matter of law, that prior scope ruling determines whether the merchandise imported by Fedmet under examination by CBP in the EAPA investigation is, or is not, covered merchandise.

Where a party seeks confirmation from Commerce that the product it imports is not covered by an order, it requests a scope ruling. 19 C.F.R. § 351.225(c)(1) (2011). After reviewing the request and, if needed, consulting the (k)(1) sources, Commerce "will issue a *final* ruling as to whether the product which is the subject of the scope inquiry is included within the order." 19 C.F.R. § 351.225(f)(4) (2011) (emphasis added). Commerce's regulation is clear that the ruling as to

19

whether the product is covered by the scope of the order is *final*. For Commerce to find that a scope ruling is not final, and can be overturned or modified by a later-in-time scope ruling requested by a different party, is contrary to Commerce's regulations. Therefore, the Fedmet Scope Ruling was *final* with respect to Fedmet, and could not be later modified by the terms of the S&S ruling. Furthermore, the S&S ruling expressly recognizes that it is not applicable to Fedmet's merchandise. Appx02134 ("{W}e have limited our analysis to only those MAC bricks identified in the requestors' scope application and not all bricks designated as MAC bricks."). Commerce's consideration of the subsequent S&S ruling as superseding the Fedmet Scope Ruling, which was final to Fedmet, was unlawful.

Finally, Commerce's professed concern that the Fedmet Scope Ruling and the S&S ruling could lead to arbitrary results wherein two materially identical products are treated differently for different importers is misplaced. As discussed above, the CAFC determined that all MAC bricks are outside the scope of the Orders, including Fedmet's bricks that Fedmet defined as containing approximately 8 to 15 percent alumina. The subsequent S&S ruling merely found that specific

20

products not at issue here also qualified as excluded MAC bricks provided they contained at least five percent alumina measured using a specific testing methodology.[2] Nothing in the S&S ruling purports to hold that *only* products meeting those criteria are MAC bricks excluded from the scope of the Orders. To the contrary, Commerce could not have been more clear that its ruling applied only to those particular products and that Commerce was continuing the approach of determining whether particular products were MAC bricks on a case-by-case basis rather than attempting to develop a universally applicable test. Appx02134. Commerce's decision to take such a case-by-case approach need not result in arbitrary outcomes so long as any scope determinations made regarding the Orders abide by the CAFC's holding in *Fedmet Resources*. Commerce's concern about the arbitrariness is therefore entirely speculative and unfounded.

---

[2] S&S limited its scope ruling request to specific MAC bricks containing at least 5 to 15 percent alumina. S&S did not request that Commerce make any determination with regard MAC bricks containing other amounts of added alumina.

C. Commerce's Evaluation Of Testing Methods Based On An Inapplicable Scope Ruling Is Unlawful

Commerce's finding that "none of the bricks included in {Report 0826} had an alumina content level sufficiently high enough to meet the percentage required in the S&S Refractories Ruling," ECF 40 at 37, confirms that it treated the S&S analysis, and not the CAFC's holding in *Fedmet Resources*, as the controlling legal standard for its covered merchandise determination. As discussed above, applying that standard to Fedmet's merchandise is unlawful.

In addition to the five percent cut off, Commerce also unlawfully relied on the S&S ruling to impose the requirement that only XRD testing could be used to establish alumina content even though Commerce had declined to impose any mandatory testing procedure in the Fedmet Scope Ruling, *SMA Surfaces, Inc. v. United States*, 617 F. Supp. 3d 1263, 1282-83 (Ct. Int'l Trade 2023) ("'{T}he support a prior scope ruling provides is limited by the errors in that ruling.'") (quoting *Star Pipe*, 463 F. Supp. 3d at 1377), and the definition of Fedmet's MAC bricks without a specified testing methodology was affirmed by the Court. *See Fedmet Resources Corp.*, 70 F. Supp. 3d at 1280. The Court's affirmance of the Fedmet Scope Ruling was consistent with the CAFC's

22

direction that because Commerce "did not provide any chemical composition or technical specifications for MAC bricks," and instead was satisfied that they were excluded "by name," it cannot now define them more precisely than by name. *Fedmet Resources* at 921-22.

