IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

_____

|  |  |  |
|---|---|---|
| FEDMET RESOURCES CORPORATION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Court No. 23-00117 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| MAGNESIA CARBON BRICKS FAIR TRADE COMMITTEE, | ) ) ) | |
| Defendant-Intervenor. | ) ) | |

_____

SUPPLEMENTAL BRIEF OF
FEDMET RESOURCES CORPORATION

R. Will Planert
Donald B. Cameron
Julie C. Mendoza
Brady W. Mills
Mary S. Hodgins
Eugene Degnan
Jordan L. Fleischer
Nicholas C. Duffey
Ryan R. Migeed

MORRIS, MANNING & MARTIN LLP
1333 New Hampshire Ave, N.W.
Suite 800
Washington, D.C. 20036
(202) 216-4819

*Counsel to Fedmet Resources Corporation*

June 28, 2024

## TABLE OF CONTENTS

I.  *Saha Thai* Framework ...................................................................2

A. Scope Ruling Framework ..................................................2

B. *Saha Thai* Scope Decision .............................................4

II. Magnesia Carbon Brick Scope ...........................................5

III. Conclusion ...........................................................................8

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Saha Thai Steel Pipe Public Co. v. United States*,
   101 F.4th 1310 (Fed. Cir. 2024)................................................. *passim*

*Fedmet Resources Corp. v. United States*,
   755 F.3d 912 (Fed. Cir. 2014) ................................................... *passim*

**Regulations**

19 C.F.R. § 351.225(k) ................................................................ *passim*

<u>GLOSSARY</u>

| CAFC | Court of Appeals for the Federal Circuit |
|------|------------------------------------------|
| CBP | U.S. Customs and Border Protection |
| MAC Brick | Magnesia Alumina Carbon Brick |
| MCB | Magnesia Carbon Brick |

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

_____

|  |  |  |
|---|---|---|
| FEDMET RESOURCES CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Court No. 23-00117 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| MAGNESIA CARBON BRICKS FAIR TRADE COMMITTEE, | ) ) ) | |
| Defendant-Intervenor. | ) ) | |

_____)

SUPPLEMENTAL BRIEF OF
<u>FEDMET RESOURCES CORPORATION</u>

Pursuant to the Court's June 7, 2024 Order, ECF 50, Plaintiff

Fedmet Resources Corporation ("Fedmet") hereby addresses the

relevance of the U.S. Court of Appeals for the Federal Circuit's

("CAFC") decision in *Saha Thai Steel Pipe Public Co. v. United States*,

101 F.4th 1310 (Fed. Cir. 2024) (hereinafter "*Saha Thai*").

*Saha Thai* restates the interpretive framework for scope decisions

as established by the courts and the regulations of the U.S. Department

of Commerce ("Commerce") and confirms that the 2021 amendment to the scope ruling regulation has not altered that framework. This means that, as it did prior to the 2021 amendment, Commerce begins its analysis with a consideration of the plain language of the scope of an order before turning to (k)(1) sources.

Under the unusual circumstances in this case, the plain language of the scope of the Orders on magnesia carbon bricks ("MCBs"), as it applies to Fedmet's merchandise, has already been conclusively construed by the CAFC in *Fedmet Resources Corp. v. United States*, 755 F.3d 912 (Fed. Cir. 2014) (hereinafter "*Fedmet Resources*") as excluding all magnesia carbon alumina ("MAC") bricks. As a result, in the instant covered merchandise determination, Defendant was obligated to abide by the CAFC's ruling that all MAC bricks are excluded from the scope of the Orders, without limitation by any specific cut-off or testing methodology. Nothing in *Saha Thai* alters that obligation.

I.    *Saha Thai* Framework

    A.    Scope Ruling Framework

    In *Saha Thai*, the CAFC held that Commerce's scope determination inquiry continues to involve a three-step analysis under

19 C.F.R. § 351.225(k). First, Commerce considers whether the scope language of the order is dispositive. Second, if the scope language is not dispositive, Commerce turns to (k)(1) sources for guidance for its interpretation of the scope of the order. Third, if and only if the (k)(1) sources are still not dispositive, it then turns to (k)(2) sources for guidance.

The CAFC in *Saha Thai* explained that there may be instances in which the scope language alone resolves the inquiry. *Saha Thai* at 1324. That is, proceeding to (k)(1) sources "may be unnecessary if the scope language *itself* answers that scope question." *Id.* at 1326. The *Saha Thai* court further explained that the 2021 revised regulations "expressed a similar understanding based on {Commerce's} practice," and that Commerce may consider (k)(1) sources "if it determines the scope language itself does not clearly and sufficiently answer the scope question." *Id.* That is, the (k)(1) sources are to be used as interpretive aids where the scope language, which is necessarily written in general terms, does not itself resolve the question. *Id.*

B.    *Saha Thai* Scope Decision

In *Saha Thai*, the scope issue was whether the antidumping duty order on Standard Pipes from Thailand covered "dual-stenciled pipes," which are pipes that are certified as both "standard pipes" and "line pipes." *Id.* at 1325. After remanding Commerce's initial decision that dual-stenciled pipes were covered by the Standard Pipe order, the Court of International Trade sustained Commerce's remand decision finding that they were excluded from the Standard Pipe order. *Id.*

Before the CAFC, appellant argued that in reaching its decision on remand that dual-stenciled pipes were excluded from the scope, Commerce improperly relied on the (k)(1) sources. The CAFC disagreed and held that Commerce is at least permitted to consult the (k)(1) sources, particularly where parties rely on the (k)(1) sources for their contradictory interpretation. *Id.* at 1325-26. The CAFC nonetheless reversed, concluding that the scope language was sufficient to resolve the question and covered dual-stenciled pipes. *Id.* at 1327-28.

