IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

_____
)
FEDMET RESOURCES                )
CORPORATION,                    )
                                )
            Plaintiff,          )
                                )
      v.                        )
                                ) Court No. 23-00117
UNITED STATES,                  )
                                )
            Defendant,          )
                                )
      and                       )
                                )
MAGNESIA CARBON BRICKS          )
FAIR TRADE COMMITTEE,           )
                                )
      Defendant-Intervenor.     )
_____)

## DEFENDANT'S SUPPLEMENTAL BRIEF
## IN RESPONSE TO THE COURT'S JUNE 7, 2024 ORDER

BRIAN M. BOYNTON
Principal Deputy
Assistant Attorney General

PATRICIA M. McCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:

K. GARRETT KAYS
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
  Enforcement and Compliance

ANTONIA R. SOARES
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Antonia.Soares@usdoj.gov

Dated: June 28, 2024

Attorneys for Defendant

## TABLE OF CONTENTS

BACKGROUND ...................................................................2

    I.     Commerce's Reliance On (k)(1) Sources In This
           Case.............................................................................2

    II.    The *Saha Thai* Decision's Analysis Of
           Commerce's Reliance On (k)(1) Sources .......................5

ARGUMENT ......................................................................7

    I.     *Saha Thai* Is Relevant To This Case ............................7

          A.    Although Decided Under The 2020 Version
                 Of The Scope Regulations, *Saha Thai* Is
                 Relevant Because The  Federal Circuit
                 Addressed Its Interpretation Of The
                 Current Scope Regulation At Issue In
                 This Case...............................................................7

          B.    It Is Undisputed In This Case That
                 Commerce's Scope Analysis Required
                 Consideration Of (k)(1) Sources........................12

          C.    *Saha Thai* Supports Commerce's
                 Consideration Of (k)(1) Sources To
                 Determine Whether Fedmet's Bricks Are
                 In-Scope Merchandise........................................14

          D.    *Saha Thai* Underscores That Deference
                 Should Be Accorded To Commerce's
                 Weighing Of The Record Evidence And To
                 Its Expertise In Scope Proceedings ..................19

CONCLUSION ................................................................21

## TABLE OF AUTHORITIES

**CASES**                                                                 **PAGES**

*Fedmet Res. Corp. v. United States,*
    755 F.3d 912 (Fed. Cir. 2014) .............................................12, 13

*King Supply Co. v. United States,*
    674 F.3d 1343 (Fed. Cir. 2012) .............................................6, 20

*Meridian Prods, LLC. v. United States,*
    851 F.3d 1375 (Fed. Cir. 2017) ...................................................10

*Meridian Prods, LLC. v. United States,*
    890 F.3d 1272 (Fed. Cir. 2018) ....................................................9

*Mitsubishi Heavy Indus., Ltd. v. United States,*
    275 F.3d 1056 (Fed. Cir. 2001) ...................................................20

*OMG, Inc. v. United States,*
    972 F.3d 1358 (Fed. Cir. 2020) .............................................9, 10

*Saha Thai Steel Pipe Public Co. Ltd. v. United States*,
    101 F.4th 1310 (Fed. Cir. 2024) ........................................ *passim*

*Saha Thai Steel Pipe Public Co. Ltd. v. United States*,
    547 F. Supp. 3d 1278 (Ct. Int'l Trade 2021) .....................5, 7, 10

**STATUTES**

19 U.S.C. § 1516 a(b) ..............................................................................11

**REGULATIONS**

19 C.F.R.§ 351.225(k) (2020)............................................................. 7, 8

19 C.F.R.§ 351.225(k)(1) (2021).................................................. *passim*

iv

19 C.F.R.§ 351.225(k)(1)(i) .................................................................8, 16

19 C.F.R. § 351.227(f) ..............................................................................3

## ADMINISTRATIVE DETERMINATIONS

*Certain Magnesia Carbon Bricks From the*
    *People's Republic of China,*
    88 Fed. Reg. 28,495 (Dep't of Commerce May 4, 2023) .................2

*Regulations To Improve Administration and Enforcement of*
    *Antidumping and Countervailing Duty Laws*
    86 Fed. Reg. 52,300 (Dep't of Commerce Sept. 20, 2021).......9, 15

