**Slip Op. 24-136**

**UNITED STATES
COURT OF INTERNATIONAL TRADE**

**Court No. 23-00117**

FEDMET RESOURCES CORPORATION,

*Plaintiff*,

v.

UNITED STATES,

*Defendant*,

and

MAGNESIA CARBON BRICKS
FAIR TRADE COMMITTEE,

*Defendant-Intervenor*.

Before: M. Miller Baker, Judge

**OPINION**

[The court remands to Commerce for further proceedings.]

Dated: December 12, 2024

*R. Will Planert*, *et al.*, Morris, Manning & Martin LLP, Washington, DC, on the briefs for Plaintiff.

*Brian M. Boynton*, Principal Deputy Assistant Attorney General; *Patricia M. McCarthy*, Director; *Reginald T. Blades*, Assistant Director; and *Antonia R. Soares*, Senior Trial Counsel, Commercial Litigation

Branch, Civil Division, U.S. Department of Justice, Washington, DC, on the briefs for Defendant. Of counsel on the briefs was *K. Garrett Kays*, Attorney, Office of Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, Washington, DC.

*J. Michael Taylor* and *Daniel L. Schneiderman*, King & Spalding LLP, Washington, DC, on the briefs for Defendant-Intervenor.

*Baker*, Judge: An importer of refractory bricks—heat-resistant masonry used to line blast furnace walls—challenges the Department of Commerce's determination that certain of its blocks fall within antidumping and countervailing duty orders. The court holds that the agency erred as a matter of law and remands for reconsideration under the correct legal standard.

I

The Enforce and Protect Act (EAPA), 19 U.S.C. § 1517, directs U.S. Customs and Border Protection to open an investigation after receiving an allegation that "reasonably suggests" an importer has "eva[ded]" an antidumping or countervailing duty order. *See id.* § 1517(a)(3), (b)(1)–(2). The statute defines "evasion" as the entry of goods through any material false statement or omission that reduces or avoids such duties. *See id.* § 1517(a)(5)(A).

If Customs "is unable to determine whether the merchandise at issue is covered" by the order, it must refer that question to Commerce. *Id.* § 1517(b)(4)(A)(i). The latter, in turn, "shall" make such a determination and communicate the results to the former. *Id.* § 1517(b)(4)(B). As relevant here, the Department may conduct this inquiry by applying the same regime it uses in making a scope ruling. *See* 19 C.F.R. § 351.227(f).

What is that? "Given the realities in the marketplace and everchanging varieties of merchandise, questions frequently arise as to whether a particular product is subject to or falls within the scope" of an antidumping or countervailing duty order. *Saha Thai Steel Pipe Pub. Co. v. United States*, 101 F.4th 1310, 1315 (Fed. Cir. 2024) (citing 19 C.F.R. § 351.225(a)). By regulation—the statute provides no such mechanism—a producer, importer, or other interested party uncertain whether an order covers a commodity may ask Commerce for a ruling to clarify the decree's terms. *See* 19 C.F.R. § 351.225(c)(1).[1]

Upon receiving such a request, the Department will open a "scope inquiry." 19 C.F.R. § 351.225(a).[2] If it

---

[1] This device is roughly analogous to the procedure by which a party uncertain of its rights or obligations may seek a declaratory judgment in federal court. *See* 28 U.S.C. § 2201.

[2] It may also self-initiate such an inquiry. *See id.* § 351.225(b).

Ct. No. 23-00117 Page 4

finds that the order's relevant language, "including the descriptions of merchandise expressly excluded . . . , is dispositive," it "may make its determination" based on that wording alone. *Id.* § 351.225(k)(1). In the agency's "discretion," it "may" also consider four "primary interpretive sources." *Id.* § 351.225(k)(1)(i). Those are "descriptions" of the product in the petition and investigation giving rise to the order, *see id.* § 351.225(k)(1)(i)(A), (B); its "previous or concurrent determinations . . . including prior scope rulings" bearing on the order or "other orders with same or similar language," *id.* § 351.225(k)(1)(i)(C); and International Trade Commission decisions "pertaining to the order," *id.* § 351.225(k)(1)(i)(D).[3]

---

[3] In fixing the scope of an order, Commerce "may also consider [certain] secondary interpretive sources"—materials not identified in subparagraph (k)(1)(i) of the regulation. *Id.* § 351.225(k)(1)(ii). "[I]n the event of a conflict between these secondary interpretive sources and the primary interpretive sources under [sub]paragraph (k)(1)(i)," the latter "will normally govern in determining whether a product is covered by the scope of the order at issue." *Id.* If the Department determines that the sources under paragraph (k)(1) "are not dispositive," it must consider various enumerated factors. *Id.* § 351.225(k)(2)(i)(A)–(E). Those criteria are in turn subject to their own hierarchy. *See id.* § 351.225(k)(2)(ii).

