Slip Op. 25-136

## UNITED STATES
## COURT OF INTERNATIONAL TRADE

---

### Court No. 23-00117

---

FEDMET RESOURCES CORPORATION,

*Plaintiff*,

v.

UNITED STATES,

*Defendant*,

and

MAGNESIA CARBON BRICKS
FAIR TRADE COMMITTEE,

*Defendant-Intervenor.*

---

Before: M. Miller Baker, Judge

## OPINION

[Sustaining the Department of Commerce's redetermination made under protest in a covered-merchandise inquiry.]

Dated: October 9, 2025

*J. Michael Taylor* and *Daniel L. Schneiderman*, King & Spalding LLP, Washington, DC, on the comments for Defendant-Intervenor.

*Antonia R. Soares*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of

Ct. No. 23-00117                                    **Page 2**

Justice, Washington, DC, on the comments for Defendant. Of counsel for Defendant was *Charlie Chung*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, Washington, DC.

*R. Will Planert*, *et al.*, Morris, Manning & Martin LLP, Washington, DC, on the comments for Plaintiff.

*Baker*, Judge: This case involving the Department of Commerce's determination in a covered-merchandise inquiry that antidumping and countervailing duty orders cover certain refractory bricks returns following the remand ordered in *Fedmet Resources Corp. v. United States*, Slip Op. 24-136, 2024 WL 5088294 (CIT 2024) (Remand Opinion).[1] For the reasons explained below, the court sustains the agency's redetermination made under protest.

I

The Remand Opinion held that under the rationale of *Fedmet Resources Corp. v. United States*, 755 F.3d 912, 914 (Fed. Cir. 2014) (*Fedmet CAFC*), Commerce's covered-merchandise response to Customs and Border Protection in a related Enforce and Protect Act (EAPA) proceeding unlawfully expanded the scope of the orders. Remand Op. at 14–16, 2024 WL 5088294, at **5–6. The orders are limited to "*certain . . . magnesia carbon bricks*" (MCBs) from China and Mexico. 75 Fed. Reg. 57,257 (antidumping); 75 Fed. Reg. 57,442 (coun-

---

[1] The court assumes the reader's familiarity with that decision.

tervailing) (emphasis added). The Department ruled that Fedmet's blocks that otherwise satisfy the orders' technical specifications and *also* include added alumina are covered so long as such content is *less than* "'a threshold amount' . . . (five percent)." Remand Op. at 8–9, 2024 WL 5088294, at *3 (quoting Appx01015). According to the agency, MCBs with alumina content that meet or exceed that benchmark are magnesia alumina carbon bricks (MAC bricks) and thus out-of-scope. *Id*.

In this court's reading, *Fedmet CAFC* rejected any such demarcation. *See* Remand Op. at 13–16, 2024 WL 5088294, at **5–6. Instead, "the orders do not cover MCBs with *any* added alumina." *Id*. at 16, 2024 WL 5088294, at *6 (emphasis in original). Under protest, the agency conformed its response to the Remand Opinion. *See* Appx02828.

## II

The Magnesia Carbon Bricks Fair Trade Committee—a group of domestic producers that includes the petitioner in the underlying investigations, Resco Products, Inc.—now seeks reconsideration of the Remand Opinion. *See* ECF 65. It argues at length that the court misinterpreted *Fedmet CAFC*. *Id*. at 8–26.

The court is unpersuaded. According to Commerce, "[a]lumina *is* the defining component" of MAC bricks. Appx01014 (emphasis added). *Fedmet CAFC* observed that in the underlying investigations, Resco "disclaim[ed] coverage" of such products. 755 F.3d at 921. Thus, its failure to identify any "*'cut-off point' at which*

*addition of alumina to an MCB transforms it into a MAC brick* [did] not result in ambiguity." *Id*. (emphasis added). The public, including Fedmet, was "entitled to rely on" Resco's disclaimers of coverage of MAC bricks. *Id*. And "[t]o the extent that MCBs and MAC bricks do in fact overlap to some degree, *the overlap was surrendered by Resco's failure to provide a technical definition or 'cut[-]off point' when asked to be more specific*." *Id*. (emphasis added).