Defendant responds that Commerce was nonetheless justified in giving effect to the testing requirements in the S&S ruling because to do otherwise "could lead to arbitrary results with materially identical physical properties are treated differently across different scope proceedings." ECF 40 at 49-50. But that is speculative and irrelevant to Fedmet. S&S's ruling only concerned S&S products that had at least five percent added alumina — there is no indication that S&S imported or planned to import bricks with less than five percent added alumina. More significantly, Fedmet was not a party to that proceeding — the fact that S&S elected not to appeal Commerce's conclusions regarding testing methodologies in that case does not mean those testing procedures are now engrafted into the scope of the Orders.

Furthermore, record evidence confirms that the bricks are MAC bricks tested by CBP contain "approximately 8 to 15 percent alumina" as stated in the Fedmet Scope Ruling. The inclusion of the word

"approximately" in the Fedmet scope request means that the tested percentage need not be exactly eight percent in every sample. As Fedmet explained below, because refractory bricks are inhomogeneous, the measured alumina percentage can vary from brick to brick and depends upon the sampling procedure employed. *See* Appx02295.

In response to the Fedmet Scope Ruling, Defendant-Intervenor argued before the Court that it should remand the ruling so Commerce could specify a testing methodology. *See Fedmet Resources Corp.*, 70 F. Supp. 3d at 1280 ("Defendant-Intervenors contend that a remand is necessary for Commerce to re-open the record of the scope proceeding to solicit additional factual information on testing methodologies for assessing alumina content"). The Court rejected this argument as unavailing, holding that a definition of MAC bricks not including a testing method "is consistent with the definition the CAFC adopted in *Fedmet*." *Id.* at 1280 (citing *Fedmet Resources* at 916-17).

Notably, the CAFC was fully aware that some testing methodologies oxidized the alumina in MCBs and MAC bricks. Fedmet brought this to the attention of the CAFC in its initial brief:

> *Alumina* is aluminum oxide, and is already fully oxidized. It is added not as an antioxidant, but rather, as discussed in text, to

24

> promote the formation of spinel. Potential confusion can result
> from the fact that, when subjected to certain kinds of testing, the
> aluminum in an MCB can be converted to alumina by the testing
> process itself.

Brief for Plaintiff-Appellant at 32 n.11, *Fedmet Resources Corp. v.
United States*, 755 F.3d 912 (Fed. Cir. 2014) (No. 2013-1539), ECF 24.
Fedmet further clarified in its reply brief that as a result of the
oxidization from testing, "some chemical analysis results of MCBs may
appear to show the presence of small amounts of alumina even though
actual chemical composition of the brick contains aluminum, not
alumina." Reply Brief for Plaintiff-Appellant at 25 n.14, *Fedmet
Resources Corp. v. United States*, 755 F.3d 912 (Fed. Cir. 2014) (No.
2013-1539), ECF 37. Nonetheless, the CAFC did not hold that a specific
alumina content or testing method was necessary or permitted by the
scope of the Orders. To the contrary, the CAFC held that Commerce
was precluded from imposing more specific requirements by means of a
post-order scope determination. *Fedmet Resources* at 922 ("Commerce
cannot later depart from its previous understanding based on its own
failure to define non-subject merchandise more precisely than 'by
name.'").

D. Commerce's Cherry-Picking of Test Results Is Unsupported By
   Substantial Evidence

Substantial evidence "is more than a mere scintilla. It means such

relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S.

197, 229 (1938). In determining whether Commerce has identified

substantial evidence to support its determination, the Court must

consider "the record as a whole, including evidence that supports as

well as evidence that 'fairly detracts from the substantiality of the

evidence.'" *Nippon Steel Corp. v. United States*, 337 F. 3d 1373, 1379

(Fed. Cir. 2003) (quoting *Atl. Sugar, Ltd. v. United States*, 744 F. 2d

1566, 1562 (Fed. Cir. 1984)). "{I}t is . . .well-established that

Commerce's total failure to consider or discuss record evidence which,

on its face, provides significant support for an alternative conclusion

renders the Department's determination unsupported by substantial

evidence." *Allegheny Ludlum Corp. v. United States,* 112 F. Supp. 2d

1141, 1165 (Ct. Int'l Trade 2000).

In the instant case, Commerce failed to adequately consider

multiple laboratory test results, manufacturer's testing certificates,

expert testimony, research papers, testing protocols, and raised

concerns with the testing performed by CBP when making its covered

merchandise determination. Commerce further failed to make any

determination with respect to 9 of the 11 tested bricks even though all

evidence on the record indicated that their alumina content was greater

than the S&S cut-off, simply because they were not tested using

Commerce's arbitrarily-favored method. Commerce's failure to consider

evidence on the record detracting from its conclusions renders its

determination unsupported by substantial evidence. Defendant and

Defendant-Intervenor's arguments to the contrary are unavailing.