Significantly, for purposes of the instant case, the CAFC concluded that the reference in the scope language to the merchandise being "commonly referred to in the industry" as standard pipe operated

4

as a limitation that "further explicitly refine{d} the universe of merchandise defined by the as-described physical characteristics" to the "commonly referred to" product. *Id.* at 1327. That is, pipes that did not fall within the industry term "standard pipe," such as line pipes, fell outside the scope of the order, but dual-stenciled pipes, which constituted a subset of "standard pipe," were captured within the scope language.

Having held that dual-stenciled pipe was included in the industry term "standard pipe," the "sole remaining dispute thus boil{ed} down to, absent an express exclusion in the scope language in the Thailand Order, whether the (k)(1) materials support an implicit exclusion of standard pipes if they are dually stenciled as line pipes." *Id.* at 1328. The CAFC declined to read such an implicit exclusion from the (k)(1) sources, finding that doing so would have failed to give "paramount weight" to the scope language itself. *Id.* at 1329.

II.   Magnesia Carbon Brick Scope

In *Fedmet Resources*, the CAFC similarly relied on industry terminology and product naming conventions to hold that the scope of the orders on MCBs did not extend to MAC bricks. *Fedmet Resources* at

5

921 ("The orders are limited to 'magnesia carbon bricks' . . . {t}his limitation is clear and unambiguous. . . .  In this case, the terms 'magnesia carbon brick' and 'magnesia alumina carbon brick' are ubiquitous and well-understood in the refractories industry. Indeed, Resco characterized both types of bricks as 'standard.'").[1] Thus, unlike the scope ruling at issue in *Saha Thai*, here the CAFC has already conclusively interpreted the scope of the Orders with respect to MAC bricks, having examined the scope language with the aid of the (k)(1) sources. *See Fedmet Resources* at 919 ("The (k)(1) sources are dispositive and unequivocally confirm that Fedmet's MAC bricks are not within the scope of the orders . . . the (k)(1) sources confirm Commerce and the Commission's understanding that the underlying investigations did not extend to MAC bricks."); ECF 36 at 25-26. That is, the CAFC confirmed that the plain language limited the scope of the MCB Orders to MCBs and resolved the ambiguity with respect to MAC bricks by finding based on the (k)(1) sources that no MAC bricks are covered MCBs.

---

[1] Notably, Judge Reyna authored both the *Fedmet Resources* and *Saha Thai* panel decisions.

Commerce's job in the instant covered merchandise inquiry was to clarify, for the benefit of U.S. Customs and Border Protection ("CBP"), how to distinguish between subject MCBs and non-subject MAC brick, a matter as to which CBP had confessed considerable confusion. *See Fedmet v. United States*, Ct. No. 21-248, ECF 37.[2] In providing that clarification, however, Commerce has unlawfully introduced new fixed numerical cut-offs and mandatory testing methodologies that were not part of the CAFC's decision in *Fedmet Resources* and that indeed were expressly rejected in the final scope ruling implementing the CAFC's decision. *See* ECF 36 at 46 (citing Appx02123-02125); ECF 45 at 11-12.

Nothing in *Saha Thai*, or in the CAFC's jurisprudence on scope rulings generally, permits Commerce to rely on a (k)(1) source — in this case, a scope ruling issued subsequent to *Fedmet Resources* and that addressed different products — to alter the CAFC's previous construction of the plain language of the scope of the Orders to exclude all MAC bricks based on standard industry terminology. *See* ECF 36 at 35-36. Commerce's bypassing the CAFC's prior interpretation of the

---

[2] In CBP's first attempt at testing Fedmet's MAC bricks, CBP failed to even try to measure the alumina or aluminum content. Appx02244-02245.

scope of the Orders to reach a different answer to the same question renders its decision unsupported by substantial evidence and not in accordance with law.

III.    Conclusion

For the foregoing reasons, as well as the reasons explained in Fedmet's initial and reply briefs, Commerce's finding that some MAC bricks are within the scope of the AD/CVD Orders on MCBs from China must be reversed.

Respectfully submitted,

/s/ R. Will Planert
R. Will Planert
Donald B. Cameron
Julie C. Mendoza
Brady W. Mills
Mary S. Hodgins
Eugene Degnan
Jordan L. Fleischer
Nicholas C. Duffey
Ryan R. Migeed

MORRIS, MANNING & MARTIN LLP
1333 New Hampshire Ave, N.W.
Suite 800
Washington, D.C. 20036
(202) 216-4819

*Counsel to Fedmet Resources Corporation*

8

*Certificate of Compliance*

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 1,273 words including text, footnotes, and headings and excluding the table of contents, table of authorities, and counsel's signature block, according to the word count function of Microsoft Word 365 used to prepare this brief.

/s/ R. Will Planert

Dated: June 28, 2024