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

_____
                                       )
FEDMET RESOURCES                       )
CORPORATION,                           )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )
                                       )    Court No. 23-00117
UNITED STATES,                         )
                                       )
            Defendant,                 )
                                       )
      and                              )
                                       )
MAGNESIA CARBON BRICKS                 )
FAIR TRADE COMMITTEE,                  )
                                       )
            Defendant-Intervenor.      )
_____)

## DEFENDANT'S SUPPLEMENTAL BRIEF
## IN RESPONSE TO THE COURT'S JUNE 7, 2024 ORDER

Pursuant to the Court's order entered on June 7, 2024, defendant,

the United States, respectfully submits this supplemental brief

addressing

> the relevance, if any, of the Federal Circuit's
> decision in *Saha Thai Steel Pipe Public Co. Ltd.*
> *v. United States*, 101 F.4th 1310 (Fed. Cir. 2024),
> including its discussion of the circumstances
> under which Commerce may consider the criteria

> identified in 19 C.F.R.§ 351.225(k)(1) to
> determine whether an antidumping order covers
> particular merchandise.

Order, ECF No. 50.

As demonstrated below, the *Saha Thai* decision is relevant to this case because (1) it supports sustaining Commerce's scope determination based on (k)(1) sources, and (2) it demonstrates that the arguments of plaintiff, Fedmet Resources Corporation (Fedmet), premised on reweighing the record evidence, ask this Court to discount the deference owed to Commerce under the governing substantial evidence standard of review and in matters particularly within the agency's expertise.

## BACKGROUND

## I.  Commerce's Reliance On (k)(1) Sources In This Case

This case concerns the covered merchandise inquiry of certain refractory bricks imported by Fedmet.  Appx01029-1043; *Certain Magnesia Carbon Bricks From the People's Republic of China*, 88 Fed. Reg. 28,495 (Dep't of Commerce May 4, 2023) (final deter. covered merchandise inquiry).

In its final determination, Commerce first examined the scope language of the orders at issue and the description of Fedmet's bricks.

Appx01030-1031 (citing 19 C.F.R. § 351.225(k)(1) (2021)).  No party

argued that the plain language of the scope exclusively answered the

scope question at issue.  Under the 2021 scope regulations, Commerce

possesses the discretion to consider (k)(1) sources — that is, the

description of the merchandise contained in the petition; the records

from the investigation; and relevant prior determinations of Commerce

(including prior scope determinations) and the U.S. International Trade

Commission (ITC) — when analyzing the plain language of the scope of

the orders.  19 C.F.R. § 351.225(k)(1)(i) (2021).  In determining whether

Fedmet's imported bricks reflect subject magnesia carbon bricks or non-

subject magnesia alumina carbon (MAC) bricks, Commerce relied on

(k)(1) sources — in particular, its prior scope rulings.  Appx01033-1036;

*see also* 19 C.F.R. § 351.227(f); 19 C.F.R. § 351.225 (2021).  Specifically,

Commerce considered the Fedmet Ruling and the S&S Refractories

Ruling to determine whether Fedmet's refractory bricks containing

certain threshold amounts of alumina constitute non-subject

merchandise.  Appx01033-1036.  Fedmet placed the S&S Refractories

Ruling on the record to support its argument that its bricks should be

excluded from the scope of the orders.  Appx02090-2091.

The Fedmet Ruling explained that, based on (k)(1) sources, Fedmet's MAC bricks containing "approximately 8 to 15 percent aluminum oxide (chemical formula Al2O3), more commonly known as alumina" were non-subject merchandise by virtue of the alumina content in the bricks.  Appx01031.  Years later, relying on the Fedmet Ruling's exclusion of MAC bricks from the orders, the S&S Refractories Ruling found that bricks were outside the scope of the orders if they contained at least five percent added alumina.  *Id.*  Further, at the request of parties in the S&S Refractories scope proceeding, Commerce considered whether XRD testing, or an alternate "wet chemistry" testing methodology, was appropriate for determining alumina levels. Appx2134-2135.  Commerce determined that XRD testing in China prior to export to the United States would constitute a reliable means of determining the alumina content of the merchandise and, in turn, whether the merchandise was covered by the orders.  Appx02135; Appx01034.  Commerce also found that other testing methodologies caused distortions in the reported alumina content in the tested merchandise due to the creation of alumina through oxidation during the testing process.  Appx01034; Appx02032-02033.  Unlike the other

testing methodologies, Commerce found that XRD testing is a "a non-destructive testing methodology that both parties acknowledge can differentiate pre-existing aluminum metal from alumina so that the actual 'added' alumina content can be measured." Appx2033.