II

A

In 2009, Resco Products, Inc., a domestic producer, petitioned Commerce to open antidumping and countervailing duty investigations of "imports of certain magnesia carbon bricks" (MCBs) from China and Mexico. *Fedmet Res. Corp. v. United States*, 755 F.3d 912, 914 (Fed. Cir. 2014) (*Fedmet I*). In due course, the Department imposed such duties. *See* 75 Fed. Reg. 57,257 (antidumping); 75 Fed. Reg. 57,442 (countervailing) (collectively, the orders).

Fedmet, a "domestic importer of refractory bricks and other products used in the steelmaking industry," *Fedmet I*, 755 F.3d at 916, then requested a scope ruling that the orders did not cover its magnesia alumina carbon bricks (MAC bricks). The company contended that "significant amounts" of alumina in those products—"8 to 15 percent"—"result in 'distinct properties'" that distinguish them from in-scope MCBs. *Id.* at 916–17.

After agency proceedings and litigation in this court in which Resco participated, the Federal Circuit agreed with Fedmet. *See id.* at 919–23. The court of appeals held that the sources identified in what is now 19 C.F.R. § 351.225(k)(1)(i)[4] "unequivocally confirm that [the importer's] MAC bricks are not within the

---

[4] Commerce amended the regulation in 2021.

Ct. No. 23-00117                                                Page 6

scope of the orders." *Fedmet I*, 755 F.3d at 919. It reasoned that the petitioner repeatedly "disclaim[ed] coverage of all MAC bricks in general." *Id*. Moreover, both Commerce and the Commission reiterated "that the underlying investigations did not extend to MAC bricks." *Id*.

In response to the contention that "the (k)(1)[(i)] sources identify no 'cut-off point' at which addition of alumina to an MCB transforms it into a MAC brick," *id.* at 921 (emphasis added), the Federal Circuit reckoned that

> [t]he public—including domestic importers like Fedmet—is entitled to rely on the multiple statements in the (k)(1)[(i)] sources disclaiming coverage of MAC bricks. To the extent that MCBs and MAC bricks do in fact overlap to some degree, the overlap was surrendered by Resco's failure to provide a technical definition or "cut[-]off point" when asked to be more specific.

*Id*. Doubling down on this theme, the court of appeals emphasized that "the (k)(1)[(i)] sources do not mention, much less make a distinction, between so-called 'low-alumina' and 'high-alumina' bricks." *Id*. at 922. Instead, those sources made "clear statements that *all* MAC bricks were excluded from the scope of the underlying investigations." *Id*. (emphasis in original). This is true "[e]ven if, in fact, MCBs do overlap to some extent with MAC bricks," as the orders "are limited to only 'certain'" of the former. *Id*. at 922 n.7.

On remand, Commerce determined that the company's MAC brick was "8 to 15 percent . . . alumina" and thus out-of-scope. Appx02125. It limited its ruling to Fedmet's Bastion brand and stated that it did not intend to "address all" products characterized as MAC bricks because on the record before it "there [was] no apparent industry standard" for defining them. Appx02125–02126.

That victory only bought Fedmet an armistice, rather than peace. In 2019, it found itself accused of evasion by the Magnesia Carbon Bricks Fair Trade Committee. This ad hoc group of domestic producers (including Resco) alleged that the importer unlawfully characterized MCBs from China as MAC bricks. Appx01048–01049. Customs launched an investigation and found Fedmet guilty as charged. Appx01049.

The company challenged that finding in a new round of litigation in this court. *See Fedmet Res. Corp. v. United States*, Ct. No. 21-248, ECF 6 (complaint). The government beat a hasty retreat and sought voluntary remand, which the court granted. *See* Case 21-248, ECF 38. When the time arrived for Customs to file its redetermination, the government asked for a stay. *See* Case 21-248, ECF 39. It explained that the agency could not determine whether the orders covered Fedmet's bricks and intended to punt the question to Commerce. *Id.*

Customs then did just that.[5] Appx01048–01053. Its referral reported test results for eleven Fedmet brick samples "from four different [agency] labs using multiple testing methods." ECF 41, at 10; *see also* Appx01050 (test results). The Department, in turn, opened a scope inquiry. *See* 87 Fed. Reg. 43,238.