Based on Resco's representations, "Commerce and the Commission determined not to go beyond the 'name' of MAC bricks, not to provide any *chemical composition or technical specifications*" for those products, "and not to adopt an explicit exclusion" for them "because it was unnecessary." *Id*. (emphasis added). In a later scope determination, the Department could not "depart from its previous understanding based on its own failure to define non-subject merchandise more precisely than 'by name.'" *Id*. at 922. Thus, the Federal Circuit rejected the agency's attempt to expand the orders' scope to include "low-alumina" bricks. *Id*. Neither the petitioner's representations nor the scope language adopted by Commerce "mention[ed], much less ma[d]e [a] distinction, between so-called 'low-alumina' and 'high-alumina' bricks." *Id*.

That reasoning applies with equal force here. The Department cannot now go beyond "the 'name' of MAC bricks" and supply the "chemical composition" (five percent added alumina) or "technical specification[]"

(functionality[2]) requirements that Resco failed to provide and that the agency failed to adopt. *Id.* at 921. If an MCB contains added alumina, for purposes of *these orders* it is a MAC brick, as there is "no 'cut-off point' at which addition of alumina to an MCB transforms it into a MAC brick." *Id.* "[L]ow-alumina bricks"—regardless of *how* low—are not covered by the orders, *id.* at 922, as such products are literally magnesia *alumina* carbon bricks *in name*.

Resco "disclaim[ed] coverage for *all* MAC bricks *in general*," *id.* at 919 (emphasis added), and the agency took the petitioner at its word. For better or worse, the Federal Circuit held that it and other domestic producers must live with the consequences of that choice.

Judge Wallach identified one of those potential consequences. *See id.* at 925 (Wallach, J., dissenting) (lamenting that under the majority's decision, "importers can simply add small amounts of alumina to their products and label them MAC bricks instead of MCBs"). But Resco and other domestic producers may not be without recourse in that scenario.

As Fedmet observes, *see* ECF 46, at 13, the Tariff Act's circumvention provisions allow interested parties to seek relief when merchandise is outside the scope of antidumping and countervailing duty orders

---

[2] "[A]lumina facilitates the formation of fused magnesia spinel when MAC bricks are heated to steelmaking temperatures, which prevents cracks and decreases chemical attack by promoting permanent expansion and closing pores in the bricks." *Fedmet CAFC*, 755 F.3d at 917. This functionality "distinguish[es] MAC bricks from MCBs." *Id.*

due to "alter[ations] in form or appearance in minor respects." 19 U.S.C. § 1677j(c)(1); *see also* 19 C.F.R. § 351.226(j)[3]; *Deacero S.A. de C.V. v. United States*, 817 F.3d 1332, 1338 (Fed. Cir. 2016) ("The purpose of minor alteration anticircumvention inquiries is to determine whether articles not expressly within the literal scope of a duty order may nonetheless be found within its scope as a result of a minor alteration to merchandise covered in the investigation."); *Columbia Forest Prods. v. United States*, 399 F. Supp. 3d 1283, 1295 (CIT 2019) ("This reasonably includes an intent that the merchandise as altered would have been included in the scope of the investigation if Commerce and the ITC *had had reason to consider it* at the outset of the investigation.") (emphasis added).

In view of Resco's blanket disclaimers, the agencies arguably had no reason to consider including low-alumina MAC bricks that lack spinel-generating functionality in the investigation's scope. Thus, it and the other domestic producers in the related EAPA proceeding before Customs—which in turn sparked the

---

[3] In relevant part, this regulation provides that "[u]nder section 781(c) of the Act, the Secretary may include within the scope of an antidumping or countervailing duty order articles altered in form or appearance in minor respects. The Secretary may consider such criteria including, but not limited to, the overall physical characteristics of the merchandise (including chemical, dimensional, and technical characteristics), the expectations of the ultimate users, the use of the merchandise, the channels of marketing and the cost of any modification relative to the total value of the imported products." 19 C.F.R. § 351.226(j).

**Ct. No. 23-00117**                                    **Page 7**

covered-merchandise inquiry giving rise to this case—
may simply be barking up the wrong tree.

\*    \*    \*

The court follows its best reading of binding prece-
dent and declines the Committee's request to change
course. It therefore sustains Commerce's redetermina-
tion. Judgment will issue. *See* USCIT R. 58(a).

Dated:  October 9, 2025        /s/ *M. Miller Baker*
        New York, NY           Judge