As an initial matter, Defendant's contends that it was

"reasonable" for Commerce to find that reports 1030 and 1071, which

showed all the tested bricks as containing alumina in excess of **[     ]**

percent, Appx01106, Appx01164, did not provide enough evidence to

show that the bricks were MAC bricks. ECF 40 at 53. Defendant further

claims that even though the pre-oxidization XRD scans did not show

identifiable aluminum, but did show identifiable alumina, finding that

the brick contained pre-oxidization alumina is "speculation." ECF 40 at

53-53. But this is inaccurate as a matter of fact.

NON-CONFIDENTIAL

Commerce, however, acknowledged that the oxidization of aluminum into alumina would, at most, double the weight of the aluminum. Appx01041. Therefore, for all of the alumina in those samples to have come from the oxidation of aluminum powder, the aluminum powder would have had to have been in excess of **[      ]** percent of the weight of the brick, and was likely much lower. Because the pre-oxidization XRD test performed to identify the materials present in the sample could not identify any aluminum, and instead only identified magnesia, carbon, and alumina in sufficient quantities to establish them as actually being present in the tested bricks, any aluminum, if present in the samples, was in such small quantities to be not reliably identifiable. Appx01111, Appx01170. Indeed, after oxidization, the weight of the oxidized elements other than magnesia and alumina was always less than **[    ]** percent, and the weight of alumina was always greater than **[      ]** percent. Appx01138-01157, Appx01203-01232. If there was no alumina in the bricks, then the aluminum would have been roughly **[      ]** percent aluminum by weight. However, since the amount of aluminum, if present, was in such miniscule amounts that it was not detected by the XRD test, the

amount of alumina in the bricks must have been greater than the
amount of aluminum before oxidization, and more than sufficient to
meet the S&S ruling requirements.

Defendant refers to this as "speculation." It is not. It is a simple
calculation. An aluminum atom has an atomic weight of 26.98 and an
oxygen atom has an atomic weight of 16. Two aluminum atoms with a
collective weight of 53.96 combine with three oxygen atoms with a
collective atom weight of 48 to create one alumina molecule with an
atomic weight of 101.96. This means that the oxidization of aluminum,
at most, increases the weight of the aluminum atoms by 89%
(101.96/53.96 - 1 = 0.088955). Since magnesia is already oxidized, it
does not increase in weight during testing. The only other elements to
account for a relative weight change are trace elements totaling less
than **[    ]** percent by weight, and the carbon that was burned off, which
amounted to a maximum of **[      ]** percent. Appx01134-01136,
Appx01198-01201. Defendant's argument that "there is no basis to
believe that such distortions have been accounted for in the test
reports," ECF 54, is entirely without merit, and Commerce's failure to
actually perform this simple analysis renders its finding that it cannot

determine whether these bricks are MAC bricks unsupported by substantial evidence.

Moreover, record evidence demonstrates that the most accurate measure of pre-oxidization alumina comes from a combination of pre-oxidization XRD to estimate the relative alumina to aluminum ratio, then a quantitative testing method, such as x-ray fluorescence ("XRF"), to quantify the post-oxidization alumina, followed by a calculation as performed above. *See* Appx02335-02363. Commerce discounting this analysis despite it being the most accurate quantification of pre-oxidization of alumina on the record was unsupported by substantial evidence.

With respect to the 0826 report, it is clear that CBP collected samples in a manner that failed to ensure it would be representative of the entirety of the brick. Instead, the testing was limited to mostly the exterior, Appx01245 (photographs showing chiseled-off corners), which is primarily graphite and resin. *See, e.g.*, Appx02585 ("The outside of the brick is always covered in a layer of graphite that is spread over the outside surface."). As the alumina is dispersed throughout the interior

of the bricks, sampling only material from the exterior of the brick could

not, and inevitably did not, yield accurate results.

The test results in the 0826 report not only stand in stark contrast

to all of CBP's other test results, but also conflicts with other record

evidence. The reported alumina levels are inconsistent with testing

performed by the manufacturer of the bricks prior to exportation, as

reflected in the Certificate of Quality for the specific entry from which

CBP's samples were drawn. Appx02389. The fact that these test results

on the same bricks by those familiar with the appropriate testing

methods for inhomogeneous refractory bricks are so different from the

0826 report results further highlights deficiencies in CBP's testing.