Relying on both the Fedmet Ruling and the S&S Refractories Ruling, Commerce determined that record evidence supported a finding that certain Fedmet bricks were covered by the scope of the orders. Appx01042-01043. Before this Court, Fedmet argued in favor of an isolated analysis under the Fedmet Ruling without meaningful consideration of the S&S Refractories Ruling. *See* Pl. Br. at 25-38, ECF No. 34.

## II.   The *Saha Thai* Decision's Analysis Of Commerce's Reliance On (k)(1) Sources

In the underlying scope ruling in *Saha Thai*, Commerce relied on the plain language of the scope of the order and the sources listed in 19 C.F.R. § 351.225(k)(1)(2020) to determine that Saha's dual-stenciled pipe was covered by the scope of the order on circular welded carbon steel pipes and tubes from Thailand. *Saha Thai Steel Pipe Pub. Co. v. United States*, 547 F. Supp. 3d 1278, 1281 (Ct. Int'l Trade 2021). After Saha challenged Commerce's determination, this Court held that

Commerce had unlawfully expanded the scope of the order and that a review of the (k)(1) sources did not support Commerce's ruling that the dual-stenciled pipe was included by the scope of the order. *Id.*

The Federal Circuit reversed the Court's judgment, holding that Commerce's scope ruling was reasonable and supported by substantial evidence. *Saha Thai*, 101 F.4th at 1331. In particular, the Federal Circuit affirmed Commerce's finding that the scope language covers the merchandise at issue and that the (k)(1) sources support Commerce's interpretation. *Id.* at 1327-28. In so holding, the Federal Circuit upheld Commerce's consideration of (k)(1) sources even though finding that the scope language covers Saha's dual-stenciled pipe. *Id.*

In holding that the (k)(1) sources supported Commerce's reasonable interpretation of the scope, the Federal Circuit found that this Court's "contrary conclusion . . . lacked support in the record and failed to give sufficient deference to Commerce under the substantial evidence standard of review and in matters 'particularly within {Commerce's} expertise.'" *Id.* at 1331 (quoting *King Supply Co. v. United States*, 674 F.3d 1343, 1348 (Fed. Cir. 2012)).

6

<u>ARGUMENT</u>

I.   <u>*Saha Thai* Is Relevant To This Case</u>

As demonstrated below, the *Saha Thai* decision is relevant to this case for two reasons.  First, *Saha Thai* supports sustaining Commerce's determination that certain Fedmet bricks constitute in-scope merchandise because the Federal Circuit's decision recognizes the agency's discretion to consider (k)(1) sources.  Second, *Saha Thai* demonstrates that Fedmet's arguments, which are premised on reweighing the record evidence, ask this Court to discount the deference owed to Commerce under the governing substantial evidence standard of review and in matters particularly within the agency's expertise.

> **A.   Although Decided Under The 2020 Version Of The Scope Regulations, *Saha Thai* Is Relevant Because The Federal Circuit Addressed Its Interpretation Of The Current Scope Regulation At Issue In This Case**

The domestic parties in *Saha Thai* filed a scope ruling request for the products at issue in January 2019 and Commerce issued its scope ruling in June 2020.  *Saha Thai*, 101 F.4th at 1318-19.  In 2021, Commerce revised its regulations governing scope proceedings.  *See id.* at 1323, n.14 ("In 2021, Commerce amended various sections of its regulations . . ., including the regulations on scope rulings.").  Thus,

7

Commerce's pre-2021 regulations applied to the products at issue in

*Saha Thai*. *See id.* at 1320 n.10 ("Because the 2020 version {of the

regulations} governs at {the} time relevant to this case, parties cite to

this version and we do the same.").