In that proceeding, Commerce explained that "[a]lumina *is* the defining component" of MAC bricks. Appx01014 (emphasis added). It observed that on two prior occasions it had "consider[ed] the alumina content necessary" to constitute such a product. Appx01015. On remand from *Fedmet I* in 2015, it found that the Bastion brand contained at least "eight percent alumina" and was therefore an out-of-scope MAC brick. *Id.* And two years later, in its *S&S Refractories* ruling,[6] it similarly concluded that a brick with "at least five percent added alumina" was also out-of-scope. Appx01015. Taken together, the two decisions "established that refractory bricks containing *a*

---

[5] The court stayed Case 21-248 pending Commerce's resolution of that referral. *See* ECF 44.

[6] *S&S* was a scope proceeding that concluded in mid-2017. *See* Memorandum from Edward C. Yang to Gary Taverman, *Certain Magnesia Carbon Bricks from the People's Republic of China and Mexico: Final Scope Ruling—S&S Refractories*, Agency Nos. A-201-837, A-570-954, C-570-955 (Dep't Commerce June 7, 2017). Excerpts from that ruling appear at Appx02032–02033.

*threshold amount* of alumina" (five percent) are MAC bricks. *Id*. (emphasis added).

The Department then added a qualifier: "[T]he alumina content requirement is based on the state of the brick upon importation." *Id*. *S&S* "explicitly stated that the alumina must be 'added,' *i.e.*, deliberately present in the brick through the production process (rather than subsequently developed through oxidation in the testing process)." *Id*. This distinction is "critical[ ]," *id*., because "[r]efractory bricks sometimes contain small amounts of aluminum . . . as an antioxidant, which can be converted to alumina . . . in the course of testing," Appx01014 n.26 (quoting Fedmet's comments). Alumina resulting from testing "does not impart the same characteristics or performance to [a] brick[ ]" and thus could not be "considered part of [its] chemical make-up." Appx01015. Thus, it is vital "to determine the content of alumina as it exists in the brick as it was sold and imported, *i.e.*, prior to any oxidation of aluminum caused by exposure during testing." *Id*.

Having so found, Commerce then considered whether the eleven brick samples discussed in the four reports Customs provided "have the threshold amount of alumina to be considered outside the scope of the orders"—five percent. Appx01016. Of those, the former found one definitive: Report 0826, which used x-ray diffraction (XRD) testing on two samples. Those tests showed they contained some alumina, but less than five percent. *See* Appx01017–01018. The Department

thus found those bricks were *in*-scope. Appx01018. "Because this test provides the alumina content . . . as it exists" at the time of "sale and importation," the report "contain[ed] sufficient information" to allow a finding "as to whether [the samples] constitute MAC bricks." *Id.*

Commerce found the other three test results indeterminate. Appx01018–01019. Report 0430 revealed that all four samples were more than five percent alumina. *See* Appx01050. The Department discounted those results, however, explaining that they derived not from a "direct test" for that substance, but from a post-hoc assumption that such content was the residual after subtracting the measured levels of magnesia and carbon from 100 percent. *See* Appx01018.[7] Because the samples presumably also contained *other* substances beyond the trinity of magnesia, carbon, and alumina, Customs needed to address whether it is "appropriate to attribute the entire content of the brick that is not either magnesia or carbon to alumina." Appx01018.

The Department observed that although the alumina content for the samples in Reports 1030 and 1071 exceeded five percent, *see* Appx01050, those results derived from x-ray fluorescence (XRF) testing. Appx01018. That procedure "cause[s] oxidization of

---

[7] According to Fedmet, these results derived from XRD testing. *See* ECF 37-1, at 16–17.

the . . . samples," Appx01016, meaning it converts aluminum to alumina, Appx01015 n.30. Because that method did not test for the presence of alumina at the time of importation, but rather changed the bricks' nature, Commerce would not rely on it to determine whether the orders covered the five samples in those reports. Appx01018.

Both Reports 1030 and 1071 also included the results of XRD testing approved by the Department, but those tests only identified "the *presence* of certain compounds and elements" within the samples, including alumina. *Id.* (emphasis added); *see also* Appx01111 (Report 1030: "The samples displayed reliable peaks for Magnesium Oxide, *Aluminum Oxide* [alumina], and Carbon.") (emphasis added); Appx01170 (Report 1071, same). They "did not include figures relating to the *proportion*" of those substances. Appx01018 (emphasis in original).