Defendant claims Commerce was permitted to disregard the

manufacturer's testing results because they were obtained from an XRF

test. ECF 40 at 43. That is incorrect — the manufacturer Certificate of

Quality did not identify the testing method, as Commerce

acknowledged. Appx01040. Moreover, given that the Fedmet Scope

Ruling did not mandate any particular testing methodology, and indeed

did not require Fedmet to maintain or perform any specific testing to

qualify for the MAC brick exclusion, the Certificate of Quality did not

31

need to specify a testing methodology to establish that the bricks

contained "approximately 8 to 15 percent alumina."

Defendant further argues that Commerce was justified in

disregarding the third-party testing performed by an independent lab

on five sample bricks still available to Fedmet because they did not

specify a testing methodology. ECF 40 at 44. That too is incorrect. The

independent lab conducted XRF tests. Appx02137-02152. These tests

produced results that were close to, but not precisely the same as, the

testing performed by the manufacturer. Appx02153-02158.[3] This

demonstrates that the testing performed by multiple parties who are

familiar with testing protocols for refractory bricks produced similar

results. In contrast, the testing performed by CBP, which employed

testing protocols not designed for inhomogeneous refractory bricks,[4]

produced wildly dissimilar and inconsistent results. That Commerce

chose to rely on the disparate testing using self-admitted incorrect

protocols and tests rather than the consistent results performed by

---

[3] Defendant failing to recognize this distinction calls into question its review and understanding of the administrative record.

[4] For example, the XRD testing protocol used by CBP, CBPL Method 25-28, provides that "analysis of irregularly shaped or inhomogeneous samples by this procedure should be avoided." Appx02365

NON-CONFIDENTIAL

multiple independent parties familiar with these particular products renders Commerce's decision unsupported by substantial evidence.

Furthermore, the credibility of CBP's testing is further undermined by expert opinions that confirmed the erroneous application of the testing performed by CBP. For example, **[**

**]**, who has more than 30 years of experience in the refractory brick industry, analyzed the testing performed by CBP and found it inappropriate for inhomogeneous refractory bricks. Appx02293-02295. While **[** **]** was at the time **[** **]**, his opinion was confirmed by **[**

**]**, agreed with **[** **]** assessment that confirmed that the testing performed by CBP was inappropriate and did not follow analytical protocols. Appx02379-02384. However, Commerce gave absolutely no weight to **[** **]** expert opinion, instead relying solely on

NON-CONFIDENTIAL

disparate testing performed by CBP that Commerce itself called into question. Commerce's failure to address, let alone acknowledge, **[**

**]** expert testimony renders its decision unsupported by substantial evidence.

Finally, Commerce's stated justification for relying on a qualitative rather than a quantitative test, that CBP's XRD and XRF protocols both state they are qualitative, Appx01039, does not explain why it was appropriate for Commerce to ignore the quantitative testing methodologies on the record, such as those performed by the independent laboratory. Moreover, the record establishes that were Commerce truly concerned about measuring alumina separately from aluminum, that it should have required the use of XRD to identify the relative percentage of aluminum versus alumina, XRF to quantify the amount of converted alumina, and then a calculation to establish the quantitative percentages of alumina and aluminum in the pre-oxidized sample. *See* Appx02335-02363. Commerce's wholesale disregard of CBP's failure to conduct such a quantitative analysis, and its decision to instead rely on inconsistent qualitative analyses to evaluate a

quantitative cut-off, renders its decision unsupported by substantial evidence.

II.    CONCLUSION

For the foregoing reasons we respectfully request that this Court reverse Commerce's covered merchandise determination and direct it to find that in accordance with *Fedmet Resources*, all magnesia carbon bricks with added alumina, including all 11 bricks tested by CBP, are outside the scope of the Orders on MCBs from China.

Respectfully submitted,

/s/ R. Will Planert
R. Will Planert
Donald B. Cameron
Julie C. Mendoza
Brady W. Mills
Mary S. Hodgins
Eugene Degnan
Jordan L. Fleischer
Nicholas C. Duffey
Stephen A. Morrison
Ryan R. Migeed

MORRIS, MANNING & MARTIN LLP
1333 New Hampshire Ave, N.W.
Suite 800
Washington, D.C. 20036
(202) 408-5153

*Counsel for Fedmet Resources Corporation*

*Certificate of Compliance*

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 6,618 words including text, footnotes, and headings and excluding the table of contents, table of authorities, and counsel's signature block, according to the word count function of Microsoft Word 2016 used to prepare this brief.

/s/ R. Will Planert

Dated: April 29, 2024