Understanding the relevance of *Saha Thai* to this case requires a

brief discussion of Commerce's revisions to 19 C.F.R. § 351.225(k).  In

2020, at the time of the issuance of Commerce's scope ruling in *Saha

Thai*, section 351.225(k) stated as follows:

> in considering whether a particular product is
> included within the scope of an order or a
> suspended investigation, {Commerce} *will take
> into account* the following:
>
> > (1) The descriptions of the merchandise
> > contained in the petition, the initial
> > investigation, and the determinations of
> > {Commerce} (including prior scope
> > determinations) and the {ITC}.

*Saha Thai*, 101 F.4th at 1323 (quoting 19 C.F.R. § 351.225(k) (2020)).

In *Saha Thai*, the Federal Circuit clarified an issue we raised in

our briefing in which we stated that "Commerce modified 19 C.F.R.

§ 351.225(k)(1)(i) in 2021 due to the United States Court of Appeals'

differing views on 'whether the sources under the current

§ 351.225(k)(1) are used to interpret the 'plain meaning' of the text of

8

the scope, or whether the plain meaning analysis comes first, and only once a determination on the plain meaning is determined, then the current § 351.225(k)(1) sources are considered.'" Def. Br. at 5 (quoting *Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,323 (Dep't of Commerce Sept. 20, 2021) (citing cases)), ECF No. 40. In *Saha Thai*, the Federal Circuit disagreed with a similar observation made by this Court concerning Federal Circuit case law related to analyzing (k)(1) sources.

Specifically, in the *Saha Thai* decision, the Federal Circuit addressed this Court's "observation that {the Federal Circuit} 'arguably' provided two 'distinct methods' to determine 'whether a scope's language is sufficiently ambiguous that Commerce must resort to additional documents' to interpret an antidumping duty order.'" 101 F.4th at 1326 (quoting *Saha I*, 547 F. Supp. 3d at 1289) (first citing *OMG, Inc. v. United States*, 972 F.3d 1358, 1363 (Fed. Cir. 2020); and then citing *Meridian II*, 890 F.3d at 1277)). The Federal Circuit explained this Court's reasoning that, under the *OMG* approach, "the first step in a scope ruling proceeding is to determine whether the

9

governing language is in fact ambiguous;" and Commerce considers the (k)(1) materials if "the language is ambiguous." *Id.* (quoting *Saha I*, 547 F. Supp. 3d at 1289-90). The Federal Circuit further explained that this Court deemed the second approach to be the *Meridian* approach whereby, "when 'reviewing the plain language of a duty order' to determine whether it is ambiguous, Commerce must consider the (k)(1) materials." *Id.* (quoting *Saha I*, 547 F. Supp. 3d at 1290). The Federal Circuit disagreed with this Court's interpretation, holding that "there is only one framework which, as both the *OMG* and *Meridian* decisions stress, *begins* with a review of the scope language *itself*." *Id.* (citing *OMG*, 972 F.3d at 1363; *Meridian II*, 890 F.3d at 1277; *Meridian I*, 851 F.3d at 1381). The Federal Circuit added that, "if the scope cannot be clearly and dispositively discerned based on the scope language itself, Commerce must turn to the aid of the (k)(1) and, if still necessary, (k)(2) sources." *Id.* (citing *OMG*, 972 F.3d at 1363; *Meridian I*, 851 F.3d at 1382).

Against this backdrop, the Federal Circuit in *Saha Thai* clarified that, even though the plain language answered the scope question related to Saha's dual-stenciled pipe, Commerce nonetheless could

10

consider (k)(1) sources, particularly in a case such as that one in which

"a scope ruling is requested, subsequently disputed, and eventually

appealed to this court." *Id.* at 1327; *see also id.* at 1327-31.

The Federal Circuit also considered the 2021 version of the

regulations, which states as follows:

> (1) In determining whether a product is covered
> by the scope of the order at issue, {Commerce}
> will consider the language of the scope and may
> make its determination on this basis alone if the
> language of the scope, including the descriptions
> of merchandise expressly excluded from the
> scope, is dispositive.
>
>> (i) The following primary interpretive sources
>> *may be taken into account* under paragraph
>> (k)(1) introductory text of this section, *at the
>> discretion of {Commerce}*… {primary
>> interpretive sources}.