In short, Commerce found that the orders covered two of the eleven brick samples because although they contained added alumina, they didn't satisfy the five-percent standard announced in *S&S*. *Id.* For the other nine, the test results provided by Customs were "indeterminate." Appx01019. And while the former agency disclaimed "direct[ing]" the latter "to use a particular testing methodology for determining alumina content," *id.*, it noted "that the test must reasonably reflect the composition of the brick as sold/imported," *id.* At any rate, "[w]hether certain tests or estimation

strategies can provide accurate results is an assessment that [Customs] is best positioned to make." *Id*. As to those nine samples, then, the Department punted the scope question back to Customs.[8]

B

Kicking off yet another round of litigation (the third, for those keeping count), Fedmet filed this suit under 19 U.S.C. §§ 1516a(a)(2)(A)(ii) and (a)(2)(B)(vi) to challenge the Department's final determination in the covered-merchandise referral. ECF 18, ¶ 2. The Committee intervened in support of the government.

---

[8] After receiving Commerce's response, Customs filed its remand redetermination in the related EAPA action. *See* Case 21-248, ECF 52. The latter agency stated that it "conducted additional laboratory testing" on the nine refractory brick samples that the former found indeterminate. *Id*. at 9. That (XRD) testing showed all contained alumina. *Id*. at 19. Applying the Department's five-percent standard, Customs decided that seven of the nine were in-scope because their alumina content did not meet that threshold. *Id*. The other two exceeded it and thus were out-of-scope. *Id*. Based on those findings, the latter agency concluded that Fedmet "entered covered merchandise . . . through evasion." *Id*. The company thus had the "burden . . . to show" by XRD testing or any other method able to measure "alumina content at the time of importation . . . that its entries contain non-subject MAC bricks with the chemical composition similar" to the two samples that passed muster. *Id*.

The parties to Case 21-248 then requested, and the court granted, a stay of that proceeding pending "a final and conclusive disposition" of this case. ECF 61.

ECF 25. The importer moved for judgment on the agency record. ECF 37; *see also* USCIT R. 56.2. The government (ECF 41) and the Committee (ECF 42) opposed, and Fedmet replied (ECF 46).

In § 1516a(a)(2) actions, "[t]he court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). The court has jurisdiction under 28 U.S.C. § 1581(c).

### III

In effect, Fedmet asserts two main arguments. First, Commerce applied the wrong legal standard and in so doing unlawfully expanded the orders' scope. ECF 37-1, at 25–38. Second, and in any event, substantial evidence does not support the Department's application of that standard here. *Id.* at 38–51. The court considers these in turn.

### A

Fedmet attacks Commerce's requirement—announced in *S&S*—that to fall outside the orders, a refractory brick must contain at least five percent added alumina. *See id.* at 28–29. The company contends that the Federal Circuit "already rejected" such a demarcation based on Resco's "fail[ure] to provide a technical definition or 'cut[-]off point' when asked to be more specific." *Id.* at 29 (quoting *Fedmet I*, 755 F.3d at 921).

Observing that the Department cannot enlarge the scope of antidumping and countervailing duty orders, *see id.* (citing *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1095 (Fed. Cir. 2002)), the importer argues that the agency's five-percent standard is unlawful under *Fedmet I*, *id*.

The government's response is to try to change the subject. *See* ECF 41, at 22–24. It points to 19 C.F.R. § 351.225(k)(1)(i)(C), which authorizes the Department to consider "prior scope rulings" bearing on an antidumping or countervailing duty order. Here, that includes the agency's earlier determinations in the *Fedmet I* remand proceeding and in *S&S*, but the government's argument begs whether those decisions are consistent with the Federal Circuit's opinion.

For its part, the Committee dares to confront *Fedmet I*. It argues that the court of appeals neither addressed "what it is to be a 'MAC brick' in the first place," ECF 42, at 7, nor "opine[d] upon where a line might be drawn in terms of alumina content," *id*.

Those points are correct, but they're also irrelevant. The issue before the Federal Circuit was not what *is* a MAC brick, but whether the *orders covered* the importer's product, which contained added alumina. As to *that* question, *Fedmet I*'s "reasoning—its *ratio decidendi*" that gives it "life and effect in the disposition of future cases," *AM/NS Calvert LLC v. United States*, 654 F. Supp. 3d 1324, 1345 (CIT 2023) (quoting *Ramos v. Louisiana*, 590 U.S. 83, 104 (2020))—is dispositive.

It teaches that the addition of *any* alumina to an MCB takes it outside the orders, which "are limited to only 'certain' MCBs." *Fedmet I*, 755 F.3d at 922 n.7. That's because the relevant sources "*do not mention, much less make a distinction*[ ] *between*[,] *so-called 'low-alumina' and 'high-alumina' bricks.*" *Id.* at 922 (emphasis added). And while "MCBs and MAC bricks [may] in fact overlap to some degree, *the overlap was surrendered by Resco's failure to provide a technical definition or 'cut[-]off point' when asked to be more specific.*" *Id.* at 921 (emphasis added).