*Id.* at 1323 n.14 (quoting 19 C.F.R. § 351.225(k)(1) (2021) (emphasis

added)).  The Federal Circuit explained that the pre-2021 regulations

"*permit*, if not mandate" consideration of (k)(1) sources, while the 2021

regulations clarify that Commerce may consider (k)(1) sources "'at {its}

discretion,' if it determines the scope language itself does not clearly

and sufficiently answer the scope question." *Id.* at 1326 (quoting 19

C.F.R. § 351.225(k)(1)(i)).  The Federal Circuit also explained that

Commerce's 2021 regulations were consistent with the Federal Circuit's understanding of its own precedent. *See id.* ("We note that in Commerce's recent effort to clarify the regulatory framework, Commerce expressed a similar understanding based on its practice, as now codified in the revised regulations.") (citation omitted).

Thus, the Federal Circuit's interpretation of the 2021 regulations recognizes Commerce's discretion to rely on (k)(1) sources.

## B.    It Is Undisputed In This Case That Commerce's Scope Analysis Required Consideration Of (k)(1) Sources

In *Saha Thai*, one of the issues was whether Commerce lawfully relied on (k)(1) sources when the scope language answered the question. *Saha Thai*, 101 F.4th at 1325-26.  In this case, no party argues that the plain language of the scope exclusively controls the issue of whether Fedmet's bricks come within the scope of the orders on MCBs from China or that Commerce should not have relied on (k)(1) sources. *See* Pl. Br. at 35 ("One of the (k)(1) sources, the Fedmet scope ruling, is specific to Fedmet's MAC bricks, was the first scope ruling considered by Commerce, and was issued by Commerce pursuant to a mandate by the CAFC."), ECF No. 34.

As Commerce explained in the underlying *Fedmet* determination,

the exclusion for the Fedmet MAC bricks developed out of a prior scope ruling and remand issued pursuant to a decision by the Federal Circuit. Appx01009; *see also Fedmet Res. Corp. v. United States*, 755 F.3d 912 (Fed. Cir. 2014). As the Federal Circuit explained in Fedmet, Commerce first found that the plain language of the orders was ambiguous regarding whether "MCBs with alumina" were covered. *Fedmet Res.*, 755 F.3d at 917, n.4 ("Fedmet did not challenge Commerce's conclusion that the scope language in the orders alone is not dispositive."). The Federal Circuit did not question this finding. *Id.* at 921 ("As a result, the question of whether Fedmet's MAC bricks are covered by the orders must be resolved by examining the (k)(1) sources, which include . . . [the] petition, and we may only consider the (k)(2) factors if the (k)(1) sources are not dispositive."). Further, the Federal Circuit found that "the (k)(1) sources are dispositive of the question presented by Fedmet's scope ruling request." *Id.* at 922.

Thus, unlike *Saha Thai*, in this case, the Federal Circuit has already answered the threshold question as to whether consideration of (k)(1) sources are necessary to determine what constitutes a MAC brick. Accordingly, the issue before the Court is not whether it was

13

permissible for Commerce to consider (k)(1) sources.

## C.   *Saha Thai* Supports Commerce's Consideration Of (k)(1) Sources To Determine Whether Fedmet's Bricks Are In-Scope Merchandise

Even though *Saha Thai* was decided under the pre-2021 version of the regulations, the Federal Circuit's analysis of the current regulations supports Commerce's scope determination.

First, *Saha Thai* undermines Fedmet's contention that Commerce unlawfully relied on the S&S Refractories Ruling in conducting its analysis of (k)(1) sources rather than confining its analysis to the Fedmet Ruling. *See* Pl. Br. at 25-38. In *Saha Thai*, the Federal Circuit did not mandate *which* (k)(1) sources Commerce is permitted to consider or otherwise circumscribe its discretion. *See* 101 F.4th at 1324-25 (including "{i}n the (k)(1) materials . . . the determinations of {Commerce} (including prior scope determinations)"). Indeed, had *Saha Thai* done so, the decision would have been inconsistent with Federal Circuit precedent recognizing the relevance of "prior scope rulings interpreting the *same* antidumping order{}" as (k)(1) sources. *Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1384 (Fed. Cir. 2017) (emphasis in the original, citation omitted).