Under this rationale, which binds Commerce as much as this court, the agency had no power on remand in *Fedmet I* or in *S&S* to expand the scope of the orders to include *low*-alumina bricks—for better or worse, they're not covered, whether characterized as MCBs or MAC bricks.[9] "No cut-off point" for added alumina means *no* cut-off point.

---

[9] The dissent in *Fedmet I* lamented that the "majority leaves the Orders open to manipulation. Rather than paying the antidumping and countervailing duties on MCBs, importers can simply add small amounts of alumina to their products and label them MAC bricks instead of MCBs." 755 F.3d at 925 (Wallach, J.). The Committee echoes that jeremiad. *See* ECF 42, at 7 (noting that under Fedmet's reading of the Federal Circuit's decision, "MCBs containing only trace amounts of alumina" can masquerade as MAC bricks). The panel majority, however, considered and rejected that concern.

Ct. No. 23-00117 Page 16

In sum, the Department erred as a matter of law in imposing its five-percent test. Under *Fedmet I*, the orders do not cover MCBs with *any* added alumina. That mistake, of course, requires a remand. The court nevertheless must now turn to the importer's challenge to the agency's application of its (erroneous) legal standard, as the resolution of that dispute will inform the administrative proceedings to follow.

B

As described above, Customs provided the Department with four reports regarding the alumina content of eleven samples of Fedmet's refractory bricks. Three of them (encompassing seven samples) disclosed the presence of added alumina using the Department's favored XRD test. *See* Appx01111 (Report 1030); Appx01170 (Report 1071); Appx01234, Appx01239–01240 (Report 0826).[10] Under the governing *Fedmet I*

---

[10] Fedmet challenges Commerce's refusal to accept the *XRF* results for the samples in Reports 1030 and 1071, but the Department reasonably explained why it found them distorted. As a matter of common sense, whether an order covers a given product must be determined based on the item as it existed on the date of importation, rather than after some later alteration or modification. It's undisputed here that the XRF test itself creates alumina through oxidation and thereby changes the brick's chemical composition.

In any event, the *XRD* testing approved by Commerce detected—but did not measure in percentage terms—"the *presence* of certain compounds and elements," including

Ct. No. 23-00117 Page 17

standard, those seven samples—even if they are otherwise MCBs—are "not covered by the orders" because they contain added alumina. 755 F.3d at 922.

Although Report 0430 also disclosed the presence of a certain percentage of added alumina, Commerce discounted this finding since it was "not the result of any direct test for" that substance. Appx01018. The Department explained that the estimated percentage might not be correct because it failed to account for other material potentially in the sample. *Id*. Thus, it could not determine "whether the bricks in Report 0430 are covered." *Id*.

Fedmet generally attacks Commerce's exercise of independent judgment in evaluating the test results forwarded by Customs. *See* ECF 37-1, at 45–51. The importer, however, cites no authority for this proposition, and the court is aware of none. In directing the Department to resolve covered merchandise referrals

---

alumina, in those samples. Appx01018 (emphasis in original). Under *Fedmet I*, the relative proportion of alumina in an MCB isn't material because the orders do not cover "low-alumina" bricks.

Moreover, the more recent XRD tests conducted by Customs on redetermination in Case 21-248 confirmed that the samples in Reports 1030 and 1071 contain alumina. *See* note 8. This time, however, as required under Commerce's (erroneous) legal standard, the XRD testing measured the relative proportion of that substance. *See* Case 21-248, ECF 52, at 16.

from Customs, *see* 19 U.S.C. § 1517(b)(4)(B), Congress necessarily delegated to the former authority to review de novo materials received from the latter. And Fedmet has offered no reasons why Commerce's analysis of Report 0430 is deficient on its own terms or otherwise "failed to consider an important aspect of the problem." *Motor Veh. Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

That said, here the Department applied the wrong legal standard—its five-percent alumina test—in evaluating the samples in Report 0430. On this record, it's unclear whether it would have reached the same conclusion if it had used the *Fedmet I* benchmark of any added alumina. It must do so on remand.[11]

\* \* \*

For the reasons explained above, the court remands to Commerce with instructions that it reconsider its decision as to all 11 samples using the *Fedmet I* metric. Under that standard, the orders do not cover MCBs containing *any* added alumina—such products are MAC bricks as far as those orders are concerned.

Dated: December 12, 2024  /s/ *M. Miller Baker*
　　　　New York, NY　　　　Judge

---

[11] Alternatively, in its discretion Commerce may simply instruct Customs to apply the *Fedmet I* standard to the XRD retesting of the samples in Report 0430 described in the latter agency's redetermination. *See* note 8.