14

Related to Commerce's 2021 regulations, the *Saha Thai* decision emphasized Commerce's "discretion" to consider its "primary interpretive sources" "if it determines the scope language itself does not clearly and sufficiently answer the scope question." 101 F.4th at 1326 (citing 19 C.F.R. § 351.225(k)(1)(i) (2021)). Specifically, the Federal Circuit acknowledged the need for Commerce to write scope language in general terms, making it *likely* that Commerce will consider its (k)(1) primary interpretive sources to assist in understanding the meaning of the scope language. *Id.* at 1326-27 (citing *Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. at 52,323) (noting that "in the majority of scope inquiries, it is likely that the current (k)(1) sources would be considered" in reaching a scope ruling)). The Federal Circuit also recognized that, "{w}hile these materials do not substitute for the scope language, they reflect the historical context and may provide 'valuable guidance' for the interpretation of the order." *Id.* at 1325.

In this case, Commerce exercised its discretion in finding that the S&S Refractories Ruling provides such "valuable guidance" because it is the only ruling in which Commerce considered testing methods.

Specifically, in the S&S Refractories Ruling, Commerce found that, unlike the other testing methodologies on the record, the XRD test could measure added alumina present in the brick through the production process rather than subsequently developed through oxidation during the testing process.  Appx2032-2033.  Because measuring alumina is critical to evaluating whether refractory bricks satisfy the MAC-brick exclusion, Commerce reasonably relied on the S&S Refractories Ruling to evaluate whether Fedmet's bricks satisfy the requisite alumina content upon importation to be classified as a MAC brick.

Under the reasoning in *Saha Thai*, it was lawful for Commerce to exercise its discretion in not confining itself to consideration of only the Fedmet Ruling given that the S&S Refractories Ruling is the only prior scope ruling that addresses testing methods for added alumina.  *See* Appx01033-01036; *see also Saha Thai*, 101 F.4th at 1326 ("The current regulations clarify that the traditional (k)(1) materials are 'primary interpretive sources' that Commerce may consider 'at {its} discretion,' if it determines the scope language itself does not clearly and sufficiently answer the scope question.") (quoting 19 C.F.R. § 351.225(k)(1)(i)).

Moreover, had Commerce failed to consider the S&S Refractories

Ruling, it would have run afoul of the *Saha Thai* Court's holding that Commerce cannot ignore (k)(1) materials relied upon by the parties for their respective interpretations of the scope language. When addressing the domestic producer's claim that Commerce impermissibly relied on (k)(1) sources, the *Saha Thai* Court held that "where, as here, the parties explicitly rely on the (k)(1) materials for their contradictory interpretation of an order, Commerce cannot arbitrarily ignore those arguments and evidence on the record." *Saha Thai*, 101 F.4th at 1326 (citing 19 U.S.C. § 1516a(b)). Thus, the Federal Circuit precluded Commerce from ignoring (k)(1) sources on the record.

In this case, Fedmet seeks to have this Court unlawfully disregard record evidence that Commerce relied on related to (k)(1) sources. Specifically, Fedmet contends that Commerce could consider only one (k)(1) source in isolation — the Fedmet Ruling, and effectively ignore record evidence related to the S&S Refractories Ruling. *See* Pl. Br. at 25-38. But the S&S Refractories Ruling directly addresses relevant legal and factual issues related to testing methodologies when evaluating alumina content under the orders at issue and, thus, is applicable to this proceeding. In asserting that only the Fedmet Ruling

17

controls, Fedmet is seeking to have Commerce ignore record evidence, including Custom and Border Protection's (CBP) testing methodologies and Commerce's analysis of the distortion from certain testing methodologies addressed in the S&S Refractories Ruling. Appx1034. Further, Commerce could not reasonably rely on the Fedmet Ruling regarding an issue — testing methodologies — that the Ruling does not address.

Before the agency, Fedmet advocated for consideration of the S&S Refractories ruling. *See* Appx02090-2091 ("Like the Fedmet Bastion Amended Final Scope Ruling, {Commerce's} S&S Refractories scope determination did not purport to define a single alumina content level or required testing methodology applicable to all imported MAC bricks, nor did it purport to alter or amend the express exclusion of all MAC bricks from the scope of the orders."); *see also* Appx02097, Appx02130-02136. Before this Court, Fedmet asks for consideration of only *certain* (k)(1) sources. Pl. Br. at 25-38. But the *Saha Thai* decision places no limitations on the (k)(1) sources that Commerce can lawfully consider. *See Saha Thai*, 101 F.4th at 1325-26. Because the S&S Refractories Ruling is the only prior scope ruling that addresses testing methods and

the Ruling is on the record, it was lawful for Commerce to base its

determination on this ruling.  Further, Commerce's consideration of all

(k)(1) sources on the record is consistent with the *Saha Thai* decision's

holding that Commerce must respond to all arguments and evidence on

the record arising out of its (k)(1) sources.  *Id.* at 1326.

### D. *Saha Thai* Underscores That Deference Should Be Accorded To Commerce's Weighing Of The Record Evidence And To Its Expertise In Scope Proceedings

*Saha Thai* is also relevant because it underscores the deference

this Court must give to Commerce's weighing of the record evidence and

to matters within Commerce's expertise.

In holding that the (k)(1) sources supported Commerce's

reasonable interpretation of the scope, the Federal Circuit found that

this Court's "contrary conclusion . . . lacked support in the record and

failed to give sufficient deference to Commerce under the substantial

evidence standard of review and in matters 'particularly within

{Commerce's} expertise{ }'" such as "the meaning and scope of

antidumping duty orders." *Saha Thai*, 101 F.4th at 1322, 1331 (citing

*King Supply Co.*, 674 F.3d at 1348).  The Federal Circuit explained that,

"{e}ven if two inconsistent yet reasonable conclusions could have been

drawn from the record, the Court of International Trade cannot substitute its own judgment for that of Commerce." *Id.* at 1331 (citing *King Supply*, 674 F.3d at 1348, 1351); *Mitsubishi Heavy Indus., Ltd. v. United States*, 275 F.3d 1056, 1060 (Fed. Cir. 2001)).

In this case, Fedmet challenges how Commerce weighed the record evidence related to the S&S Refractories Ruling and the evidence on the record related to the XRD testing methodology. *See, e.g.*, Pl. Br. at 34-35 ("Even if Commerce were permitted to *consider* the S&S Refractories scope ruling in the covered merchandise inquiry when reviewing (k)(1) sources, *considering* the S&S Refractories scope ruling is not the same as giving it *precedence* over Commerce's previous scope ruling on the same Fedmet products."); *see also id.* at 38-51 (contending that Commerce's scope ruling is not supported by substantial evidence because the agency unlawfully relied on S&S Refractories to mandate a testing methodology based on the XRD test, and Commerce failed to consider evidence undermining the reliability of the XRD test). Fedmet's differing interpretation of the record evidence and its preferred, isolated application of certain (k)(1) sources does not render Commerce's determination unsupported by substantial evidence. *Saha*

*Thai* found arguments similar to Fedmet's arguments in this case to be inconsistent with the deference that the Federal Circuit and this Court are required to afford to Commerce under the substantial evidence standard of review.

<u>CONCLUSION</u>

For these reasons, and those presented in our Rule 56.2 response brief, this Court should deny the plaintiff's motion for judgment on the administrative record, sustain Commerce's determination in its entirety, and enter judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. McCARTHY
Director

<u>/s/ Reginald T. Blades, Jr.</u>
REGINALD T. BLADES, JR.
Assistant Director

21

OF COUNSEL:

/s/ Antonia R. Soares

K. GARRETT KAYS
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
   Enforcement and Compliance

ANTONIA R. SOARES
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
(202) 305-7405 (Telephone)
Antonia.Soares@usdoj.gov

June 28, 2024

Attorneys for Defendant

<u>**CERTIFICATE OF COMPLIANCE**</u>

I hereby certify that this brief complies with the word limitation set forth in the Court's June 7, 2024 Order and contains 3,775 words, excluding the parts of the brief exempted from the word limitation under the Court of International Trade Standard Chambers Procedures § 2(B)(1). In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

<u>/s/ Antonia R. Soares</u>
ANTONIA R. SOARES

<u>CERTIFICATE OF SERVICE</u>

I certify under penalty of perjury that on this 28th day of June

2024, a copy of the foregoing "DEFENDANT'S SUPPLEMENTAL

BRIEF IN RESPONSE TO THE COURT'S JUNE 7, 2024 ORDER" was

filed electronically.  I understand that notice of this filing will be sent to

all parties by operation of the Court's electronic filing system.  Parties

may access this filing through the Court's system.

<u>/s/ Antonia R. Soares</u>
ANTONIA R. SOARES